# EXHIBIT 12

Exp 04-2018

SE SOLICITA PONER EN CONOCIMIENTO A LAS PARTES SOBRE DILIGENCIA DE SOLICITUD DE ASISTENCIA JURÍDICA INTERNACIONAL PARA LA OBTENCION DE LA FACTURACION DEL SIMCARD RECUPERADO EN EL TELEFONO DECOMISADO AL IMPUTADO.-

Señor Juez de Letras con Competencia Territorial Nacional en Materia Penal:

El Ministerio Público a través de sus Agentes Fiscales **INGRID BELINDA FIGUEROA**, Abogada inscrita en el Colegio de Abogados de Honduras bajo el número 8771, actuando en Representación, Defensa y Protección de los intereses generales de la sociedad, haciendo referencia al proceso judicial instruido en contra de **ROBERTO DAVID CASTILLO MEJIA**, por suponerlo responsable a título de autor del delito de **ASESINATO**, en perjuicio de la ciudadana **BERTHA ISABEL CÁCERES FLORES**, con el debido respeto comparezco ante usted solicitando se practique diligencia para la obtención de facturación telefónica para que la compañía T mobile de Estados Unidos de América proceda a proporcionar la información referente al SIMCARD con ICCID 8901260202769548601 e IMSI 310260206954860, que de acuerdo con el dictamen 0801-2018-00047 realizado por el perito Walther Caballero este teléfono usa el número teléfono 12027798738 cuyo prefijo es perteneciente a ese país, en consecuencia es meritorio peticionar:

• El nombre, dirección y datos del propietario,

• Detalle de llamas entrantes y salientes, la duración de estas, la fecha y la hora de las mismas, las celdas que se activaron, triangulación de antena cuando se produjo las llamadas con sus respectivas coordenadas de latitud y longitud, desde el mes de enero del año 2015 hasta el mes de abril del año 2018 .

• Detalles de texto entrantes y salientes con fecha y hora, el número al que va o viene dirigido, las celdas que se activaron con sus respectivas coordenadas de latitud y longitud, triangulación de antenas.

• Los números de IMEI en los que se introdujo ese simcard números telefónicos

• Los números de todos los simcards que se han introducido a esos IMEI.

• Se establezca si esos simcards se han introducido a otros IMEI, estableciendo cuales.

• Se indique los nombres de los propietarios registrados de esos simcards, las direcciones de los propietarios, si tienen reporte de robo y se proporcione copia de la hoja de adquisición.

Diligencia que será planteada a través de solicitud de **ASISTENCIA JURÍDICA INTERNACIONAL** que el Ministerio Público planteara a los Estados Unidos de América, solicitud que hago en base a los hechos y consideración siguientes:

PRIMERO: el dia dos de marzo de 2016, la ofendida BERTHA ISABEL CACERES FLORES, se encontraba en su casa de habitación sita en la colonia el Libano del Municipio de la Esperanza, Intibucá, cuando aproximadamente a la 11.35 de la noche, los imputados Henrry Javier Hernández, Elvin Heliberto Rápalo Orellana, Oscar Aroldo Torres y Edilson Duarte Mesa ingresaron violentando la puerta trasera de la vivienda, inmediatamente se dirigieron a las habitaciones y dando puntapiés a las puertas lograron abrir el dormitorio donde se encontraba la ofendida quien al escuchar el ruido provocado por los imputados preguntó "¿quien anda alli?", inmediatamente tratando de evitar el ataque empujaba la puerta tratando de cerrarla, mientas uno de ellos logró ingresar y disparar con el arma de fuego que portaba a la ofendida, quien cayó de inmediato al suelo quedando gravemente lesionada debido a que los disparos provocaron daños a órganos vitales importantes causando su muerte.

SEGUNDO: La señora Bertha Isabel Cáceres Flores, fue defensora de derechos humanos y ambiente, desarrolló estas labores en su condición de presidenta del Consejo Civico de Organizaciones Populares e Indígenas de Honduras (COPINH), que desde los inicios de la construcción del plantel Hidroeléctrico Agua Zarca propiedad de la empresa Desarrollos Energéticos Sociedad Anónima (DESA), ubicado entre los departamentos de Intibucá y Santa Bárbara, se oponían y protestaban constantemente, por considerar que la ejecución del proyecto provocaba daños al medios ambiente: Las manifestaciones lideradas ppr la ofendida Bertha Isabel Cáceres Flores, en su momento lograron que el sitio original de la construcción de la represa se cambiara de Intibucá a Santa Bárbara, asimismo durante las manifestaciones se causaron daños a la infraestructura y bienes de la empresa DESA lo que provoco perdidas para la empresa, así como retrasos en la construcción.

