# EXHIBIT 6

**LAWSUIT FILED REGARDING THE OFFENSES OF FALSIFICATION OF PUBLIC DOCUMENTS, FALSE STATEMENTS, VIOLATION OF DOCUMENTS, AND VIOLATION OF THE DUTIES OF OFFICIALS. SUBMISSION OF PROSECUTOR'S REQUEST IS HEREBY REQUESTED.- GENERAL POWER FOR LAWSUITS, AUTHENTICATION AND VERIFICATION IS ATTACHED TO THE RECORD OF THE CASE.- DOCUMENTS ARE ATTACHED.**

**Dear sirs: Special Prosecutor's Office for the Prosecution of Officers and Officials from the Justice Sector to Officials of the Public Prosecutor Sector.**

We, **JUAN SANCHEZ CANTILLANO** and **RITZA YOLANDA ANTUNES REYES,** of **legal** age, Hondurans, Attorneys registered in the Honorable Bar Association of Honduras, with membership card number 4658 and 7462, respectively, with professional offices located at Despacho Legal Antúnes y Asociados located at Residencial Las Uvas, First Stage, block 40, house 28, telephone 2291-5082, 9946-5334, email ritzaantunes@yahoo.com, acting in our capacity as legal representatives of Mr. **ROBERTO DAVID CASTILLO MEJIA,** who is Honduran, of legal age, married, identity card number 0501-1980-06719, Electrical Engineer, currently with address located at Penitenciaría Nacional "Dr. MARCO AURELIO SOTO", capacity that is certified with the General power for lawsuits granted before the offices of the Attorney and Notary LUIS FERNANDO PADILLA by means of public instrument number one hundred and twenty-eight, dated April 5, 2018, which is attached to this document in original and copy, so that once verified and examined on the record is returned to us, we respectfully appear to file lawsuit against Mrs. **BRENDA CARINA BARAHONA,**
for the offenses of **FALSIFICATION OF PUBLIC DOCUMENTS, FALSE STATEMENT, THEFT OF DOCUMENTS, AND VIOLATION OF THE DUTIES OF OFFICIALS** to the detriment of the **OFFICIAL AUTHORITY and the PUBLIC ADMINISTRATION,** respectively, we hereby also report offenses committed by **INGRID BELINDA FIGUEROA AND JAVIER EDUARDO NUNEZ,** for the improper **USE OF FALSE DOCUMENTS AND VIOLATION OF THE DUTIES OF OFFICIALS** to the detriment of the **OFFICIAL AUTHORITY AND the PUBLIC ADMINISTRATION, RESPECTIVELY,** lawsuit that we file based on the following facts and legal grounds:

## I. PERSONAL DATA OF THE DEFENDANTS

**1.- BRENDA KARINA BARAHONA,** of legal age, Honduran, single, identity card number 0705-1979-00021, Investigation Analyst attached to the National Directorate of Investigation and Intelligence.

**2.- INGRID BELINDA FIGUEROA,** Honduran, of **legal** age, Attorney, Registered in the Bar Association under number 8771.

**3.- JAVIER EDUARDO NUNEZ,** Honduran, of **legal** age, Attorney, with membership card 14232.

These last two officials of the Public Prosecutor's Office reported, attached to the Special Prosecutor's Office of Crimes Against Life of the Public Prosecutor's Office indicating as a place where they can be located in their offices located in Barrio Concepción entre cinco y seis avenida, doce y trece calle de Comayagüela, Municipio del Distrito Central.

## II.- RELATIONSHIP OF THE REPORTED FACTS

**FIRST**: By way of background, I hereby state that on March 1, 2018, the Public Prosecutor's Office presented a Prosecutor's request against Mr. **ROBERTO DAVID CASTILLO MEJIA** for assuming his responsibility for the crime of ASSASSINATION of Mrs. BERTA ISABEL CACERES, highlighting in such request as another fact the following *"that according to investigations carried out by the Criminal Investigation Agency ATIC, it is stated that the defendant Roberto David Castillo Mejía at that time served as chairman of the company known as DESARROLLOS ENERGETICOS S.A. DESA who also is a former member of the army, in the month of October of the year two thousand fifteen (2015),* **_he created a WHATSAPP conversation group_**, *which included senior executives of that company, as well as the chief of security, the defendant SERGIO RAMON RODRIGUEZ ORELLANA... who at that time was the environmental and social manager, among other executives. From the data contained in the conversations* **between the members of that Whatsapp group**, *they express the need to control the information... Mr. SERGIO RAMON RODRIGUEZ ORELLANA, on October 29, 2015, wrote in the aforementioned WHATSAPP group: "it is evident that while Thomas or Berta are absent, the movement weakens and there is not many people. So it is against them that we must also take actions."*

