# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| IN RE: *EX PARTE* APPLICATION OF LAURA ZÚNIGA CÁCERES, BERTHA ZÚNIGA CÁCERES, AND SALVADOR ZÚNIGA CÁCERES FOR ASSISTANCE BEFORE A FOREIGN TRIBUNAL ) ) ) ) ) ) | CASE NO.: 1:19-mc-00405-LG-RHW |

**PROPOSED REPLY IN SUPPORT OF *EX PARTE* APPLICATION OF LAURA ZÚNIGA CÁCERES, BERTHA ZÚNIGA CÁCERES, AND SALVADOR ZÚNIGA CÁCERES FOR DISCOVERY FOR USE IN A FOREIGN TRIBUNAL PURSUANT TO 28 U.S.C. § 1782**

**I.   INTRODUCTION**

Applicants already demonstrated that their *Ex Parte* Application for Discovery for Use in a Foreign Tribunal Pursuant to 28 U.S.C. § 1782 (the "Application) should be granted. Dkt. Nos. 1, 2 & 4. The Opposition filed by the Castillos[1] nowhere establishes that the Application failed to meet the statutory requirements of 28 U.S.C. 1782 ("Section 1782"). Nor does it attempt to show that the factors identified by the Supreme Court in the seminal *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) decision—a case not even cited in the Opposition— militate against granting Applicants' request.

It is indisputable that Berta Cáceres was killed in cold blood; David Castillo was indicted for Ms. Cáceres's murder; and Ms. Cáceres's children seek to uncover the truth of how and why their mother was killed. Honduran law allows them to participate in the criminal proceedings and offer evidence. That is what they are doing. They have sought the assistance of this Court to obtain such evidence: a single file from a single bank about a single transaction. That single

---

[1] "Opposition" or "Opp." refers to the Response in Opposition to Application of Laura Zuniga Caceres, Bertha Zuniga Caceres, and Salvador Zuniga Caceres for Discovery for Use in a Foreign Tribunal Pursuant to 28 U.S.C. § 1782 filed by Tanya Romero-Baca on August 23, 2019. Dkt. No. 17. "App." and "Ex." refer to the Application and accompanying exhibits. Dkt. Nos. 1, 2 & 4. Additionally, this Reply Memorandum adopts the Opposition's shorthand, and refers to Ms. Romero-Baca and/or her husband David Castillo as "the Castillos."

file is relevant to the issue of whether David Castillo was paid for masterminding Ms. Cáceres's murder. The Court should grant Applicants' request and reject the Castillos' arguments based on non-existent legal requirements, a misreading of Honduran law, and a distortion of the role of the murder victim's children in the pending criminal trial in Honduras.

## II.  ARGUMENT

The framework for analyzing the Applicants' request is clear. Once Section 1782's three statutory requirements are met, a district court "is free to grant discovery in its discretion." *In re Solines*, No. 18-3680, 2018 U.S. Dist. LEXIS 82501, at *3-4 (E.D. La. Apr. 30, 2018) (emphasis omitted) (citation omitted); *see* App. at 7-8. The Court's discretion is guided by four factors articulated by the Supreme Court in *Intel*, and it "must" be exercised in "in light of the twin aims of the statute: 'providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts.'" *In re Metallgesellschaft AG*, 121 F.3d 77, 78 (2d Cir. 1997); *see* App. at 7-8 (citing *Intel*, 542 U.S. at 264-65).

As established in Applicants' opening memorandum, Section 1782's statutory requirements are easily met here, and the *Intel* factors strongly favor allowing the discovery. Because the Opposition does not credibly challenge any aspect of this conclusion, the Application should be granted.

### A.  The Opposition Does Not Credibly Dispute that the Application Meets the Statutory Requirements of Section 1782.

Section 1782 sets forth three requirements: (1) the person or entity from whom the discovery is sought must be a resident of or be found in the district where the application is filed, (2) the discovery sought must be "for use in a proceeding in a foreign or international tribunal," and (3) the application must be made "by a foreign or international tribunal" or "any interested person." 28 U.S.C. § 1782(a); App. at 7. At no point does the Opposition challenge the first requirement. The second and third requirements are also met notwithstanding the confusion the Castillos' Opposition attempts to sow.

