UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

IN RE: EX PARTE APPLICATION OF
LAURA ZUNIGA CACERES,
BERTHA ZUNIGA CACERES, AND
SALVADOR ZUNIGA CACERES
FOR ASSISTANCE BEFORE A
FOREIGN TRIBUNAL

CIVIL ACTION NO. 1:19MC405-LG-RHW

**PROPOSED FINDINGS OF FACT AND RECOMMENDATION**

Before the Court is Applicants' *ex parte* motion for discovery for use in a foreign tribunal pursuant to 28 U.S.C. § 1782.  Doc. [1].  Applicants are the adult children of Berta Isabel Caceres Flores (Ms. Caceres).  Doc. [2] at 6.  On March 2, 2016, several gunmen broke into Ms. Caceres' home and murdered her.  In March 2018, the Honduran Office of the Public Prosecutor indicted David Castillo Mejia (Mr. Castillo) for the murder of Ms. Caceres.  Doc. [4-8].  Although he is not accused of actually shooting Ms. Caceres, Mr. Castillo is alleged to be the "intellectual author" of the murder.  *Id.* at 9.  Applicants are participating in the criminal trial of Mr. Castillo through a private prosecutor, as permitted under Honduran law.  Doc. [4-13].

Mr. Castillo is a citizen of Honduras and a graduate of the United States Military Academy at West Point with a degree in electrical engineering.  Doc. [17-1].  He has served in the Honduran military and Honduran government.  He later entered the private sector to work for enterprises involving electric power projects.  At the time of Ms. Caceres' murder, he was president of Desarollos Energeticos S.A. (DESA).  DESA had obtained a concession from the Honduran government to construct a hydroelectric dam.  Prior to her murder, Ms. Caceres and the Council of Popular and Indigenous Organizations of Honduras (COPINH), which she co-

founded, had organized a successful opposition against DESA's hydroelectric dam project. The indictment alleges that as a result of Ms. Caceres' activities, DESA's shareholders have experienced "huge losses". Doc. [4-8] at 10-11.

In November 2016, approximately eight months after Ms. Caceres' murder, Mr. Castillo purchased a $1.6 million home in Houston, Texas, for which he made a down payment of approximately $400,000. Doc. [4-9]. Mr. Castillo is married to Tanya Romero-Baca. In Ms. Romero-Baca's affidavit, she explains she is a United States citizen, as are her three children by Mr. Castillo. Doc. [17-1]. As demonstrated by press clippings provided by Applicants, Ms. Caceres' murder was highly publicized and included accusations that Mr. Castillo was complicit in the crime. Doc. [4-2] [4-3] [4-5] [4-6] [4-7]. According to Ms. Romero-Baca, Mr. Castillo and his family became "targets" of Ms. Caceres and COPINH prior to the murder, which prompted them to hire personal security. Doc. [17-1]. Ms. Romero-Baca's safety concerns "were exacerbated by Ms. Caceres' death". Consequently, they decided to move to Houston, where Ms. Romero-Baca has family. Mr. Castillo continued to travel back and forth to Honduras for work, while his wife and children lived in Houston. According to Ms. Romero-Baca, as down payment for the home, they used money saved through income from companies owned by Mr. Castillo.

On July 17, 2019, Applicants filed the subject motion for discovery for use in a foreign tribunal pursuant to 28 U.S.C. § 1782. Doc. [1]. Applicants' motion requests the issuance of a subpoena for documents from Hancock Whitney Bank for use in the Honduran criminal proceeding against Mr. Castillo. Specifically, Applicants seek bank records related to the Houston real estate purchase made by Mr. Castillo and his wife. Doc. [2-2]. Hancock Whitney Bank holds the mortgage on the Castillos' property. With leave of Court, Ms. Romero-Baca

filed a response in opposition to the motion for discovery. Doc. [16] & [17]. Ms. Romero-Baca asserts that the application for discovery seeks disclosure of private financial information. Applicants filed their reply on September 23, 2019. Doc. [27].

## **Law and Analysis**

"Section 1782 allows an interested party to a foreign proceeding to apply to a United States district court in order to obtain discovery related to the foreign proceeding where the source of the discovery is not a party to the foreign proceeding and can be found within the jurisdiction of the district court." *Texas Keystone, Inc. v. Prime Nat. Res., Inc.*, 694 F.3d 548, 553-54 (5th Cir. 2012). Three statutory requirements must be satisfied before a district court may grant assistance under § 1782(a): (1) the person from whom discovery is sought must reside or be found in the district in which the application is filed; (2) the discovery must be for use in a proceeding before a foreign tribunal; and (3) the application must be made by a foreign or international tribunal or "any interested person". *Id.* at 553.

