IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| IN RE: *EX PARTE* APPLICATION OF LAURA ZÚNIGA CÁCERES, BERTHA ZÚNIGA CÁCERES, AND SALVADOR ZÚNIGA CÁCERES FOR ASSISTANCE BEFORE A FOREIGN TRIBUNAL | CASE NO.: 1:19-mc-00405-LG-RHW |

**OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS**

**I. INTRODUCTION**

Laura Yolanda Zúniga Cáceres, Bertha Isabel Zúniga Cáceres, and Salvador Edgardo Zúniga Cáceres (together, "Applicants" or the "Cáceres Children") submit the instant Objections to Magistrate Judge Robert H. Walker's Proposed Findings of Fact and Recommendation (the "Recommendation" or "Rec."; Dkt. No. 28) that discovery of a single mortgage file under 28 U.S.C. § 1782(a) for use by a private prosecutor in a financially motivated homicide trial in Honduras be denied.  Rec. at 8.  The Recommendation correctly determined that the statutory pre-requisites for obtaining the discovery were met and that the first two of four discretionary factors recognized by the Supreme Court in *Intel Corporation v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004), favored granting the Application.[1]  Rec. at 3-4.  In concluding that the third factor was neutral and the fourth factor weighed against granting the Application, however, the Recommendation erred because it applied incorrect legal standards.

With regard to the third *Intel* factor, the Recommendation erred by imposing a non-existent—and expressly rejected—requirement that Honduras explicitly allow Applicants to seek

---

[1] "Application," "App.," and "Ex." refer to the *Ex Parte* Application of Laura Zúniga Cáceres, Bertha Zúniga Cáceres, and Salvador Zúniga Cáceres for Discovery for Use in a Foreign Tribunal pursuant to 28 U.S.C. § 1782 and accompanying exhibits filed on July 17, 2019.  Dkt. Nos. 1, 2 & 4.

the subject discovery instead of engaging in the correct inquiry—whether Tanya Romero-Baca ("Respondent") provided sufficient evidence to prove that Applicants acted in "bad faith" in requesting assistance under Section 1782 in an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 264-65. Because there is no evidence of "bad faith," much less of a Honduran restriction on the discovery sought here, this factor actually favors granting the Application, and the determination that it was neutral was erroneous.

As to the fourth *Intel* factor, the Recommendation erred in subjecting the discovery request to an impermissibly high relevance standard for assessing whether producing the mortgage file would be unduly intrusive or burdensome. Section 1782 sets a very low bar for "relevance" or "nexus" of the requested file to the Honduran trial; Applicants need only (and did) establish that the mortgage file is sought "for use" in that Honduran proceeding and that it "bears on, or [] reasonably leads to other matters that could bear on, any issue that is or may be in the case." *In re Veiga*, 746 F. Supp. 2d 8, 19 (D.D.C. 2010) (citing Fed. R. Civ. P. 26(b)(1)). The Recommendation incorrectly both required that the Applicants predict the precise contents of the file they are seeking (but have never seen) and relied on unsupportable factual assertions to conclude that this factor—the only one leaning against granting the Application—decisively tipped the scales against allowing the discovery. The facts in this case easily satisfy the permissive standard required for discovery, so under the proper analysis, this factor also favors granting the Application.

In light of these serious errors, this Court should reject the Recommendation that the Application be denied and enter an order granting the Application. Applicants request oral argument before the Court makes a determination on the issues raised by these Objections.

## II. FACTUAL BACKGROUND[2]

Applicants' mother, Berta Isabel Cáceres Flores ("Ms. Cáceres") was murdered in March 2016 by a group of men linked to Desarrollos Energéticos S.A. ("DESA"). App. at 4-5. Ms. Cáceres had been leading a successful campaign to halt the construction of a dam in western Honduras, which would adversely impact the local indigenous community if built. *Id*. at 2-4. DESA, the company building the dam, suffered significant financial losses as a result of Ms. Cáceres's activism. *Id*. at 5. David Castillo ("Castillo"), a former military intelligence officer, was the president of DESA. *Id.*

On March 1, 2018, Castillo was indicted for Ms. Cáceres's murder. *Id.* He was the ninth man arrested in connection with the assassination of Ms. Cáceres, and he stands accused of being the mastermind behind the murder, who had planned and coordinated the execution with paid mercenaries and other DESA employees. *Id*. Ms. Cáceres's assassination was financially-motivated—the criminal indictment against Castillo explicitly charged that he planned the murder because of the significant losses DESA was incurring as a result of Ms. Cáceres's activism. *Id.*; Ex. 8 at 50-51; *see also* Rec. at 1-2. Prosecutors also found evidence that the assassins were paid and that Castillo ordered another DESA employee to assemble the team of hitmen and facilitated their efforts. App. at 5; Ex. 8 at 51-52.