TERCERA: Según las investigaciones efectuadas por la Agencia Técnica de Investigación Criminal señalan que el imputado, Roberto David Castillo Mejía, en ese momento fungía como Presidente del Consejo de Administración de la empresa DESA, quien además es ex miembro del ejecito, en el mes de octubre de 2015,  crea aun chat de conversación de wthapsapp, en el que se incluía a altos ejecutivos de dicha empresa, así como al Jefe de Seguridad, también al ahora condenado Sergio Ramón Rodríguez Orellana quien era el gerente social y ambiental de dicha sociedad. De los datos contenidos en las conversaciones realizadas por miembros de ese grupo de la red social, expresan la necesidad de controlar la información sobre la seguridad del embalse, en relación a las acciones que realizaba la organización que lideraba la ofendida Bertha Isabel Cáceres Flores a fin de conocer los planes y actividades que estos iban a realizar, así como la ubicación de la victima; así las cosas el señor Sergio Ramón Rodríguez Orellana, en fecha 29 de octubre de 2015 escribió al chat "es evidente que mientras no llegue Tomás o Berta el movimiento se debilita y hay poca convocatoria. De alli que contra ellos es que debemos

también encaminar acciones". Comienza entonces Roberto David Castillo a realizar acciones concretas y se comunicación el imputado Douglas Geovanny Bustillo su ex compañero de armas en las Fuerzas Armadas y quien además había trabajado como Jefe de Seguridad del Plantel de la represa, para que este ultimo comenzara a realizar acciones para ubicar a las personas idóneas para dar muerte a la ofendida Bertha Isabel Cáceres Flores. Por lo que desde noviembre de 2015, se realizan una serie de comunicaciones entre los imputados Douglas Geovanny Bustillo, Roberto David Castillo y Sergio Ramón Rodríguez Orellana, desprendiéndose que el imputado Bustillo se comunicó con las personas que se encargaron de la obtención de armas, vehículos y dinero para los sicarios, asimismo se ejecutaron vigilancias y seguimientos que fueron realizadas en los meses de enero y febrero de 2016, meses durante los cuales el señor Douglas Bustillo pedía a Roberto David Castillo que se efectuara un adelanto del 50% del pago pactado y le dice que esté preparado porque en cualquier momento podía ocurrir el evento, además Roberto David Castillo recibió informes de parte de Bustillo sobre las ubicaciones y sobre el aborto de la misión en el mes de febrero, fechas en las que se encontraba en Intibucá junto a los autores materiales del hecho.

**CUARTO**: Douglas Bustillo contacto a Henrry Javier Hernández y este contacto a Edilson Duarte Meza, a Osar Aroldo Torres y a Elvin Heliberto Rápalo Orellana quienes el 2 de marzo se desplazaron desde la Ceiba, Atlántida hasta la Esperanza, Intibucá y luego de hacer vigilancias se desplazan a la colonia El Líbano donde acaban con la vida de la ambientalista. A partir de las doce de la noche Henrry Hernández se comienza a comunicar con Douglas Bustillo reportándole lo que había pasado.

**QUINTO**: Es así como el imputado Douglas Bustillo, el día 3 de marzo del 2016, realizó varias llamadas al imputado Roberto David Castillo Mejía, hora después de haberse perpetrado el crimen contra la ambientalista, evidenciándose las comunicaciones entre los autores materiales , Douglas Bustillo como intermediario y el señor David Castillo.

**SEXTO**: Siendo que el Ministerio Público aún se encuentra investigando las circunstancias que rodean este hecho, a fin de poder obtener elementos de prueba con el que se pueda determinar la participación a títulos de Autor del ahora imputado y de otros sospechosos, es necesario que la compañía telefónica en referencia, proporcione la información que se solicita a fin de establecer los vínculos del imputado con otros procesados y con terceros que se encuentran bajo investigación. Dicha petición se hace en base a que la compañía T mobile, tiene su sede en aquel país y no tiene casa matriz ni sucursal asociada en Honduras.