**SECOND:** In the Court of Judgment with National Jurisdiction in Criminal Matters room 1, there are records of the judicial file registered under number 3-88-2017 accumulated as of 4-14-2018, this file contains various records of different hearings promoted by the plaintiffs against the Public Prosecutor's Office, who considered that the Prosecutor's Office was hiding information and that it had not been showed to them. (These records will be presented in a timely manner). It was evident in these hearings that the plaintiffs for some reason had a broader knowledge of what the Prosecutor's Office could have in its possession and continually complained about this situation, this warned the defense; however, at that time, no action was taken to reach the merits of the matter, considering that it was a dispute between plaintiffs representing COPINH and the Prosecutor's Office, this allegation of the plaintiffs who wanted to have all the information persisted until the opening of the trial, being finally separated from the criminal process.

**THIRD:** The prosecutors, once the expert BRENDA KARINA BARAHONA presented the Official Preliminary Report: ANALYSIS DIVINV-DNII-No 0004-2016 dated March 9, 2018, at the initial hearing against Mr. ROBERTO DAVID CASTILLO, at a glance some irregularities were noticed that caught the attention of the defense, added to some findings of the base opinion on which this extension was made, because when reading the conversations inserted in the boxes prepared by the expert it became evident the deletion and intercalation of messages that gave absolutely different meanings compared to those of the actual conversation, all this led to the need for the defense to seek the assistance of certified experts in examining digital evidence, areas of technology, forensic investigation and assistance in litigation to extract information from mobile devices that are already available to the Prosecutor's Office and the Jurisdictional Body. This is how the following experts were proposed: SHAUN R. VODDE AND JONATHAN D. LANGTON, Members of the Office of Information Technology and Forensic Consulting of Transperfect Legal Services of the UNITED STATES OF AMERICA, who were duly sworn in to perform their expert services. On the other hand, the appointment of Engineer RUBEN EDUARDO CHAPA CABRERA also took place, who is an Engineer in Electrical Systems, of the Instituto Tecnológico de Monterrey, Mexico, and official expert of the United Mexican States, duly Certified in Examining Digital Evidence in the areas of forensic investigation technology and Litigation Assistance, this Expert was proposed so that he could, according to the

information filed in the process, issue an expert opinion on criminal participation or non-participation.

**FOURTH**: The behavior of Mrs. BRENDA KARINA BARAHONA, in her eagerness to create incriminating evidence, has been revealed in different acts, for example: initially, the expert in her statement in the oral and public hearing held under file TS JN -3-88- 2017, accumulated 4-14-2018, before courtroom number one of the Court of Judgment with National Jurisdiction, has declared the following: "*QUESTIONS OF THE PUBLIC PROSECUTOR'S OFFICE Mrs. Barahona, let's start with SONY XPERIA Z1 TELEPHONE question: on what date did you receive the evidence to perform the Corresponding expert report? objected Judge in the chain consists when she received that evidence, we will declare it admissible thanks. QUESTION what method did you use to extract the information from that device? she answers: the forensic information extraction device was used for telephones, which is the UFED of the cellebrite brand, and with that the data was extracted from the telephone. Question. What information could you extract from this device? Answer: at that moment it was possible to extract text messages and incoming and outgoing telephone calls, it was possible to extract images, I cannot see here, I can see my computer. Judge can you verify what you put as an input, answer but the input I have it in the computer in the file that is here. Karovi, Esq. and judge but just like the repetitive question, that is already in the opinions, judge the opinion already has that information answers in the opinion with you regarding the case that you brought text messages, calls, images all that is already contemplated, ANSWERS yes the only thing that could not be extracted from this telephone set <u>because the cellebrite device in 2016 of its update did not have the update to extract WhatsApp messages</u> or <u>chats from the device</u> then they could not be extracted by the cellebrite, those were extracted manually, there were I think three chats and from those three the information was extracted manually and it was in the file that was delivered, it was a separate folder from where all those Whatsapp messages were extracted, that at the time could be seen on the device because this device I understand has 15 gigas of information and <u>all the information that it could not extract in 2016 was extracted now in 2018 because the update or the device used to do it is much more updated</u> it can now read that type of messaging and I managed to extract the messages <u>but in 2016 that the extraction was made, that update was not available yet.</u>"