First, while admitting that victims in Honduras have "robust 'victim rights,'" the Opposition asserts that possessing those robust rights "does not mean [Applicants] have the right to use judicial process to propound and compel discovery" under Honduran law. Opp. at 5-6.[2] In so arguing the Castillos have invented a non-existent legal requirement: Section 1782 does not require an applicant to have "discovery power" in the foreign jurisdiction in order to obtain federal district court assistance. What is required under the statute is that the evidence be "for use" in a foreign proceeding and that the request be made by an "interested party." Both of these requirements are met here.

In order to satisfy the "for use" requirement, an applicant need only demonstrate "that he or she has *the practical ability* to inject the requested information into a foreign proceeding." App. at 8-9 (emphasis added) (quoting *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 132 (2d Cir. 2017)). Indeed, courts have held that the mere ability to present evidence to an official or magistrate overseeing an investigation satisfies this factor. App. at 9 (collecting cases). Here, Applicants have the *explicit* right under Honduran law to present evidence in Castillo's murder trial through their private prosecutors (App. at 6; Ex. 11 arts. 294, 301, 321, 323 (pp. 148-51)) and have declared their intention to do so (App. at 6 (citing Fernández Decl. ¶ 8)), thereby easily satisfying the second Section 1782 requirement. The Castillos' attempt to impose an *additional* condition for obtaining Section 1782 discovery effectively concedes they cannot refute that the *actual* conditions have been established.

Nor can the Castillos seriously dispute that Applicants are "interested persons" under Section 1782. *See* App. at 10-11; *see Intel*, 542 U.S. at 256-57 (holding that in addition to litigants, any person who "merely possess[es] a reasonable interest in obtaining the [judicial] assistance" qualifies as an "interested person"). Whether or not Applicants have independent discovery power is of no moment to this analysis. As the Opposition itself acknowledges, Applicants' victim status entitles them to robust participation rights in Castillo's criminal trial.

---

[2] While unclear, Applicants assume that this argument is intended to challenge the "for use" and "interested person" requirements under Section 1782.

Opp. at 5-6; *see also* App. at 10-11 (listing the rights of victims under Honduran law to present arguments, submit evidence, and cross examine the accused). Moreover, any argument to the contrary is directly contradicted by the very legal authority cited in the Opposition—Article 16 of Honduras Criminal Code provides that "[t]he victims of a crime or misdemeanor will have the following rights: (1) [t]o become ***private accuser or complainant and to be involved as such throughout the entire*** **case**." Opp. at 6; Ex. 7 (emphasis added); *see also* App. at 10-11 (citing *Intel*, 542 U.S. at 256-57 (finding that party that had "significant role" in foreign proceeding "therefore qualifie[d] as an 'interested person'")).

To distract from the merits of the Application, the Castillos attempt to cast uncertainty over Applicants' role in David Castillo's murder trial by discussing their participation in ***a different*** criminal trial against a different set of defendants who perpetrated the murder of which Castillo stands accused of being the intellectual author.[3] Opp. at 6. Aside from the obvious credibility problems related to relying on a press release authored by attorneys representing DESA—the company at the center of the Agua Zarca Dam violence, which is ***headed by David Castillo*** (App. at 2-4)—the Opposition implicitly acknowledges that although they were subsequently "excluded" from the trial of the first eight men charged with Berta Cáceres's murder, Applicants did in fact intervene in the proceedings, highlighting that the Honduran court has already recognized them as victim-parties in the criminal proceedings related to their mother's murder.

That DESA's lawyers' characterization of what happened in the separate trial of those eight men is inaccurate is to be expected.[4] In reality, Applicants lodged an appeal seeking the recusal of three judges from the trial; after initially accepting the appeal, the court reversed course and ruled that because the appeal was not submitted in person, lawyers for the victims had

---

[3] Once again, though not at all clear, Applicants assume that this is an attempt to challenge the "for use" and "interested person" Section 1782 requirements.
[4] It bears mentioning that many of the exhibits cited in the Opposition (including a lengthy white paper) were authored by lawyers for DESA (Amsterdam and Partners LLP) or by David Castillo's personal lawyers. Applicants object to the Court's consideration of these documents to the extent they are cited for the truth of any information contained therein.

*abandoned* the case.  See Nina Lakhani, *Trial of Eight Accused of Murdering Honduran Activist in Chaos*, Guardian, https://www.theguardian.com/world/2018/oct/21/trial-of-accused-killers-of-berta-caceres-in-chaos.