Respondent does not dispute whether the three statutory requirements have been met. Hancock Whitney Bank is located in the Southern District of Mississippi. Applicants seek to use the financial records in a criminal proceeding against Mr. Castillo in Honduras. Applicants are interested parties in the Honduran criminal proceeding by virtue of their role as private plaintiffs. Accordingly, the Court possesses the statutory authority to grant the discovery application.

A district court is not required to grant the "discovery application simply because it has the authority to do so." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004). District courts should consider the following *Intel* factors when determining whether to grant the requested discovery: (1) whether the person from whom discovery is sought is a participant in the foreign proceeding; (2) the nature and character of the foreign proceeding; (3) whether the

request conceals an attempt to circumvent foreign proof-gathering restrictions or policies of a foreign country or the United States; and (4) whether the requests are unduly intrusive or burdensome. *Id.* at 264-65.

With respect to the first factor, Applicants seek discovery of personal financial information belonging to Mr. Castillo (and his wife) through a subpoena issued to Hancock Whitney Bank. Although Hancock Whitney Bank is not a party or participant to the foreign proceeding, Mr. Castillo is a party to the foreign proceeding. He is an indicted criminal defendant in the custody of Honduran officials. Doc. [4-7] [4-8]. Presumably, Mr. Castillo's private financial information would be subject to investigation and discovery by the authorities in Honduras, if such information were relevant to the criminal indictment against Mr. Castillo. Certain financial records are in the possession of Hancock Whitney Bank, but the financial information itself belongs, in a sense, to Mr. Castillo. There may be obstacles, unfamiliar to this Court, which under Honduran law would prevent parties from obtaining the information directly from Mr. Castillo. District courts have been cautioned to avoid "speculative forays into legal territories unfamiliar to federal judges." *Euromepa S.A. v. Esmerian, Inc.*, 51 F.3d 1095, 1099 (2d Cir. 1995). The requested information is readily obtainable from Whitney Hancock Bank, a party who is subject to this Court's subpoena power. Thus, the Court finds this factor weighs in favor of granting the application.

The parties do not dispute the nature and character of the foreign proceeding. Mr. Castillo faces murder charges in Honduras. Applicants seek Mr. Castillo's private financial information for use in the subject criminal proceeding. Under Honduran law, private prosecutors have the authority to participate in criminal proceedings. This factor weighs in favor of granting the application.

With respect to the third factor, Applicants do not cite to any authority by which a private prosecutor may conduct discovery in a criminal proceeding in Honduras. Notably, the public governmental prosecutor is not the party seeking disclosure of Mr. Castillo and Ms. Romero-Baca's private financial information. Rather, it is the children of the murder victim who, as private plaintiffs, seek this discovery. Respondent argues that Applicants do not possess the right to conduct discovery or issue subpoenas under Honduran law. Doc. [17] at 8-9. Applicants do not directly dispute this contention but argue that private prosecutors have the right to participate in the criminal proceedings and to present evidence. Doc. [27] at 3. Of course, presenting evidence in a proceeding and possessing independent authority to conduct discovery are two different matters. Applicants further assert "[w]hether or not Applicants have independent discovery power is of no moment to this analysis." *Id.* The Court takes Applicants' failure to cite any positive authority and general evasiveness on this issue as an admission that they do not possess independent authority to conduct discovery under Honduran law.

It would seem anomalous to invest a foreign party with authority to conduct discovery in a United States district court when that same party lacks such authority within its home jurisdiction. At the same time, the Court recognizes that § 1782 does not contain a foreign discoverability or exhaustion requirement. *See In re Hansainvest Hanseatisch-GmbH*, 364 F.Supp.3d 243, 251 (S.D.N.Y. 2018). Nevertheless, district courts may find that a determination of discoverability under the laws of the subject foreign jurisdiction is a useful tool in exercising discretion. *Mees v. Buiter*, 793 F.3d 291, 303 (2d Cir. 2015). However, such considerations should not be afforded "undue weight". *Id.* Nor should a district court deny a § 1782 application "solely because such discovery is unavailable in the foreign court...." *Id.* As the Supreme Court has explained, "[a] foreign nation may limit discovery within its domain for reasons peculiar to

its own legal practices, culture or traditions—reasons that do not signal objection to aid from the United States federal courts." *Intel*, 542 U.S. at 261-62. "As a general matter, discovery under § 1782 need not mimic the discovery procedures of the foreign jurisdiction." *Siemens AG v. Western Digital Corp.*, 2013 WL 5947973, at *3 (C.D.Calif. Nov. 4, 2013); *but see In re Qualcomm*, 162 F.Supp.3d 1029, 1041-42 (N.D.Calif. 2016) (denying application where applicants sought more discovery than it could obtain through foreign procedures). Given the apparent lack of authority for Applicants to conduct discovery within their home jurisdiction, the Court finds this factor is neutral.