The Cáceres Children, who are victims of Castillo's crime, have intervened in the pending murder trial against him in Honduras via their private prosecutors, as they are entitled to do under Honduran law.[3] *Id*. at 5-6. The Honduran Code of Criminal Procedure explicitly allows a victim to become "a private plaintiff or complainant and to intervene as such"

---

[2] Applicants do not repeat here the detailed factual background set out in their Application (Dkt. 2 at 2-6), but instead provide a brief factual overview to lend context to their arguments.

[3] Applicants previously intervened in the 2018 trial of the other eight men implicated in Ms. Cáceres's murder.

throughout the criminal process.  *Id.* at 6; Ex. 11 art. 16(1) (p. 143).  Applicants' private prosecutors are specifically authorized to present evidence and arguments at pre-trial hearings and during trial, to cross-examine the defendant, and to ***raise issues and proceedings separate and apart from those pursued by the Office of the Public Prosecutor***.  App. at 6, 11; Ex. 11 arts. 97, 294, 301, 321, 323 (pp. 145, 148-51).

Victor Fernández, Applicants' private prosecutor, submitted a declaration to this Court stating that "the evidence [he has] compiled and reviewed indicates that Castillo had strong financial motives to carry out [Ms. Cáceres's] murder."  Ex. 13 ¶ 7.  Indeed, public records show that in November 2016—mere months after Ms. Cáceres's assassination and after six *other* men were arrested for the murder—Castillo purchased a palatial home valued at $1.6 million in Houston, Texas, making a ***$400,000 cash down payment*** and financing the rest of the purchase price through a mortgage held by Hancock Whitney Bank.  App. at 5; Ex. 9 at 59, 73; Ex. 10.  Mr. Fernández asserted that records related to Castillo's real estate purchase "will reveal that Castillo received a large amount of money to orchestrate the murder."  Ex. 13 ¶ 7.  The private prosecutor also declared his intent and ability to submit such evidence in the murder trial against Castillo in Honduras.  *Id.* ¶ 8

On July 17, 2019, the Cáceres Children filed their Application seeking leave to obtain limited document discovery related to the $1.6 million real estate purchase from Hancock Whitney Bank, which is headquartered in Gulfport, Mississippi.  Dkt. Nos. 1 & 2.  Tanya Romero-Baca, Castillo's wife, sought leave of court to oppose Applicants' request on August 5, 2019 (Dkt. No. 11), and on August 23, 2019, filed an opposition to the Application (Dkt. No. 17).  On September 23, 2019, Applicants filed a reply in support of their Application.  Dkt. No. 27.

On October 30, 2019, Magistrate Judge Walker recommended that this Court deny the Cáceres Children's Application. Dkt. No. 28. The Recommendation correctly found that Section 1782's statutory requirements were met and that the first two discretionary factors under *Intel* favored granting the Application. *Id.* However, the Recommendation erroneously determined that the third and fourth discretionary factors were neutral and disfavored granting the Application, respectively. *Id.* Applicants now object to the Recommendation and ask this Court to grant their Application.

### III.  STANDARD OF REVIEW

Where, as here, a magistrate judge issues a "proposed findings of fact and recommendations," the Court "shall make a de novo determination of those portions of the report . . . to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3) (the district judge must "determine de novo any part of the magistrate judge's disposition that has been properly objected to"). To prevent constitutional issues, courts must employ a "narrow reading of the matters in which a magistrate judge may enter orders without *de novo* Article III review." *Davidson v. Ga.-Pac., L.L.C.*, 819 F.3d 758, 763 (5th Cir. 2016); *see also In re Application for Discovery for Use in Foreign Proceeding Pursuant to 28 U.S.C. 1782.*, No. 17-4269-KM-JBC, 2019 U.S. Dist. LEXIS 5632, at *10 (D.N.J. Jan. 10, 2019) (assuming, without deciding, that the standard of review on a Section 1782 application was *de novo* when the magistrate judge's decision is styled as a report and recommendation).[4]

---

[4] Were the Court to review the Recommendation under a "clearly erroneous or contrary to law" standard, Applicants would still prevail in their Objections, including because they point to the application of incorrect legal standards as the basis for the Recommendation's denial of their Application.

IV. ARGUMENT

    A. **By Imposing a Non-Existent Legal Requirement that Honduras Explicitly Allow the Requested Discovery and Failing to Require that Respondent Prove Applicants' Bad Faith and Honduras's Restriction on this Discovery—which She Cannot—the Recommendation Erred in Failing to Determine that the Third *Intel* Factor Favors Granting the Application.**

        1. <u>Section 1782 is intended to allow discovery where the statutory prerequisites are met.</u>

Section 1782 authorizes a federal district court to order discovery of documents and testimony for use in a foreign proceeding. 28 U.S.C. § 1782(a). The statute seeks to "make discovery of evidence for use in foreign litigation simple and fair." *In re Edelman*, 295 F.3d 171, 173 (2d Cir. 2002). In enacting Section 1782, "Congress intended federal courts to provide ***broad assistance*** to foreign litigants who request permission to conduct discovery in the United States." *In re Sarrio S.A.*, 173 F.R.D. 190, 193 (S.D. Tex. 1995) (emphasis added). Importantly, the statute enables discovery in federal courts co-extensive with the Federal Rules of Civil Procedure. *Tex. Keystone, Inc. v. Prime Nat. Res., Inc.*, 694 F.3d 548, 554 (5th Cir. 2012).

The statute sets forth three pre-requisites—all of which were indisputably met here: (1) the person or entity from whom the discovery is sought must be a resident of or be found in the district where the application is filed; (2) the discovery sought must be "for use in a proceeding in a foreign or international tribunal"; and (3) the application must be made "by a foreign or international tribunal" or "any interested person." 28 U.S.C. § 1782(a); *Bravo Express Corp. v. Total Petrochems. & Ref. USA, Inc.*, 613 F. App'x 319, 322 (5th Cir. 2015); *see also* Rec. at 3.

Once the statutory pre-prerequisites are met, the Court's discretion whether to grant Section 1782 discovery is guided by the following factors set out by the Supreme Court: (1) whether the documents or testimony sought are within the foreign tribunal's jurisdictional reach and thus inaccessible absent Section 1782 aid; (2) the nature of the foreign tribunal, the character

of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the Section 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the subpoena contains unduly intrusive or burdensome requests. *Intel*, 542 U.S. at 264-65.

> 2. <u>There is no requirement that Honduras explicitly allow the discovery sought, and there was no showing that Honduras prohibits such discovery.</u>

The Recommendation erred in imposing a non-existent requirement in assessing the third *Intel* factor, which is limited to whether the applicant is using Section 1782 to "circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." 542 U.S. at 265. There is no requirement in the analysis of this factor that Honduras must explicitly allow the discovery, and Applicants are not required to prove that they exhausted discovery procedures in Honduras before filing their Section 1782 request. *Id.* at 260-63. To the contrary, the Supreme Court expressly considered—and rejected—such a requirement in *Intel*. "'If Congress had intended to impose such a sweeping restriction on the district court's discretion, at a time when it was enacting liberalizing amendments to the statute, it would have included statutory language to that effect.'" *Id*. at 260 (citation omitted).

Recognizing that the ***absence*** of an express discovery right is not the same as a ***prohibition*** of such discovery, federal courts regularly grant Section 1782 applications in cases where the applicant does not have the same discovery rights in the foreign forum. *See Mees v. Buiter*, 793 F.3d 291, 303 n.20 (2d Cir. 2015) ("That a country does not enable broad discovery within a litigation does not mean that it has a policy that restricts parties from obtaining evidence through other lawful means."); *Intel*, 542 U.S. at 259-63 (AMD's lack of discovery rights in the

foreign dispute did not prevent it from seeking discovery under Section 1782).[5] Indeed, without authoritative proof or a "clear directive" from a foreign government that it would reject the Section 1782 evidence, the district court should grant the application. *Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 377 (5th Cir. 2010) (citation omitted).

> 3. The Recommendation erred by placing "undue weight" on Applicants' purported failure to prove that Honduras explicitly allows the discovery sought.

The Recommendation erred by assigning "undue weight" to its determination that Applicants do not possess independent discovery rights in Honduras. While the Recommendation correctly observed that "the availability of the discovery in the foreign proceeding should not be afforded undue weight," (*see* Rec. at 5-6 (citing *Mees*, 793 F.3d at 303)), it nevertheless afforded such considerations undue weight in concluding that the third *Intel* factor is neutral.

The Recommendation's evaluation of the third *Intel* factor focused **exclusively** on Applicants' purported inability to conduct discovery in Honduras. *See* Rec. at 5 ("With respect to the third factor, Applicants do not cite to any authority by which a private prosecutor may conduct discovery in a criminal proceeding in Honduras."); *id.* ("Respondent argues that Applicants do not possess the right to conduct discovery or issue subpoenas under Honduran law . . . . Applicants do not directly dispute this contention but argue that private prosecutors have the right to participate in the criminal proceedings and to present evidence."); *id.* ("Of

---

[5] *See also In re Kiobel*, No. 16-CV-7992-AKH, 2017 U.S. Dist. LEXIS 9746, at *18-19 (S.D.N.Y. Jan. 24, 2017) ("The proper inquiry is not whether a Dutch court would grant the discovery . . . but whether the Dutch judiciary imposes a proof-gathering restriction or some other prohibition that precludes use of these materials in the Dutch proceeding."); *Al-Ghanim v. IAP Worldwide Servs., Inc.*, No. 6:11-CV-467-Orl-19DAB, 2012 U.S. Dist. LEXIS 200515, at *21 n.4 (M.D. Fla. Jan. 17, 2012) ("Plaintiff need not make a threshold showing that the discovery he seeks would have been discoverable in the Kuwaiti Court."); *In re Application of Hallmark Capital Corp.*, 534 F. Supp. 2d 951, 956 (D. Minn. 2007) ("The fact that the discovery requested in the United States might not be available in the foreign count[r]y at issue did not warrant a flat prohibition against providing the assistance under Section 1782.").

course, presenting evidence in a proceeding and possessing independent authority to conduct discovery are two different matters."); *id.* ("The Court takes Applicants' failure to cite any positive authority and general evasiveness on this issue as an admission that they do not possess independent authority to conduct discovery under Honduran law."); *id.* ("It would seem anomalous to invest a foreign party with authority to conduct discovery in a United States district court when that same party lacks such authority within its home jurisdiction."). The Recommendation failed to acknowledge the utter absence of any evidence suggesting that Honduras prohibits such discovery or that the Application was an affirmative "attempt to circumvent foreign proof-gathering restrictions." *Intel*, 542 U.S. at 264-65. There is no such restriction. Indeed, such a limitation would be inconsistent with Honduran law's grant of robust participatory rights to Applicants, including the ability to present evidence and issues independent from the public prosecutor in Castillo's trial. *See* App. at 6, 11; Ex. 11 arts. 97, 294, 301, 321, 323 (pp. 145, 148-51); *see also* Rec. at 1, 4.

Notably, the Recommendation made explicit its improper reliance on Applicants' alleged failure to prove that Honduras explicitly allows the discovery sought: "***Given the apparent lack of authority for Applicants to conduct discovery within their home jurisdiction***, the Court finds this factor is neutral." *Id.* at 6 (emphasis added). Therefore, the determination that the third *Intel* factor is neutral was the result of the Recommendation placing "undue weight" on its assessment regarding the availability of the discovery in Honduras and was erroneous.

    4. <u>Absent evidence that Applicants acted in "bad faith," this factor favors allowing the discovery.</u>

Unless there is an affirmative showing that the Section 1782 discovery is "being sought in bad faith," the third *Intel* factor favors granting the discovery. *In re Chevron Corp.*, No. 4:10-MC-134, 2010 U.S. Dist. LEXIS 120479, at *3-4 (S.D. Tex. Apr. 5, 2010); *see also In re*

*Schlich*, No. 16-91278, 2016 U.S. Dist. LEXIS 170769, at *18 (D. Mass. Dec. 9, 2016) ("The primary inquiry is whether the discovery is being requested in bad faith.").

For the third *Intel* factor to disfavor allowing the requested discovery, the record must establish that the application "is made in bad faith, for the purpose of harassment, or unreasonably seeks cumulative or irrelevant materials." *Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1101 n.6 (2d Cir. 1995). Without such proof, the third *Intel* factor favors granting the Application. *See In re Solines*, No. 18-3680 SECTION "R" (3), 2018 U.S. Dist. LEXIS 82501, at *3-4 (E.D. La. Apr. 30, 2018); *Schlich*, 2016 U.S. Dist. LEXIS 170769, at *18 (respondents offered "no evidence" to support the allegation of bad faith, so the third *Intel* factor weighed in favor of applicant). This is a high burden for a party opposing Section 1782 to meet. *See Green Dev. Corp. S.A. de C.V. v. Zamora*, No. 15-21594-MC-GOODMAN, 2016 U.S. Dist. LEXIS 61701, at *8-19 (S.D. Fla. May 10, 2016) (applicant's concealment of denial of two parallel Section 1782 applications was neither good nor bad faith); *In re Auto-Guadeloupe Investissement S.A.*, No. 12-MC-221-RPP, 2012 U.S. Dist. LEXIS 147379, at *19–23 (S.D.N.Y. Oct. 10, 2012) (applicant involved in multiple contentious lawsuits "*may* have acted in bad faith" by filing inaccurate application) (emphasis added).

Here, evidence of Applicants' bad faith is notably lacking. In her opposition to the Application, Romero-Baca baselessly claimed that Applicants' Section 1782 request was made for the purpose of harassment and invited the magistrate judge to "*infer* that this is an improper (or, at a minimum, premature) effort by Applicants to try to determine whether and where the Castillos have assets." Dkt. No. 17 at 7 (emphasis added). Respondent had no choice but to invite Judge Walker to "infer" bad faith conduct because no evidence of such conduct is actually presented. *See Schlich*, 2016 U.S. Dist. LEXIS 170769, at *17-18 (conjecture as to applicant's

bad faith, rather than presentation of concrete proof, was not enough to sway the third *Intel* factor in favor of respondent). To the contrary, as detailed in the private prosecutor's declaration, he has a good faith basis to seek evidence of payments received by Castillo relevant to the financially motivated murder for which he is on trial.

The utter absence of evidence of Applicants' bad faith dictates that the third *Intel* factor favors granting their request.[6]

**B. The Recommendation Erred in Assessing the Fourth *Intel* Factor—Whether Allowing Discovery of the Mortgage File Would Be Unduly Intrusive or Burdensome—by Imposing an Impermissibly High Relevance Threshold on the Application.**

1. Relevance under Section 1782 is broadly construed consistent with the Federal Rules of Civil Procedure.[7]

Section 1782 provides a "'threshold determination of whether to allow foreign litigants to enjoy discovery in U.S. courts in accordance with federal rules.'" *Tex. Keystone,* 694 F.3d at 554 (citation omitted). Once that threshold determination is met, "'[t]he manner in which discovery proceeds will be determined by normal discovery rules.'" *Id.* (citation omitted). The scope of discovery under the Federal Rules of Civil Procedure is broad and includes "any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). There is no requirement that the discovery be necessary to prevail in the foreign proceeding or

---

[6] *In re Qualcomm Inc.*, 162 F. Supp. 3d 1029 (N.D. Cal. 2016), on which the Recommendation relies, demonstrates how difficult the required showing of bad faith is to make. *Qualcomm* involves the exceedingly rare situation in which a foreign government, the Korean Fair Trade Commission ("KTFC"), filed an amicus brief to inform the district court that the applicant was circumventing important Korean fair trade discovery procedures, including the requirement that the applicant respond to unfair trading allegations without access to the evidence relied upon by the KFTC. *Id.* at 1041. Absent affirmative evidence that the foreign tribunal will reject the discovery, the district court should not assume that a lack of a discovery right in the home forum proves that the applicant is circumventing foreign proof-gathering restrictions. *Id.*

[7] This inquiry is normally conducted as a part of Section 1782's "for use" pre-requisite, but because the Magistrate Judge invoked the Rule 26 standard in his analysis of the fourth *Intel* factor, Applicants address it here.

that the evidence would even be admissible. *Mees*, 793 F.3d at 298. "The burden imposed on the applicant regarding this issue is *de minimis*. Relevancy in this context is 'broadly construed and encompasses any material that bears on, or that reasonably leads to other matters that could bear on, any issue that is or may be in the case.'" *In re Application HydroDive Nig., Ltd.*, No. 13-MC-0477, 2013 U.S. Dist. LEXIS 200238, at *7-8 (S.D. Tex. May 29, 2013) (quoting *In re Veiga*, 746 F. Supp. 2d at 19). All an applicant need demonstrate is "potential for the material, if not directly relevant, to lead to the discovery of information that bears on an issue in the case." *Id.* at *8.

    2. <u>The mortgage file easily meets the liberal discoverability standard under the Federal Rules, and the Recommendation's finding to the contrary was an error.</u>

The relevance of records of a large real estate purchase made by the man accused of masterminding a financially motivated murder mere months after the attack can hardly be disputed. Moreover, Applicants presented ample evidence of the nexus between the discovery and Castillo's prosecution. The criminal indictment explicitly tied the murder to the "huge losses" DESA, Castillo's employer, was suffering from Ms. Cáceres's opposition to dam project. Rec. at 2; App. at 4-5; Ex. 8 at 51-52. Other DESA employees were also tried and convicted for Ms. Cáceres's murder. App. at 5; Ex. 8 at 51-52. The carefully planned and long-running operation employed paid hitmen who maintained constant contact and closely monitored Ms. Cáceres's movement. App. at 5; Ex. 8 at 51. That such a complex undertaking required considerable resources is no conjecture, and evidence that could lead to their source is clearly relevant.

Moreover, Applicants submitted a declaration by the private prosecutor in which he attested that "the ***evidence*** [he had] compiled and reviewed"—including "documents, expert testimony, and other evidence [submitted] to the trial court"—"indicates that Castillo had strong

financial motives to carry out the murder." Ex. 13 ¶¶ 6-7 (emphasis added).  Thus, the records sought could show not only that Castillo was paid for his efforts to silence Ms. Cáceres, but can also uncover information leading to the source of the payments and to previously unknown culpable parties.  *Id.* ¶ 7.

The foregoing demonstrates that the discovery sought clears the low discoverability bar set by the Federal Rules and that the Recommendation erred in finding that it is irrelevant and/or lacking a nexus to the underlying murder trial.  *See* Rec. at 8.

> 3. <u>The Recommendation's finding that the discovery sought is not relevant was an error resulting from the application of an impermissibly high relevance standard.</u>

The Recommendation impermissibly raised the applicable relevance standard by requiring that Applicants present "evidence" to rebut Romero-Baca's alternative explanation for the source of the down payment on Castillo's $1.6 million home.

While the party opposing discovery can offer alternative explanations regarding the evidence or an opinion regarding its worth, such explanations and opinions do not make the discovery any less relevant.  *See Veiga*, 746 F. Supp. 2d at 18 ("Surely, in enacting § 1782(a), Congress did not intend for district courts to assess the weight of individual pieces of evidence in excruciating detail, and then attempt to discern the precise nexus between such evidence and the claims and defenses raised in the foreign proceeding.").

The Recommendation erroneously relied on a finding that Applicants did not produce "evidence" that Castillo "funded the purchase of his home through" sources other than those claimed by his wife. Rec. at 7.  In requiring the Applicants to adduce such evidence at this stage, the Recommendation required that Applicants already possess precisely the evidence being sought by the Application—an impossibility.  Such a requirement puts Applicants in a "catch-22": they cannot get the mortgage file unless their Application for discovery is granted; but their

Application for discovery cannot be granted unless they have the mortgage file.  Moreover, requiring such evidence is contrary to the broad discovery afforded under Rule 26, which allows a party to investigate.  *See* Fed. R. Civ. R. 26(b)(1); 8 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2001 (3d ed. 2019) (one purpose of federal discovery rules is to "secure information about the existence of evidence that may be used at the trial and to ascertain how and from whom it may be procured, as for instance, the existence, custody, and location of pertinent documents or the names and addresses of persons having knowledge of relevant facts").

    4. <u>Contrary to the Recommendation's determination, Respondent's privacy interest in her financial records does not shield the information from discovery.</u>

While Romero-Baca has a privacy interest in the underlying financial records, that interest, alone, does not make the financial information undiscoverable.  *See Sky Med. Supply Inc. v. SCS Support Claim Servs.*, No. CV 12-6383 (JFB) (AKT), 2017 U.S. Dist. LEXIS 43668, at *26-27 (E.D.N.Y. Mar. 24, 2017) (granting subpoena, in part, even though it resulted in disclosing a party's personal financial information).  Once a party establishes standing to challenge a subpoena based on a privacy interest in the documents sought, the party must still prove that the financial records are not within the scope of discovery under Rule 26(b)(1).  *Id.* at *40.[8]

Consistent with the broad discovery allowed by the Federal Rules, courts routinely grant

---

[8] Along with *Sky Med.*, the Recommendation cites *Ins. Distribs. Int'l (Bermuda) Ltd. v. Edgewater Consulting Grp. Ltd.*, No. A-08-CA-767 AWA, 2010 U.S. Dist. LEXIS 77957 (W.D. Tex. Aug. 2, 2010) and *Arias-Zeballos v. Tan.*, No. 06 Civ. 1268 (GEL)(KNF), 2007 U.S. Dist. LEXIS 5068 (S.D.N.Y. Jan. 24, 2007) in support of its rejection of the Application. Rec. at 6-7.  However, neither case prevented discovery of financial documents for privacy or privilege reasons.  *Ins. Distribs.* concerned a motion to redact a publicly-filed trial transcript's references to a party's financial affairs.  2010 U.S. Dist. LEXIS 77957, at *2.  The court in *Arias-Zeballos* quashed a subpoena seeking documents related to a residential real estate transaction because the judge had dismissed claims related to the transaction, thereby rendering discovery into the transaction irrelevant.  2007 U.S. Dist. LEXIS 5068, at *4-5.  Neither court quashed a subpoena solely because the subpoena sought financial documents.

Section 1782 discovery of financial information.  *See Gyptec, S.A. v. Hakim-Daccach*, No. 16-20810-CIV-WILLIAMS/MCAILEY, 2019 U.S. Dist. LEXIS 59024, at *8-9 (S.D. Fla. Feb. 13, 2019) (compelling production of IRS Forms 3520 in response to motion to compel related to a Section 1782 application); *In re Bernal*, No. 18-21951-MC-WILLIAMS/TORRES, 2018 U.S. Dist. LEXIS 212722, at *28 (S.D. Fla. Dec. 18, 2018) (approving subpoena for deposit and transfer records from two LLCs); *In re Ferrer*, No. 18-20226-CIV-O'SULLIVAN, 2018 U.S. Dist. LEXIS 111172, at *29-30 (S.D. Fla. July 3, 2018) (approving subpoena for personal financial records of three individuals).

Respondent's privacy interest in her financial information is not an absolute privilege against discovery, and her limited privacy interest does not outweigh the Cáceres Children's right to discovery relevant in the murder trial of the man charged with orchestrating their mother's murder.  To the extent the Court is concerned about the Castillos' privacy rights, the appropriate remedy is issuance of a protective order and not outright denial of the Application.  *See In re Application of Accent Delight Int'l Ltd.*, No. 16-MC-125 (JMF), 2018 U.S. Dist. LEXIS 97673, at *20 (S.D.N.Y. June 11, 2018) ("Moreover, to the extent Sotheby's has concerns about confidentiality, the appropriate remedy is a protective order."); *HydroDive*, 2013 U.S. Dist. LEXIS 200238, at *11 (allowing Section 1782 discovery pursuant to protective order).

     5. <u>The Recommendation's evaluation of the fourth *Intel* factor was infected by factual findings that that have no bearing on the analysis</u>

The Recommendation erroneously raised doubt about the relevance of the discovery because it is Applicants who seek it (for use by their private prosecutors in Castillo's trial) instead of the Honduran public prosecutor.  *See* Rec. at 4 ("Presumably, Mr. Castillo's private financial information would be subject to investigation and discovery by the authorities in Honduras, if such information were relevant to the criminal indictment against Mr. Castillo.");

*id.* at 5 ("Notably, the public governmental prosecutor is not the party seeking disclosure of Mr. Castillo and Ms. Romero-Baca's private financial information.").

However, the text of Section 1782 plainly authorizes discovery by "interested persons" "for use" in criminal cases. 28 U.S.C. § 1782(a). All that is required is that the applicant have the "practical ability to inject the requested information into a foreign proceeding." *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 132 (2d Cir. 2017). "The existence of a formal process for criminal authorities to gain discovery through official channels does not mean that victims cannot obtain discovery in aid of a foreign criminal investigation." *In re O2CNI Co.*, No. C 13-80125 CRB (LB), 2013 U.S. Dist. LEXIS 155138, at *28 (N.D. Cal. Oct. 29, 2013); *see also In re FG Wilson (Eng'g), Ltd.*, No. 10-20839-MC, 2011 U.S. Dist. LEXIS 30756, at *5 (S.D. Fla. Mar. 24, 2011) (affirming granting of Section 1782 request and holding that Colombian procedural rule "'in no manner prohibits the seeking of evidence abroad through procedures in the United States' and 'merely provides a method' for doing so" (citation omitted)); *In re Inversiones y Gasolinera Petroleos Valenzuela, S. de R.L.*, No. 08-20378-M, 2011 U.S. Dist. LEXIS 5201, at *40 (S.D. Fla. Jan. 19, 2011) (*Intel* factors favored granting Section 1782 discovery for use in Honduran criminal proceeding).

The fact that the Honduran government has not availed itself of Section 1782's procedures has no bearing on the analysis. It is undisputed that Applicants are interested parties who can present evidence in the murder trial against Castillo in Honduras. Rec. at 1, 3; App. at 6, 11; Ex. 11 arts. 16, 17, 97, 294, 301, 321, 323 (pp. 143-51).

Moreover, the Recommendation's skepticism regarding the entitlement of a private prosecutor to raise issues and obtain evidence separate and apart from government authorities ignores the very reason such parallel judicial processes exist. The purpose of private prosecution

is to ensure that justice is served in countries where impunity and corruption are rampant, and often condoned by governments.  *See generally* Verónica Michel and Kathryn Sikkink, Law and Society Review, Human Rights Prosecutions and the Participation Rights of Victims in Latin America (2013).

These considerations are not merely abstract in the instant case.  Honduras has one of the highest murder rates in the world and is notorious for the government's failure to prosecute crimes.  In recognition of the fact that "Honduran military and police commit human rights abuses, including killings, with impunity," on March 28, 2019, the United States House of Representatives introduced the "Berta Cáceres Human Rights in Honduras Act," which would "suspend United States security assistance with Honduras until such time as human rights violations by Honduran security forces cease and their perpetrators are brought to justice."  *See* Berta Cáceres Human Rights in Honduras Act, H.R. 1945 § 2(5) and Title, 116th Cong. (2019), https://www.congress .gov/116/bills/hr1945/BILLS-116hr1945ih.pdf.  The proposed legislation specifically recognized the "deep complicity of the Honduran government" and its attempts to shield from prosecution individuals involved in Ms. Cáceres's murder because of the government's connection to parties involved in the dam's construction.  *Id.* § 2(18).  Remarks in the Senate echoed this sentiment:

> I was a prosecutor before I became a Senator. I prosecuted many murder cases. While premeditated murder is a horrific crime, it is often relatively easy to prove. And in Berta Cáceres' case, there was a lot of evidence. So to those who ask why, three years later, we are still waiting for justice, I think the answer is obvious. There are powerful forces within the Honduran Government who are beyond the reach of the Honduran justice system, and the Attorney General recognizes that.

*See* Patrick Leahy, Address on the United States Senate Floor on the Third Anniversary of the Murder of Berta Cáceres (Mar. 4, 2019), https://www.leahy.senate.gov/press/030419 bertacacerasanniversarystmt.  Given the country's serious problems with corruption, the fact that

the Honduran government has not pursued the discovery Applicants now seek is neither relevant nor surprising.

## V. CONCLUSION

For the foregoing reasons, the Court should sustain Applicants' Objections and grant their Application.

Dated: November 13, 2019                     Respectfully submitted,

By: /s/ Amelia S. McGowan
    Amelia S. McGowan

MISSISSIPPI CENTER FOR JUSTICE
Amelia S. McGowan, MSB# 103610
5 Old River Place, Suite 203 (39202)
P. O. Box 1023
Jackson, Mississippi 39215
Telephone: (769) 230-8003
Facsimile: (601) 352-4769
Email: amcgowan@mscenterforjustice.org

(Continued on next page)
OF COUNSEL:

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
Leo P. Cunningham *Admitted Pro Hac Vice*
Ralitza S. Dineva *Admitted Pro Hac Vice*
Sean P. Killeen *Admitted Pro Hac Vice*
650 Page Mill Road
Palo Alto, California 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email: lcunningham@wsgr.com
       rdineva@wsgr.com
       skilleen@wsgr.com

INTERNATIONAL HUMAN RIGHTS LAW CLINIC, UNIVERSITY OF CALIFORNIA BERKELEY
Roxanna Altholz *Admitted Pro Hac Vice*
489 Simon Hall,
Berkeley, California 94720
Telephone: (510) 643-8781
Facsimile: (510) 643-4625
Email: raltholz@law.berkeley.edu