SÉPTIMO: Las solicitudes de Asistencia Jurídica Internacional puede plantearse en cualquier etapa del proceso ya sea en etapa investigativa o judicial, incluso en la Sustanciación del Juicio.

El código Procesal penal establece en sus Artículos 92 y 93 cuál es la función del Ministerio Público y la objetividad con la que deberá actuar en cuanto a la investigación de los hechos punibles y de ese modo proceder con la acción penal pública en representación de la sociedad.

El Artículo 149.- **Requerimientos a tribunales extranjeros.** Los requerimientos dirigidos a tribunales o autoridades extranjeras, o los recibidos de ellos, serán tramitados por la vía diplomática. En casos excepcionales o de suma importancia, el Juez o el miembro de un Tribunal de Sentencia que se designe para el efecto, podrá realizar diligencias en otro Estado, previa autorización de este.

El Artículo 199.- **Medios de prueba permitidos.** Los hechos y circunstancias relacionados con el delito objeto del proceso, podrán ser demostrados **utilizando cualquier medio probatorio, aunque no esté expresamente regulado en este Código**, siempre que sean objetivamente confiables. Serán admitidos sólo si son pertinentes y se refieren, directa o indirectamente, al objeto de la investigación y que resulten útiles para la averiguación de la verdad.

**OCTAVO: CONVENCION INTERAMERICANA SOBRE ASISTENCIA MUTUA EN MATERIA PENAL** de la Organización de los Estados Americanos, suscrito el 23 de mayo de 1992 en Nassau, Mancomunado de Las Bahamas, para dar trámite a las solicitudes de Asistencia Jurídica Internacional establece en su

Artículo 1. OBJETO DE LA CONVENCION

Los Estados Partes se comprometen a brindarse asistencia mutua en materia penal, de acuerdo con las disposiciones de la presente Convención.

Artículo 2. APLICACION Y ALCANCE DE LA CONVENCION

Los Estados Partes se prestarán asistencia mutua en investigaciones, juicios y actuaciones en materia penal referentes a delitos cuyo conocimiento sea de competencia del Estado requirente al momento de solicitarse la asistencia.

Esta Convención no faculta a un Estado Parte pare emprender en el territorio de otro Estado Parte el ejercicio de la jurisdicción ni el desempeño de funciones reservadas exclusivamente a las autoridades de la otra Parte por su legislación interna.

Esta Convención se aplica únicamente a la prestación de asistencia mutua entre los Estados Partes; sus disposiciones no otorgan derecho a los particulares para obtener o excluir pruebas, o para impedir la ejecución de cualquier solicitud de asistencia.

Artículo 7. AMBITO DE APLICACION

La asistencia prevista en esta Convención comprenderá, entre otros, los siguientes actos:

a. notificación de resoluciones y sentencias;

b. recepción de testimonios y declaraciones de personas;

c. notificación de testigos y peritos a fin de que rindan testimonio;

d. práctica de embargo y secuestro de bienes, inmovilización de activos y asistencia en procedimientos relativos a la incautación;

e. efectuar inspecciones o incautaciones;

f. examinar objetos y lugares;

g. exhibir documentos judiciales;

h. remisión de documentos, informes, información y elementos de prueba;

i. el traslado de personas detenidas, a los efectos de la presente Convención, y

j. cualquier otro acto siempre que hubiere acuerdo entre el Estado requiriente y el Estado requerido.

Artículo 10. SOLICITUD DE ASISTENCIA: REGULACION

Las solicitudes de asistencia libradas por el Estado requiriente se harán por escrito y se ejecutarán de conformidad con el derecho interno del Estado requerido.

En la medida en que no se contravenga la legislación del Estado requerido, se cumplirán los trámites mencionados en la solicitud de asistencia en la forma expresada por el Estado requiriente.

artículo 13. REGISTRO, EMBARGO, SECUESTRO Y ENTREGA DE OBJETOS

El Estado requerido cumplirá la solicitud relativa a registro, embargo, secuestro y entrega de cualquier objeto, comprendidos, entre otros, documentos, antecedentes o efectos, si la Autoridad competente determina que la solicitud contiene la información que justifique la medida propuesta. Dicha medida se someterá a la ley procesal y sustantiva del Estado requerido.

Conforme a lo previsto en la presente Convención, el Estado requerido determinará según su ley cualquier requerimiento necesario para proteger los intereses de terceros sobre los objetos que hayan de ser trasladados.

En virtud de lo antes mencionado LA CONSTITUCIÓN DE LA REPÚBLICA establece en su ARTÍCULO 16 estable que todos los tratados internacionales deben ser aprobados por el Congreso Nacional antes de su ratificación por el Poder Ejecutivo. Los tratados internacionales celebrados por Honduras con otros Estados, una vez que entran en vigor, forman parte del derecho interno.

ARTÍCULO 18 del mismo cuerpo legal establece que en caso de conflicto entre el tratado o convención y la ley prevalecerá el primero.

NOVENO: En ese sentido es de vital importancia para el Ministerio Público poder realizar estas diligencias, a fin de establecer claramente la dinámica de los hechos, es por esto se solicita que se autorice el reconocimiento en rueda, asimismo se ponga en conocimiento de las partes la práctica de la misma.

## FUNDAMENTOS DE DERECHO

Fundamento la presente en el Articulo **16, 18, 80, 88** de la **CONSTITUCIÓN DE LA REPUBLICA**, Artículos **92, 93, 149, 199** del **CÓDIGO PROCESAL PENAL** y Articulo1, 7, 10 de la **CONVENCION INTERAMERICANA SOBRE ASISTENCIA MUTUA EN MATERIA PENAL** de la Organización de los Estados Americanos.

## PETICIÓN

Al Honorable Señor Juez Pido: Admitir el presente escrito, se ponga en conocimiento de la realización de la presente diligencia de **ASISTENCIA JURÍDICA INTERNACIONAL,** a la parte acusadora y parte defensora esto con el fin de que Estados Unidos, como país requirente proporcione la siguiente información: a) nombre, dirección y datos del propietario, b) Detalle de llamas entrantes y salientes ,c ) la duración de estas, la fecha y la hora de las mismas, las celdas que se activaron, triangulación de antena cuando se produjo las llamadas con sus respectivas coordenadas de latitud y longitud, desde el mes de enero del año 2015 hasta el mes de abril del año 2018 d)Detalles de texto entrantes y salientes con fecha y hora, el número al que va o viene dirigido, las celdas que se activaron con sus respectivas coordenadas de latitud y longitud, triangulación de antenas e)Los números de IMEI en los que se introdujo ese simcard números telefónicos f)Los números de todos los simcards que se han introducido a esos IMEI, g) Se establezca si esos simcards se han introducido a otros IMEI, estableciendo cuales h)Se indique los nombres de los propietarios registrados de esos simcards, las direcciones de los propietarios, si tienen reporte de robo y se proporcione copia de la hoja de adquisición por considerar útil, pertinente y proporcional en la presente investigación, finalmente resolver conforme a derecho corresponda.

Tegucigalpa, M. D. C., 4 de diciembre de 2018

File 04-2018
   [stamp:] [illegible line] [illegible line] [illegible line] [signature] [05 DEC 2018] [handwritten:]
   *3:05 pm* RECEIVED

**IT IS REQUESTED THAT THE PARTIES BE INFORMED OF THE JUDICIAL PROCEDURE OF REQUESTING INTERNATIONAL LEGAL ASSISTANCE TO OBTAIN THE BILLING OF THE SIM CARD RECOVERED IN THE PHONE CONFISCATED FROM THE ACCUSED.-**

Hon. Judge of First Instance with National Territorial Jurisdiction in Criminal Matters:

The Public Prosecutor's Office through its Public Prosecutors **INGRID BELINDA FIGUEROA**, a Lawyer registered with the Honduran Bar Association under number 8771, acting on Behalf of and for the Defense and Protection of the general interests of society, in reference to the court proceedings initiated against **ROBERTO DAVID CASTILLO MEJÍA**, because of him being allegedly responsible as the perpetrator of the offense of **MURDER**, of the citizen **BERTHA ISABEL CÁCERES FLORES**, with all due respect, I appear before your honor to request the judicial procedure to obtain the information with regard to the SIM CARD with ICCID 8901260202769548601 and IMSI 310260206954860, according to the opinion 0801-2018-00047 submitted by the expert Walther Caballero this telephone uses the telephone number 12027798738 whose area code belongs to that country, consequently, it is advisable to request:
•    The name, address and information of the owner,
•    Break-down of the incoming and outgoing calls, their duration, their date and time, the cells that were activated, antenna triangulation when the calls occurred with their respective latitude and longitude coordinates, from the month of January of the year 2015 to the month of April of the year 2018.
•    Break-down of the incoming and outgoing text [*sic*] with date and time, the number they were sent to or originated from, the cells that were activated with their respective latitude and longitude coordinates, triangulation of antennas.
•    The IMEI numbers that the SIM card telephone numbers were inserted into.
•    The numbers of all the SIM cards that have been inserted in those IMEI numbers.
•    Establishment of whether those SIM cards have been inserted into other IMEI numbers, establishing which ones
•    Indication of the names of the registered owners of these SIM cards, the addresses of the owners, and whether they have been reported as stolen and a copy of the acquisition sheet

Judicial procedure that will be carried out through a request for **INTERNATIONAL LEGAL ASSISTANCE** that the Public Prosecutor's Office shall file with the United States of America, request that I make based on the following points of facts and considering the following:

Scanned by CamScanner

165

**ONE:** on March 2, 2016, the victim BERTHA ISABEL CACERES FLORES, was in her house located in the El Libano residential development of the Municipality of La Esperanza, Intibucá when approximately at 11:35 in the evening the accused Henrry Javier Hernández, Elvin Heliberto Rápalo Orellana, Oscar Aroldo Torres and Edison Duarte Mesa entered by forcing the back door of the house and immediately went to the bedrooms and kicking the doors managed to open the bedroom where the victim was who when she heard the noise caused by the accused asked "Who is there?," immediately trying to avoid the attack she was pushing the door trying to close it while one of them managed to enter and shot the victim with the firearm that he was carrying who immediately fell to the ground being seriously injured because the shooting had caused damage to important vital organs resulting in her death.

**TWO:** Ms. Bertha Isabel Cáceres Flores, was a defender of human rights and of the environment, conducted her activities in her capacity as president of the Council of Popular and Indigenous Organizations of Honduras (COPINH, *Consejo Cívico de Organizaciones Populares e Indígenas de Honduras*), that from the beginning of the construction of the Agua Zarca Hydroelectric Power Plant owned by the company Desarrollos Energéticos Sociedad Anónima (DESA), located between the departments of Intibucá and Santa Bárbara, constantly opposed and protested this project, considering that the execution of the project caused damages to the environment: The demonstrations led by the victim Bertha Isabel Cáceres Flores, at the time managed to change the original site of the construction of the dam from Intibucá to Santa Bárbara, also during the demonstrations damages were caused to the infrastructure and assets of the company DESA, which resulted in losses for the company, as well as delays in the construction.

**THREE:** According to the investigations carried out by the Technical Agency of Criminal Investigation they indicate that the accused, Roberto David Castillo Mejía, at that time was serving as Chair of the Board of Directors of the company DESA, who is also a former member of the Army, in October 2015, he created a WhatsApp chat conversation that included senior executives of the said company, as well as the Head of Security, the now convicted Sergio Ramón Rodríguez Orellana who was the social and environmental manager of the said company. From the data contained in the conversation held by members of this group on the social network, they expressed the need to control the information on the safety of the reservoir, in relation to the actions carried out by the organization led by the victim Bertha Isabel Cáceres Flores in order to know the plans and activities that they were going to carry out, as well as the whereabouts of the victim. Thus Mr. Sergio Ramón Rodríguez Orellana, on October 29, 2015 wrote to the chat "it is evident that until Tomás or Berta were on the scene movement was weakened and there was little response to the calls for action. Thus, we must also initiate actions

Scanned by CamScanner

against them." Roberto David Castillo then began to carry out specific actions and got in contact [sic] with the accused Douglas Geovanny Bustillo, his former comrade-in-arms in the Armed Forces, and who had also worked as the dam's Head of Staff Security, so that the latter could begin taking actions to find the right people to kill the victim Bertha Isabel Cáceres Flores. Therefore since November 2015, a series of communications was held between the accused Douglas Geovanny Bustillo, Roberto David Castillo and Sergio Ramón Rodríguez Orellana, revealing that the accused Bustillo had communicated with the people who were in charge of obtaining weapons, vehicles and money for the hired assassins, and also carried out the surveillance and follow-up in the months of January and February of 2016, months during which Mr. Douglas Bustillo asked Roberto David Castillo for an advance payment of 50% of the agreed payment and he said that he was ready because the event could happen at any time, in addition Roberto David Castillo received reports from Bustillo on the whereabouts and on the abortion of the mission in the month of February, dates on which he was in Intibucá along with the perpetrators of the offense.

**FOUR:** Douglas Bustillo got in contact with Henrry Javier Hernández and the latter got in contact with Edilson Duarte Meza, Osar [sic] Aroldo Torres and Elvin Heliberto Rápalo Orellana who on March 2 went from La Ceiba, Atlántida to La Esperanza, Intibucá and after carrying out surveillance they went to the El Líbano residential development where they claimed the life of the environmentalist. From midnight Henrry Hernandez began to get in contact with Douglas Bustillo reporting what had happened.

**FIVE:** Thus the accused Douglas Bustillo, on March 3, 2016, made several calls to the accused Roberto David Castillo Mejía, an hour after the crime against the environmentalist was perpetrated, showing the communications between the perpetrators Douglas Bustillo as an intermediary and Mr. David Castillo.

**SIX:** Given that the Public Prosecutor's Office is still investigating the circumstances surrounding this point of fact, in order to be able to obtain evidence to determine the participation of the accused and other suspects, it is necessary that the telephone company in reference, provides the information requested in order to establish the links of the accused with other defendants and with third parties that are under investigation. The said request is made on the basis that the company T mobile, is based in that country and has no head office or associated branch in Honduras.

Scanned by CamScanner

**SEVEN:** The requests for International Legal Assistance can be filed at any stage of the proceedings, whether at the investigative or judicial stage, even in the Conduct of the Trial Proceedings.

The Code of Criminal Procedure sets out in its Articles **92** and **93** what the role of the Public Prosecutor is and the objectivity with which they must act in relation to the investigation of punishable acts and thereby proceed with the public criminal action on behalf of society

**Article 149 - <u>Requests from foreign courts</u>.** The request addressed to foreign courts or authorities, or those received from them, will be processed through diplomatic channels. In exceptional cases and of great importance, the Judge or the member of a Trial Court designated to that end, may carry out judicial procedures in another State, with the prior authorization of the latter.

**Article 199.- <u>Means of evidence permitted</u>.** The facts and circumstances related to the offense subject to proceedings, may be demonstrated <u>**using any means of evidence, although it is not expressly regulated in this Code**</u>, provided they are objectively reliable. They will be admitted only if they are pertinent and they concern, directly or indirectly, the subject matter of the investigation and are useful for ascertaining the truth.

**EIGHT:** The **INTER-AMERICAN CONVENTION ON MUTUAL ASSISTANCE IN CRIMINAL MATTERS** of the Organization of American States, signed on May 23, 1992 in Nassau, Commonwealth of The Bahamas, to process requests for International Legal Assistance set outs in its

Article 1. PURPOSE OF THE CONVENTION

The States Parties undertake to render to one another mutual assistance in criminal matters, in accordance with the provisions of this Convention.

Article 2. SCOPE AND APPLICATION OF THE CONVENTION

The States Parties shall render to one another mutual assistance in investigations, prosecutions, and proceedings that pertain to crimes over which the requesting State has jurisdiction at the time the assistance is requested.

This Convention does not authorize any State Party to undertake, in the territory of another State Party, the exercise of jurisdiction or the performance of functions that are placed within the exclusive purview of the authorities of that other Party by its domestic law.

This Convention applies solely to the provision of mutual assistance among States Parties. Its provisions shall not create any right on the part of any private person to obtain or exclude any evidence or to impede execution of any request for assistance.

Article 7 SCOPE OF APPLICATION

The assistance envisaged under this Convention shall include the following procedures among others:

Scanned by CamScanner

a. notification of rulings and judgments;

b. taking of testimony or statements from persons;

c. summoning of witnesses and expert witnesses to provide testimony;

d. immobilization and sequestration of property, freezing of assets, and assistance in procedures related to seizures;

e. searches or seizures;

f. examination of objects and places;

g. service of judicial documents;

h. transmittal of documents, reports, information, and evidence;

i. transfer of detained persons for the purpose of this Convention; and

j. any other procedure provided there is an agreement between the requesting State and the requested State.

Article 10. REQUESTS FOR ASSISTANCE: REGULATION

Requests for assistance issued by the requesting State shall be made in writing and shall be executed in accordance with the domestic law of the requested State.

The procedures specified in the request for assistance shall be fulfilled in the manner indicated by the requesting State insofar as the law of the requested State is not violated.

Article 13. SEARCH, SEIZURE, ATTACHMENT, AND SURRENDER OF PROPERTY

The requested State shall execute requests for search, seizure, attachment, and surrender of any items, documents, records, or effects, if the competent authority determines that the request contains information that justifies the proposed action. That action shall be subject to the procedural and substantive law of the requested State.

In accordance with the provisions of this Convention, the requested State shall determine, according to its law, what requirements must be met to protect the interests held by third parties in the items that are to be transferred.


Pursuant to the foregoing **THE CONSTITUTION OF THE REPUBLIC** sets out in its **ARTICLE 16** that all international treaties must be approved by the National Congress before their ratification by the Executive branch. International treaties entered into by Honduras with other States form part of the domestic law as soon as they enter into force.

**ARTICLE 18** of the same legal body establishes that in case of conflict between the treaty or convention and the law, the formal shall prevail.


Scanned by CamScanner

**NINE:** In this regard, it is vital for the Public Prosecutor's Office to be able to carry out these procedures in order to clearly establish the dynamics of the facts, it is for that reason that it is requested that a police lineup be authorized, and that the parties be informed of it being conducted

**POINTS OF LAW**

I substantiate this request on Article **16, 18, 80, 88** of the **CONSTITUTION OF THE REPUBLIC** Articles **92. 93, 149, 199** of the **CODE OF CRIMINAL PROCEDURE** and Article 1, 7, 10 of the **INTER-AMERICAN CONVENTION ON MUTUAL ASSISTANCE IN CRIMINAL MATTERS** of the Organization of American States

**PETITION**

The Honorable Judge is kindly requested: To accept this document, inform the prosecution and defense of this **INTERNATIONAL LEGAL ASSISTANCE** judicial procedure, so that the United States, as the requesting [sic] country, provides the following information: a) the name, address and information of the owner, b) the break-down of the incoming and outgoing calls, c) their duration, their date and time, the cells that were activated, antenna triangulation when the calls occurred with their respective latitude and longitude coordinates, from the month of January of the year 2015 to the month of April of the year 2018, d) the break-down of the incoming and outgoing texts with date and time, the number they were sent to or originated from, the cells that were activated with their respective latitude and longitude coordinates, triangulation of antennas, e) the IMEI numbers that the SIM card telephone numbers were inserted into, f) the numbers of all the SIM cards that have been inserted in those IMEI numbers, g) establishment of whether those SIM cards have been inserted into other IMEI numbers, establishing which ones, h) indication of the names of the registered owners of these SIM cards, the addresses of the owners, and whether they have been reported as stolen and a copy of the acquisition sheet, as it is considered useful, relevant and proportional in this investigation, to finally pass the appropriate resolution pursuant to the law.

Tegucigalpa MDC (Municipio del Distrito Central [Municipality of the Central District]) December 4, 2018

[stamp:] PUBLIC PROSECUTOR'S OFFICE REPUBLIC OF HONDURAS SPECIAL PUBLIC PROSECUTOR'S OFFICE FOR OFFENSES AGAINST [illegible]

[signature]

Scanned by CamScanner



**TRANSPERFECT**

City of New York, State of New York, County of New York

I, Aurora Landman, hereby certify that the document, **"Asistencia Juridica Extraccion Tel David Castillo"** is, to the best of my knowledge and belief, a true and accurate translation from Spanish into English.

Aurora Landman

Sworn to before me this
July 9, 2019

Signature, Notary Public

WENDY POON
NOTARY
NO. 01PO6356754
QUALIFIED IN
QUEENS COUNTY
COMM. EXP.
04-03-2021
PUBLIC
STATE OF NEW YORK

Stamp, Notary Public

LANGUAGE AND TECHNOLOGY SOLUTIONS FOR GLOBAL BUSINESS

THREE PARK AVENUE, 40TH FLOOR, NEW YORK, NY 10016 | T 212.689.5555 | F 212.689.1059 | WWW.TRANSPERFECT.COM
OFFICES IN 90 CITIES WORLDWIDE

171