*In a statement given on March 6, 2019, at nine o'clock IN THE FILE NUMBER 04 2018 of the Trial Court with National territorial jurisdiction in Criminal matters against Mr. DAVID CASTILLO she has declared* "I was sworn in for the extraction of the data of a *SONY EXPERIA Z-1* cell phone *of BERTA CACERES in 2016, there was a cellebrite available, the version I do not remember if it was updated at the time of the extraction and the information up to that moment is taken from device, two years later it is updated,* there are new components with which more information can be extracted, but the information provided is the information that we had, **I have not extracted more information two years later, no,** this is why the Public Prosecutor's Office requests the extension to extract information from that cell phone, **I have not performed another extraction**"

Note how the expert is not truthful in a statement made before two different courts despite declaring under oath, she has told the court her that the CELEBRITE system that she used was not updated in 2016 and, therefore, she made manual extraction, and she told the Trial Judge with National territorial jurisdiction in Criminal Matters that it was updated. She said to the court that in 2018 she made another extraction and she said to the trial judge that since 2016 she has never extracted information again. This lack of truth in a statement made before a judge in hearings and before the Court in oral and public hearing in which the defendant incurs by narrating two different versions according to her convenience in accordance with what has been requested by the prosecutor's office, being submitted to oath is motivated by the desire that at the second moment she has to review and extract information again, and we can even assume from her behavior that she has new information, which she must have already obtained if the CELEBRITE system was updated.

It is hereby requested to you, prosecutors, to establish and as it was stated in the course of this lawsuit that the expert in the trial before the court of judgment clearly stated that she performed a second extraction of the device in question, that even if it is not properly clarified if that extraction of the year two thousand and eighteen that she mentions was authorized by a competent judge. The above is brought up, since on March 6, 2019, the prosecutors present at the trial of Mr. DAVID CASTILLO requested an extension of the expert report performed on the SONY EXPERIA Z 1 cell phone, claiming that they needed to expand said expert report due to the fact that the cellebrite software used at that time (2016), was not duly updated.

The aforementioned, without prejudice to the fact that, as it has been mentioned, this shows the lack of truth of the expert who under oath has provided false statement before the Trial Court

with National Jurisdiction, intending to make a supposed extension to the expert report for not having or knowing the updated data, only until the year two thousand sixteen, situation that is totally contradictory, as we have said, compared to the statements she provided before the sentencing court, however, what concerns our client Mr. DAVID CASTILLO is the degree of manipulation to which the aforementioned information could be subject given the series of irregularities and criminal actions that have been evident in the actions of the expert BRENDA BARAHONA, both in the development of the judgment referred to the Court of judgment and in the process of DAVID CASTILLO. **Note that the defendant prosecutors have been the same ones who were both in the oral and public hearing and at the time of the swearing in, therefore they are aware of both contradictory statements and that the expert has manipulated the evidence on different occasions, endorsing this behavior and motivating it by proposing her to make a third extraction, also supporting her to lie to the Judge regarding the update of the CELEBRITY system used in 2016.**

**FIFTH:** The malicious behavior of Mrs. BRENDA BARAHONA becomes clear once again when obtaining the extractions made by the experts SHAUM R BODEN and JHONATAN LANGTON we noticed that the expert BRENDA BARAHONA, hsa hidden the existence of important chats such as:

**1.- the existing conversations between Mr. David Castillo and Berta Cáceres,** the above between the period on the first legible message of July 27, 2013 at 3:34:47 UTC +0 and on February 18, 2016 6:51:54 UTC +0, these conversations were especially important because they show the existence of a friendship relationship and constant communication between both of them, to the extent that multiple favors were made between them, mi client even coordinated the medical consultations of her mother, he accompanied her to the airport; obviously this suppression of such an important chat logically has resulted in separate damages. Which the prosecutors who have always been assigned to the case should not have ignored, let alone collaborate in its concealment because their duty of objectivity requires them to give the corresponding importance to those facts that prove the imputation and those that exempt it, those that extinguish it or mitigate it, but obviously it was not in the best interests of the prosecutors to reveal the excellent relationship between Mr. David Castillo and Mrs. BERTHA CACERES.

2. The last Whatsapp conversation between Mrs. BERTA CACERES and a person named YANIK SANSONET was broken, in which she talks about **"*SERIOUS THREATS, VERY SERIOUS*" THAT SHE RECEIVES FROM THE MINING SECTOR, AND THAT SHE FEARS THAT THESE THREATS CAN BECOME ACTIONS, HIGHLIGHTING THAT THIS MINING COMPANIES ARE NEARBY COPAN,** these messages were sent on the same day of her death; however, the expert only included in her expert report a fraction thereof omitting those that clearly showed that when referring to mining, she was very clear when distinguishing it from the hydroelectric project; it is worth mentioning that these messages of transcendental importance were ignored by the Public Prosecutor's Office through these prosecutors, to start what this investigation entity calls investigation lines, thus to date they still remain in impunity, because they have not even begun proceedings to corroborate and verify the authors of threats classified as **SERIOUS** by Mrs. BERTA CACERES.

**SIXTH:** The expert has proceeded to manipulate the evidence in an undue way and has even found in the extractions many conversations that had been deleted and that were extremely important to be able to do conduct an investigation within the framework of objectivity, since she is the person who was in contact with the evidence under the technical direction of prosecutors INGRID FIGUEROA AND JAVIER EDUARDO NUNEZ, and that it has entered into contradictions in her different declarations, in addition, she has maliciously not documented her handling of the evidence, and this in order to mislead the defense and the court; it is then appropriate to conduct an investigation to determine who made the deletion of those conversations of the cell phones investigated, **we highlight the fact that if those messages had been erased at the time of the first extraction made by the expert, this would have been recorded in her initial expert report,** but this is not the case, it was until the findings of the defense experts that this fact has been made evident by denoting a clear subtraction of the documentation and information submitted to the process. And it is also appropriate to highlight the fact that the same plaintiffs of COPINH have considered the lack of transparency of the Public Prosecutor's Office and have seen the need to present their own experts to also make these extractions.

8

**SEVENTH:** We show below one of the many images taken from the Opinion issued by the expert against DAVID CASTILLO, where there is evidence of the intentional malicious actions of the expert, who proceeds to make interpretations such as the following:

- According to the Whatsapp messages extracted from said telephone device, the numbers 99900946 (Roberto Davis Castillo) and 99926503 (Sergio Rodriguez), the following is observed:
    - On 10/29/2015, there is a group message which is sent by 99926503 (Sergio Rodríguez), indicating that they will take actions against Bertha and Tomas, which is copied by 99900946 (Roberto David Castillo).
    - After the event 03/03/2016, the numbers 99900946 (Roberto David Castillo) and 99926503 (Sergio Rodríguez), send messages to each other referring to the death of Bertha Cáceres and actions that have to be taken for said incident.

**Opinion Image Extract folio 736**

To make sense of this interpretation and transmit to the judge what she wants, the expert in a fraudulent manner and under the technical direction of the prosecutors assigned to the case, INGRID BELINDA FIGUEROA AND JAVIER EDUARDO NUNEZ, proceeds to elaborate a conversation in which the accommodation of messages is observed, since note in the identification number that there is no record sequence obtained from the same device, thus the tracking of the real historical line of the messages cannot be guaranteed due to the lack of order in the numbers of identifiers in the supposed timeline for the messages. In addition to the above, we find that the conversation attached on pages 14 to 16 (folio 736 to 738) of the same document referred to, it is a context without possibility of existing because they come from messages taken from different conversations **of two different message groups**, mutilated in their original order and overlapped to form a new conversation and a supposed new context pretending to give another meaning to it.  In other words, the expert in her opinion extension assembled a single conversation taking messages from two chat groups, and deleting important messages that gave meaning to each conversation, never stating in her opinion that this conversation was assembled, let alone that the messages came from other conversations and the existence of two chat groups, for greater details, I will take textually the results of the expert report prepared by the defense expert. (See opinion issued by the expert RUBEN CHAPA, which is part of the process of Mr.

ROBERTO DAVID CASTILLO.) We have highlighted the above because as noted in the third fact of the prosecutor's request filed against our client, a chat is mentioned, hiding having taken messages from different conversations, of different groups to form one conversation and unjustly incriminate our client; it is evident that the Public Prosecutor's Office endorses the actions of the expert and it is evident because it establishes that it is a single chat and this is still maintained by the prosecutors who were denounced at the initial hearing, in conclusion they have accused Mr. DAVID CASTILLO with fabricated evidence.

We have then that by means of the expert reports prepared by the defense, two chat groups are found on the telephone attributed to Mr. Sergio Rodríguez, data not disclosed by the expert, since she has created and mutilated these conversations to give them the incriminating sense desired. These groups the ones that are detailed below:

| Group name and subject | Telephone numbers that make it up | Number of members |
|---|---|---|
| Coordinación PHAZ<br><br>Subject: coordinate operational actions related to DESA company | 99926503<br>94728319<br>99557201<br>99821386<br>94508286<br>99900946<br>94570137<br>96240728<br>88700404<br>95840351<br>94559615 | Members: 11<br><br>Repeated members in the same groups: 5<br>(highlighted in yellow) |
| Seguridad PHAZ | 99926503<br>94528319 | Members: 10 |

| Subject: address situations to take care of incidents related to DESA company | 32787416 96002743 99900946 33924868 94570137 96240728 34620191343 94645441 | Repeated members in the same groups: 5 (highlighted in yellow) |
|---|---|---|

Subsequently, the expert proceeds to take sections of chats from both groups, data not disclosed in her comments or in the Prosecutor's request, let alone in the initial hearing, since it would reveal the criminal behaviors that are reported today, see the table attached to page eleven and twelve of the expert opinion issued by Mr. RUBEN CHAPA and which is attached to this complaint.

**Added to the fact that chats were taken from different groups, she also proceeded to eliminate previous and subsequent messages that gave it the real meaning, very different from the one intended by the prosecutors and their expert to the conversations, as shown in the opinion attached to this defense (page 15-20) issued by the expert RUBEN CHAPAS, and in the full printing of the group chats that have been distorted by the expert BRENDA BARAHONA.**

The expert has also omitted the existence of messages from the telephone number 50499900946 David Castillo and within the group of WhatsApp message conversations called Seguridad Phaz, which give the sense of the type of actions to be taken, being only licit acts:

From: From: 50499900946@s.whatsapp.net David Castillo

Timestamp:   09/11/2015   11:46:25   p.m.(UTC+0)

Source application: WhatsApp

Content:

There is the contact of the attorney Jerezano, criminal lawyer of Santa Bárbara

-----------------------------

From: From: 50499900946@s.whatsapp.net David Castillo

Timestamp: 09/11/2015 11:46:49 p.m.(UTC+0)

Source application: WhatsApp

Content:

To follow up on the accusations that must be filed of the Copinh

-----------------------------

From: From: 50499900946@s.whatsapp.net David Castillo

Timestamp: 09/11/2015 11:46:55 p.m.(UTC + 0)

Source application: WhatsApp

Content:

All types of complaints

-----------------------------

The messages before the shown message of the previous number of the message identifier 30842 of the Coordinación Phaz chat about previous news and that do not appear in the opinion, precisely because the interest of the expert BRENDA BARAHONA was to arrange those messages in order to sustain the accusation against Mr. DAVID CASTILLO based on the manipulation of the conversations that were the ones that originally served as basis for the prosecutor's request against our client.

It can also be seen how the expert has manipulated the conversations of Mr. Duglas Bustillo, as established by the expert proposed by the defense, within the opinion DETECI EX 0801-2016-00166, corresponding to the telephone device LG-D805G2 confiscated from Mr. Douglas Bustillo, the same problem above is found, however, it is possible to perceive said sequential order to then break such an order for the reasons explained above, i.e. there is no logical sequence in the order or arrangement of the messages as shown, by way of illustration in the extract of the whole conversation even without the proper order, when discovering the difference in dates before and after the facts investigated (March 3, 2016), a link with the facts or preparatory means that suggest the planning of the commission of a crime cannot be established. Observe in the chats that the blank boxes are attached, what happened to those messages?

Why Mrs. BRENDA BARAHONA did not indicate in her initial extraction that they had been erased? If this was the case, or maybe the expert did not expect the defense and the prosecution to make the extractions.

Finally, the degree of manipulation, distortion and alteration of data by the expert BRENDA BARAHONA is really evident, all of this as we have said with the prosecutors present being aware and supporting this actions since several years ago in the different investigation processes of the death of Mrs. BERTHA CACERES that the expert proposed by the defense and duly sworn in and incorporated his expert opinion related to the process concludes, among other very important aspects, the following:

*"WITHIN THE DOCUMENT ANALYSIS-DIVINV-DNII-NO.0004-2016, CONVERSATIONS WERE FOUND BETWEEN PAGES 14 TO 16, ASSEMBLED BY MIXING MESSAGES BETWEEN USERS OR DIFFERENT GROUPS OF USERS, THE OMISSION OF MESSAGES AND INSERTING THEM, EVEN WHEN THEY COME FROM DIFFERENT WHATSAPP GROUPS AND CONVERSATIONS, GIVING SENSE OF THIS FORM, TO A CONVERSATION THAT IS REAL APPARENTLY; BUT IT IS THE PRODUCT OF THE INTERCALATION OF MESSAGES OF DIFFERENT CONTEXT BECAUSE THEY ARE OF OR BELONG TO OTHER CONVERSATIONS, RESULTING FROM EXTRACTIONS OF THE TELEPHONE EQUIPMENT CONFISCATED TO MR. SERGIO RODRÍGUEZ AS MENTIONED ON PAGE 12. THE ABOVE WAS VERIFIED THROUGH THE EXTRACTIONS FROM THE PROSECUTOR'S OFFICE".*

II. **LEGAL ANALYSIS OF THE FACTS THAT ARE DENOUNCED THE FACTS DENOUNCED ARE SUBSUMED ACCORDING TO THE FOLLOWING OFFENSES:**

❖ **THE OFFENSE OF FALSIFICATION OF PUBLIC DOCUMENTS** provided for and sanctioned in the article 284 subsections 4 and 6, which establish the following:

*1)..., 2)..., 3...*

*4) Provide false statement in the narration of the facts.* Since she has issued false opinions by mutilating, building conversations drawn from different group chats to give an incriminating sense to the detriment of Mr. ROBERTO DAVID CASTILLO.

*6) Making in a true document any alteration or intercalation that changes its meaning*. As we have explained previously, with her actions, the expert has inserted into the original conversation fragments of other conversations that make the original conversation lose its meaning, giving in this way another idea or another message different than the original conversation.

**9) *Destroying, mutilating, suppressing or hiding a document.***

She has committed this crime by suppressing, hiding a large part of the Whatsapp conversations, especially the conversation between Mr. David Castillo and Mrs. BERTA CACERES, this in order to hide that they had a nice relationship of friendship; that Mr. DAVID CASTILLO, had never needed to follow up, because they had a total and perfect communication, they used to see each other, eat together, they used to do favors to each other, they informed each other of their trips, activities, illnesses and other circumstances related to a friendship.

Likewise, relevant aspects of the WHATSAPP conversations of Mrs. BERTA CACERES cell phone have been deleted, such as talks that she had only hours before her death with a person named YANIK SANSONE, in which she told him that he had serious threats from the mining sector, also talks with a person known in her messaging service as JUAREZ JUAREZ, where she expresses being threatened by different people throughout their conversation. The expert cannot argue that she did not know these conversations when in her first opinion she inserted the messages of conversion with YANIK that she found interesting, organizing them in a way to mislead the real meaning of the conversation.

***ARTICLE 289. WHO KNOWINGLY MAKES USE OF A FALSE DOCUMENT, COMPLETELY OR PARTLY, SHALL BE PUNISHED AS IF SUCH PERSON IS THE AUTHOR OF THE FALSIFICATION.***

It is evident that prosecutors INGRID BELINDA FIGUEROA and JAVIER EDUARDO NUNEZ were aware of the irregular actions reported today, that the opinions were prepared in such a way as to ensure the effectiveness of their actions in the process, they have worked hand in hand with the expert BRENDA BARAHONA, they have listened to her providing false statement in the different audiences, because they have been the public prosecutors assigned to the different processes, they have been witnesses of the falsity of Mrs. Brenda

by including in her opinion aspects both in ANALYSIS DIVINV-DNII-004-2006 and in the corresponding extension ANALYSIS-DIVINV DNII number 0004-2016, which arise only from her imagination, breaching the limits of her duties as expert, which do not allow her to assume or invent data, let alone emit judgments of value. It is important to establish that any agency or Directorate of Investigation, although it is true they act on their own initiative, it is

also true that they also do it according to the guidelines, orders, guidance and supervision of prosecutors of the Public Prosecutor's Office with respect to the facts that are investigated, evidencing that prosecutors have been very pleased with the insertion of data even if it is false or misleading, with the construction of conversations with an incriminating sense as well as with the concealment of conversations relevant to the discovery of real truth; even more serious, when questions from the same Prosecutor in oral and public hearings the expert has recognized that she has made two extractions and then she goes and declares before the Trial Judge who is aware of the proceedings against DAVID CASTILLO, that she has only made one extraction and that they need to perform one more extraction with the evident intention of creating new incriminating evidence.

*Article 290. When any of the offenses set forth in this chapter is committed by an official or public employee taking advantage of his position, the guilty party shall be punished, in addition, with absolute disqualification from two (2) to ten (10) years.*

**FALSE STATEMENT**

*Article 385. The witness, expert or interpreter who in his/her opinion, report, translation or interpretation, before a competent authority, provides total or partial false statement or prevents the truth from being known, shall be sanctioned with imprisonment from three (3) to five (5) ye ars.*
*The sanction will be from three (3) to six (6) years, if the false statement is committed in a criminal case to the detriment of the defendant.*
*In any case, absolute disqualification from three (3) to eight (8) years shall also be imposed.*
It is more than evidenced with the appearance of Mrs. Brenda Barahona at the Oral and Public Trial hearing held before the Court of Judgment according to file TS JN3-88-2017 accumulated on 4-14-2018, where she proceeds to ratify her opinion answering questions from the Public Prosecutor's Office that has made two extractions to the telephone assigned to Mrs. BERTHA CACERES, also that the CELLEBRITTE program she was using was not up to date, thus she did a manual extraction, she said it there to cover up the concealment she has made of relevant information and ensure an unjust sentence against the defendants, she said that in 2018 she made a second extraction and then in coordination with the Prosecutor INGRID FIGUEROA who, on February 4, 2019, requested the Trial Judge with National

Territorial Jurisdiction in Criminal Matters to inform the parties about the extraction of telephone information, with the expert declaring under oath at the hearing on March 6, 2019, where given the opposition of this defense, the judge proceeded to question the expert for the expert to explain the reasons for the extension of her expert report; and she stated the following: "*in 2016, there was a cellebrite available, the version I do not remember if it was updated at the time of the extraction and the information up to that moment is taken from device*". She provided false statement because she wants at all costs to perform a third extraction, manipulation of the phone in question to thereby facilitate the creation of new evidence to the detriment of Mr. DAVID CASTILLO.

### ❖ VIOLATION OF DOCUMENTS

*Article 358-A. Whoever subtracts, conceals, destroys or makes useless records or documents entrusted to the custody of a public official or of another person in the interest of the official authority or objects intended to serve as evidence before a competent authority, shall be sanctioned with imprisonment from three (3) to six (6) years.*

*If the author of the act is the same depositary, in addition to the previous penalty, the absolute disqualification shall be imposed for twice the duration of the sentence. If the act committed is attributable to the depositary, it shall be subject to a fine from ten thousand (lps. 10, 000.00) to thirty thousand (lps. 30, 000.00) lempiras.*

We know that the evidence, once the expert is sworn in within a process, is made available to and is responsibility of such expert in order to carry out its mission and thus knowing the results of her expert report and the expert reports of the defense and the private prosecutors, we realize that the evidence that was entrusted to her custody as a duly sworn expert altered part of the information contained in the evidence, hiding it, interspersing it and destroying it.

### ❖ AUTHORITY ABUSE

*Article 349. A punishment with imprisonment from three (3) to six (6) years and special disqualification for twice the length of the imprisonment, shall be imposed to the official or public employee who:*

*13 Omits, refuses or delays any act that must be performed in accordance with the duties of his/her office;*

We know that in the exercise of their functions, the prosecutors of the Public Prosecutor's Office shall have the inescapable obligation to act with absolute objectivity and ensure the correct application of laws thus, not only must they investigate the circumstances that allow proving their accusation, but also those that serve as mitigation or exemption from liability for the persons investigated and accused; it is evident that in this case, those duties of the prosecutors implicit in the law have been ignored since it was their responsibility in the investigations that we have mentioned related to the case of Mr. Roberto David Castillo, they had to ensure that all the evidence related to aspects that attenuated and released him from the accusatory relationship should have been brought to the attention of the defense and the Court by the prosecutors, let's remember that the specific tasks of the expert in coordination with the prosecutors was to relate and link telephone information obviously without altering the true meaning of the conversations, and without falsifying, interspersing and hiding the information with the sole purpose of changing the meaning to benefit the claims of the accusation. (Articles 15, 93, of the Criminal Procedure Code)

It is even more serious because we know that in the practice of the investigation measures, the prosecutors of the Public Prosecutor's Office are responsible for supervising and directing said investigations, and in that process the Law orders them to keep the utmost respect for the individual rights enshrined in the Constitution of the Republic and of the international conventions related to Human Rights to which Honduras is a party.

To the analysis of the investigations that in a malicious way have been distorted in this process, we clearly see the absence of that control that inescapably the prosecutors in charge of the case should have carried out, whether they were aware of these irregularities or not, their obligation by Law and in compliance with their duties due to their position, given the nature and complexity of the investigations in the case in question, it is when more care and duty of care should have been observed by the prosecutors INGRID BARAHONA AND JAVIER NUNEZ, in order to avoid loss of use, alteration, concealment and falsehood of the evidence referred to as telephone interventions, extractions in the process of Mr. DAVID CASTILLO.

The most serious situations of their actions, because when realizing that both opinions, the opinion ANALYSIS DIVINV- DNII -0004-2016 and the extension number ANALYSIS DIVINV- DNII -0004-2016, contained data that included the personal opinion of the expert, something that is not allowed to the expert in duty, also that linking expert reports were issued

hiding the conversations and existing relationship between DAVID CASTILLO AND BERTHA CACERES, as well as the Chats that show that Mrs. BERTHA CACERES received threats from different sectors and people, and also by endorsing the construction and mutilation of conversations to give a different meaning to them by placing messages strategically to achieve their purpose of incriminating people and satisfy the demands they had with respect to solving a case, they should have refrained from using such evidence, with only a conclusion that was not based on real data or objective data in accordance with the provisions of Article 194 of the Criminal Procedure Code, which establishes *"When prosecutors have evidence and know that they were obtained by unlawful methods, especially... human rights abuses, they shall refrain from using it; proceedings shall be imposed against those who have used these methods to obtain them, if it is considered that criminal responsibility has been incurred and all the necessary measures shall be adopted to ensure that those responsible appear before Justice."* Article 200 also establishes *"that the acts or facts that violate the procedural guarantees established in the Constitution of the Republic and in international conventions related to Human Rights shall not have evidentiary efficacy of which Honduras is a party; as well as when they are necessary consequence of such acts or facts and that it would not have been possible to obtain them without the information derived from them, without prejudice to the responsibility incurred by those who illegally obtained the information."* The Prosecutor, after becoming aware that the expert provided false statement in two different processes, had to denounce this fact, but rather the prosecutor has consented to it.

## PETITION ACCORDING TO LAW

With the evidentiary documents gathered in legal and due form, we respectfully request the Special Prosecutor: To have this complaint filed, to recognize the attached documents, carry out the corresponding legal procedure, carry out the investigation acts tending to evidence the facts expressed and ultimately resolve in accordance with the Law by filing the prosecutor's request against the defendants BRENDA CARINA BARAHONA, INGRID BELINDA FIGUEROA AND JAVIER EDUARDO NUNEZ for the offenses described above.

Tegucigalpa, M.D.C. April 5, 2019.