Most critically however, the Opposition fails to explain how Applicants' purported exclusion from an entirely separate criminal proceeding is of any relevance to their role in ***the current*** murder trial against David Castillo or provide any suggestion that Applicants have been, are, or will be excluded from participating in Castillo's murder trial (nor would there be any reason for doing so).

The Application unquestionably satisfies all three Section 1782 statutory requirements, and the Castillos' disingenuous attempts to distract the Court from that fact should be rejected.

### B. All *Intel* Factors Favor Granting the Application, and the Opposition Leaves this Conclusion Undisturbed.

All *Intel* factors favor granting the Application: (1) the records sought are in Hancock Whitney Bank's possession, which is outside of the Honduran tribunal's jurisdictional reach and are thus inaccessible absent Section 1782 aid; (2) Honduras is receptive to U.S. federal-court judicial assistance in the murder trial against David Castillo; (3) the Application does not attempt to circumvent Honduran discovery procedures; and (4) Applicants' request for documents related to a single real estate transaction is not unduly intrusive or burdensome.  App. at 11-14; *see Intel*, 542 U.S. at 264-65.  The Opposition does nothing to tip the scales against the Court exercising discretion to grant this Application.

#### 1. The Opposition's Argument that the Application is Inconsistent with Honduran Law Does Not Demonstrate Lack of Receptivity.

The Opposition asserts that Applicants "are likely exceeding their rights under Honduran law" (Opp. at 8) and that their "request is inconsistent with or, at least, highly atypical under Honduran law" (*id.* at 11) in what might be read as a challenge to the second *Intel* factor—the Honduran court's receptivity to the discovery obtained pursuant to Section 1782.  The lack of legal citations to support these arguments is not an accident—it is because the Fifth Circuit has made it clear that "authoritative proof" or "clear directive" from the foreign court that it "would

reject evidence" produced in the United States is required in order to sway this factor against granting the Application. *Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 377-78 (5th Cir. 2010). The rationale for this requirement is the desire to avoid "speculative foray[s] into legal territories unfamiliar to federal judges." *Id.* at 378 (alteration in original) (citation omitted).

Here, the Opposition makes no such showing, let alone an authoritative one. The Castillos instead offer a strained reading of an inapplicable provision of Honduran law: Article 149 of the Honduran Criminal Code, which sets out a procedure for government authorities to obtain discovery aid from foreign states. Opp. at 9. However, the plain text of Article 149 does not declare the procedure outlined therein the exclusive method for obtaining foreign discovery assistance nor does it otherwise limit the ability of *individuals* to seek such assistance.

Indeed, courts have repeatedly found that the existence of alternative discovery procedures such as diplomatic Mutual Legal Assistance Treaties (MLATs) or letters rogatory does not constrain an individual applicant's ability to seek discovery through a Section 1782 request. *See In re FG Wilson (Eng'g), Ltd.*, No. 10-20839-MC, 2011 U.S. Dist. LEXIS 30756, at *5 (S.D. Fla. Mar. 24, 2011) (affirming granting of Section 1782 request and holding that Colombian procedural rule "'in no manner prohibits the seeking of evidence abroad through procedures in the United States' and 'merely provides a method' for doing so" (citation omitted)); *Weber v. Finker*, 554 F.3d 1379, 1383 (11th Cir. 2009) (finding that a U.S.–Switzerland MLAT "is silent on its applicability to discovery requests by non-States Parties criminal defendants" and affirming granting of Section 1782 discovery). Moreover, federal district courts have approved Section 1782 applications in cases very similar to the instant one. *In re Inversiones y Gasolinera Petroleos Valenzuela, S. de R.L.*, No. 08-20378-M, 2011 U.S. Dist. LEXIS 5201, at *40 (S.D. Fla. Jan. 19, 2011) (finding requirements met and factors favored granting Section 1782 discovery for use in Honduran criminal proceeding); *Campos-Álvarez v. Newmont Mining Corp.*, No. 1:14-cv-00208-REB, 2015 U.S. Dist. LEXIS 31916, at *5 (D. Colo. Mar. 16, 2015) (granting in part and denying in part Section 1782 discovery for use in a Peruvian proceeding involving provision similar to Article 149).

Thus, the Opposition's lukewarm argument that "Applicants' request *appears* inconsistent with Article 149 of the Honduran Criminal Code" (Opp. at 9 (emphasis added)) is not only baseless but also falls far short of the "clear directive" required to deny Applicants' access to probative evidence related to their mother's murder.

      **2.     The Opposition's Assertion that the Application is a Pretext is Baseless and Does Not Demonstrate Bad Faith or an Attempt to Circumvent Proof-Gathering Restrictions.**

One of the main accusations lodged in the Opposition is that Applicants' request is a bad faith pretext to obtain information that has no relevance to Castillo's murder trial (Opp. at 6-7), which presumably puts in question the third *Intel* factor—whether the Application attempts to circumvent proof-gathering restrictions. Nothing could be further from the truth.

As an initial matter, relevance under Section 1782 is broad and "encompasses any material that bears on, or that reasonably leads to other matters that could bear on, any issue that is or may be in the case." *In re HydroDive Nig., Ltd.*, No. 13-MC-0477, 2013 U.S. Dist. LEXIS 200238, at *7-8 (S.D. Tex. May 29, 2013) (citation omitted); *see* App. at 10-11. The records sought by Applicants are certainly relevant. Castillo made a large down payment on a home in the United States after the murder of Ms. Cáceres; Castillo is now on trial for that murder; court documents from the murder trial of Castillo's alleged co-conspirators, who have already been convicted, indicate that participants in the murder plot were paid for assassinating Ms. Cáceres. App. at 5.[5] Therefore, the relevance theory, as crisply summed up by the Opposition itself, is as follows: "Applicants . . . believe the Hancock Bank mortgage file includes evidence that Mr. Castillo was paid to coordinate Ms. Cáceres' murder." Opp. at 6. That there *could be* alternative explanations for how the Castillos acquired hundreds of thousands of dollars for a down payment is of no consequence to the determination of whether Applicants are entitled to potentially probative evidence.

---

[5] Contrary to the Castillos' assertion, *all* of the foregoing key facts were compiled from official public and government documents. *See* App. at 4-5; Exs. 8-10.

Additionally, Applicants' relevance theory is not inconsistent with the public prosecutor's theory that David Castillo intellectually authored Ms. Cáceres's murder. Being the "intellectual author" of the murder does not foreclose the possibility that Castillo received payment for his role in the assassination. In any event, under Honduran law, Applicants' private prosecutors are entitled to present theories and evidence separate and independent from the public prosecutor. *See* App. at 6 ("[A] private prosecutor may, after providing notice, raise issues and proceedings separate and apart from those pursued by the Office of the Public Prosecutor." (citing Ex. 11 art. 97)).

The Castillos' protestations that this Application is a pretext to locate their assets and harass them are conclusory and equally unavailing. First, as explained above, the information sought is highly relevant to the proceeding for which it is sought. Moreover, there is no reason for the victims to engage in a pretext in order to get the financial information of one of the men accused by the Honduran government of murdering their mother—if these victims had eyes on the assets of the mastermind of their mother's murder, they could bring tort claims and obtain this mortgage file in discovery in that action; there would be no reason to initiate this separate proceeding to get such information. Of course, Applicants have not done so and there is no basis for believing this action is a pretext to obtain discovery for the benefit of some non-existent action. The more obvious reason for this Application is the actual reason: these victims want the full story told on how and why their mother was murdered and have reason to believe the man who stands officially accused of being the architect of the murder was paid off for his despicable conduct. *See Campos-Álvarez*, 2015 U.S. Dist. LEXIS 31916, at *5 (rejecting argument the Section 1782 request "represent[ed] a spurious effort to obtain information from the respondents that will aid activist organizations in a long-standing social and political controversy in Peru, as opposed to a legitimate effort to gather information to further the ongoing and evolving two Peruvian proceedings").

The Castillos offer no evidence, as they are required, to demonstrate that the Application was "made in bad faith, for the purpose of harassment, or unreasonably seeks cumulative or

irrelevant materials." *Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1101 n.6 (2d Cir. 1995). Instead, they insinuate (without any factual support) that Applicants would use the records they seek "to harass the Castillos, to try to tap into or tie up th[eir] assets, or to interfere with Mr. Castillo's business relationships." Opp. at 8. Seemingly in furtherance of this claim, the Castillos disingenuously claim that Applicants "leaked" their **unsealed, publicly filed** Application to a reporter, while failing to explain how one can "leak" something that has never been secret. *Id.* Notably, in the case the Castillos cite to support their position, the court declined to find "bad faith" even though the applicant had failed to disclose two "parallel applications for Section 1782 relief" it had filed in other jurisdictions. *Green Dev. Corp. S.A. de C.V. v. Zamora*, No. 15-21594-MC, 2016 U.S. Dist. LEXIS 61701, at *7 (S.D. Fla. May 10, 2016); *see* Opp. at 7. Here, there is no allegation of conduct that comes even close to the conduct in *Zamora*, and the Castillos' conclusory allegations are simply insufficient to make a showing of bad faith. *See Solines*, 2018 U.S. Dist. LEXIS 82501, at *5 (finding no bad faith); *In re Chevron Corp.*, No. 4:10-mc-134, 2010 U.S. Dist. LEXIS 120479, at *3 (S.D. Tex. Apr. 5, 2010) (same).

The Opposition argues that Applicants are attempting an "end-run around foreign proof-gathering restrictions" because they have not sought government or court authorization in Honduras and because they allegedly have no "right to propound or seek discovery" under Honduran law. Opp. at 8-9. However, the Supreme Court has explicitly rejected such "foreign discoverability" and "exhaustion" requirements for seeking Section 1782 aid. *See* App. at 13 (citing *Intel*, 542 U.S. at 259-66); *Intel*, 542 U.S. at 260 ("Beyond shielding material safeguarded by an applicable privilege, however, nothing in the text of § 1782 limits a district court's production-order authority to materials that could be discovered in the foreign jurisdiction if the materials were located there."); *see also Inversiones*, 2011 U.S. Dist. LEXIS 5201, at *38-39 ("Applicants are not required to prove that all avenues of obtaining the discovery through Honduran procedures be exhausted before seeking relief under the judicial assistance statute."). The Opposition's false assertion that victims in Honduras have very limited non-discovery

rights, all of which are listed in Article 16 of the Honduran Criminal Code (Opp. at 8-9), is dispelled by Articles 294, 301, 321, and 323 which entitle victims to present arguments, **submit evidence**, and cross-examine the accused via a private prosecutor. *See* App. at 6, 11; Ex. 11.

### 3. Applicants' Request for Records Related to a Single Real Estate Transaction is Not Unduly Burdensome.

The Castillos' assertion that Applicants seek to obtain all of their financial information is simply false. Opp. at 7. From a single bank Applicants have sought a single file relating to a single transaction. The Application does not seek all documents related to all banking relations between the accused murderer and this bank or any other. And Applicants have made no similar requests to any other person or entity. A "fishing expedition" would be to explore every banking relation the Castillos have in the U.S., or even in Houston. Despite the Opposition's protests, this is not an intrusion upon the Castillos. Even if it were, any intrusion would be outweighed by the fact that David Castillo has been indicted for the murder of Applicants' mother, the discovery request is narrowed to a single real estate transaction, and the documents sought are highly relevant.

### III. CONCLUSION

For all of the foregoing reasons and the reasons set out in Applicants' opening memorandum, the Court should grant their Application.

Dated: September 16, 2019                    Respectfully submitted,

                                             By: /s/ Amelia S. McGowan
                                                Amelia S. McGowan

                                             MISSISSIPPI CENTER FOR JUSTICE
                                             Amelia S. McGowan, MSB# 103610
                                             5 Old River Place, Suite 203 (39202)
                                             P. O. Box 1023
                                             Jackson, Mississippi 39215
                                             Telephone: (769) 230-8003
                                             Facsimile: (601) 352-4769
                                             Email: amcgowan@mscenterforjustice.org

(Continued on next page.)

OF COUNSEL:

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
Leo P. Cunningham *Admitted Pro Hac Vice*
Ralitza S. Dineva *Admitted Pro Hac Vice*
Sean P. Killeen *Admitted Pro Hac Vice*
650 Page Mill Road
Palo Alto, California 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email: lcunningham@wsgr.com
   rdineva@wsgr.com
   skilleen@wsgr.com

INTERNATIONAL HUMAN RIGHTS LAW CLINIC, UNIVERSITY OF CALIFORNIA BERKELEY
Roxanna Altholz *Admitted Pro Hac Vice*
489 Simon Hall,
Berkeley, California 94720
Telephone: (510) 643-8781
Facsimile: (510) 643-4625
Email: raltholz@law.berkeley.edu