The fourth, and decisive factor for purposes of this analysis, is whether the discovery is "unduly intrusive or burdensome." The proper scope of discovery arising out of a § 1782 application is determined by the Federal Rules of Civil Procedure. *Gov't of Ghana v. Pro Energy Servs., LLC*, 677 F.3d 340, 343 (8th Cir. 2012). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case...." Fed. R. Civ. P. 26(b)(1). Requests are deemed "unduly intrusive and burdensome where they are not narrowly tailored, request confidential information, and appear to be broad fishing expeditions for irrelevant information." *In re Qualcomm*, 162 F.Supp.3d at 1043.

Applicants argue they want Mr. Castillo's private financial information to determine whether he was paid by someone to mastermind the murder of Ms. Caceres. Courts routinely treat financial information as subject to a privacy interest or privilege. *See Sky Medical Supply Inc. v. SCS Support Claims Services, Inc.*, 2017 WL 1133349, at *8 (E.D.N.Y Mar. 24, 2017) ("financial records (including banking records) fall within the scope of information to which a party enjoys a personal right or privilege."); *Insur. Distributors Int'l (Bermuda) Ltd. v.*

*Edgewater Consulting Group Ltd.*, 2010 WL 3064003, at *2 (W.D.Tex. Aug. 2, 2010) ("[p]ersonal financial information, such as one's income or bank account balance, is universally presumed to be private, not public."); *Arias-Zeballos v. Tan*, 2007 WL 210112, at *1-2 (quashing subpoena seeking documents related to defendant's purchase of residential real estate). As demonstrated by Ms. Romero-Baca's affidavit, she possesses a privacy interest in the financial information sought by Applicants.

Mr. Castillo has been charged as the "intellectual author" or mastermind of Ms. Caceres' murder. The Castillos' real estate transaction is not the subject matter of the Honduran criminal proceeding. There is no allegation, or even suggestion, in the criminal indictment that he received compensation for masterminding the murder. Applicants merely suggest that the owners of the dam construction project may have been the source of the funds for Mr. Castillo to purchase his home in Houston. Doc. [2] at 9. In her affidavit, Mr. Castillo's wife provides an alternative explanation for the source of the down payment. Doc. [17-1]. Applicants provide speculation, but no evidence, suggesting that Mr. Castillo funded the purchase of his home through any other source. In an affidavit, Mr. Castillo's criminal defense attorney in Honduras states that the prosecution "has not submitted any Documentary or Expert evidence demonstrating that my client, Mr. David Roberto Castillo, received any payments whatsoever for his alleged participation in the Murder" of Ms. Caceres. Doc. [17-2] at 4.

Even if Applicants were able to demonstrate a connection between the financial records and the allegations in the indictment, their discovery request is not narrowly tailored. Applicants seek the entire mortgage file, which contains detailed information about the income and assets of Mr. Castillo and his wife. Doc. [17-1] at 3. Presumably most of this financial information does not constitute evidence of cash payments to Mr. Castillo from murder-for-hire benefactors.

7

Thus, the discovery request is not narrowly tailored to the issues presented in the Honduran criminal proceeding.

Applicants' own arguments indicate that their request for Mr. Castillo and Ms. Romero-Baca's financial records is an impermissible "fishing expedition". They simply "*believe* that records obtained from Hancock Whitney Bank . . . will adduce evidence that Castillo received a large sum of money to orchestrate Ms. Caceres's murder and that he had a strong financial motive to carry out the assassination." Doc. [2] at 11 (emphasis added). They further "*believe* that this evidence may also help identify other, yet unknown, individuals who were involved in the killing." *Id.* (emphasis added). They offer nothing to substantiate these "beliefs". The Court requires more than unsubstantiated belief before it will order the disclosure of private financial information. Given the lack of nexus between the financial information and the charges in the criminal indictment, the undersigned recommends that the motion for discovery be denied.

## RECOMMENDATION

Based on the foregoing, the undersigned recommends that Applicants' Motion for Discovery be DENIED.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Pursuant to 28 U.S.C. § 636(b)(1), any party who desires to object to this report must serve and file written objections within fourteen (14) days after being served with a copy unless the time period is modified by the District Court. A party filing objections must specifically identify those findings, conclusions and recommendations to which objections are being made; the District Court need not consider frivolous, conclusive or general objections. Such party shall file the objections with the Clerk of the Court and serve the objections on the District Judge and on all other parties. A party's failure to file such objections to the proposed findings, conclusions

and recommendation contained in this report shall bar that party from a de novo determination by the District Court.  Additionally, a party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in this report within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions that have been accepted by the district court and for which there is no written objection. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

SO ORDERED AND ADJUDGED, this the 30th day of October 2019.

/s/ *Robert H. Walker*
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE