IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| IN RE: *EX PARTE* APPLICATION OF LAURA ZÚNIGA CÁCERES, BERTHA ZÚNIGA CÁCERES, AND SALVADOR ZÚNIGA CÁCERES FOR ASSISTANCE BEFORE A FOREIGN TRIBUNAL ) ) ) ) ) ) | CASE NO.: 1:19-mc-00405-LG-RHW |

**REBUTTAL IN SUPPORT OF OBJECTIONS TO MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS**

I.   **INTRODUCTION**

Respondent's husband stands accused of masterminding the cold-blooded murder of a woman who threatened the bottom line of his company and its well-connected stakeholders by leading a principled opposition to the company's dam project.  The wife of the duly accused killer obtained a startling recommendation from the magistrate judge in this case: her purported privacy interests in a mortgage file prevent victims of the murder from obtaining that file for use in a criminal prosecution even though it is believed to contain evidence relating to the financing of the financially-motivated killing.  Having induced that shocking result from the magistrate judge, Respondent would now have it cemented by truncating review by this Court—she spends half of her 10-page submission arguing against the applicable *de novo* review.  In her Opposition ("Opposition" or "Opp."; Dkt. No. 33) to Applicants' Objections ("Objections" or "Obj."; Dkt. No. 32) to Magistrate Judge Walker's Recommendation, the wife continues to advance meritless arguments of the type that resulted in the erroneous Recommendation in the first place.[1] Applicants demonstrated that the Recommendation was the product of significant legal errors: it

---

[1] All terms previously defined in Applicants' Objections have the same meaning here.

imposed a non-existent requirement that Applicants demonstrate their ability to seek the subject discovery in Honduras, failed to require that Respondent offer any evidence of a bad faith attempt by Applicants to circumvent foreign legal restrictions, applied an impermissibly high relevance threshold to the file sought by the Application, and gave no consideration to accommodating any legitimate privacy interest with the judicial tools routinely used for just that, such as redaction or protective order. Because all factors set out in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241 (2004) favor allowing the discovery, this Court should set aside the Recommendation and grant the Application.

## II. THE STANDARD OF REVIEW IN THE FIFTH CIRCUIT IS *DE NOVO*

As Respondent concedes, "[t]he standard of review applicable to a party's objections to a magistrate judge's ruling depends on whether the objections pertain to a dispositive or nondispositive matter." Opp. at 5 (citation omitted); Fed. R. Civ. P. 72; 28 U.S.C. § 636(b). Recognizing that it must look at the ***effect*** of such a ruling to determine whether the matter is dispositive, the Fifth Circuit Court of Appeals has unequivocally held that a decision whether to grant or deny a Section 1782 application is a final disposition. *Tex. Keystone, Inc. v. Prime Nat. Res., Inc.*, 694 F.3d 548, 552 (5th Cir. 2012). "While a discovery order generally is not a final, appealable order" where, as here, "the controversy is the discovery dispute; [] the matter involves procedural due process and discovery issues, which are separate from the merits of the underlying [foreign litigation]; and . . . is effectively unreviewable because there is no other recourse for reviewing the order, since the merits litigation is in a foreign jurisdiction," the decision is a final, appealable order. *Id.*; *see also* 12 Wright & Miller, Fed. Practice & Proc. § 3068.2 (3d ed. 2019) ("[D]iscovery rulings should ordinarily be viewed as nondispositive. One situation related to discovery does qualify as dispositive, however. Under [28 U.S.C. § 1782], a party to a litigation before a foreign tribunal may apply to a U.S. District

Court for assistance in obtaining discovery to be used in that foreign proceeding. The sole purpose of the proceeding is to obtain discovery, and accordingly a motion to compel such discovery is a final, dispositive matter.").

Consistent with the Fifth Circuit's clear instruction, *every* district court in this Circuit to face the issue has reviewed a magistrate judge's decision on a Section 1782 discovery application under a *de novo* standard. *In re Solines*, No. 18-3680 Section "R" (3), 2018 U.S. Dist. LEXIS 81481, at *1 (E.D. La. May 15, 2018) (*de novo* review of magistrate judge's ruling on application for discovery under 28 U.S.C. § 1782); *In re Gazprom Latin Am. Servicios, C.A.*, Misc. A. No. 4:14-mc-1186, 2016 U.S. Dist. LEXIS 87175, at *33 (S.D. Tex. July 6, 2016) (same); *In re Trygg-Hansa Ins. Co.*, 896 F. Supp. 624, 628 (E.D. La. 1995) (same). Indeed, Magistrate Judge Walker himself recognized that his Recommendation is subject to *de novo* review upon objections by a party. Rec. at 8-9 ("A party's failure to file [] objections to the proposed findings, conclusions and recommendation contained in this report shall bar that party from a ***de novo determination by the District Court***.") (emphasis added). Respondent's request that the Court abandon the law of this Circuit and evaluate the Recommendation under a "clearly erroneous" standard must be rejected.

Moreover, the Fifth Circuit recently reaffirmed the "constitutional limits on non-Article III judges" by holding that a magistrate judge may not enter a remand order without *de novo* review by the district court. *Davidson v. Ga.-Pac., L.L.C.*, 819 F.3d 758, 763-64 (5th Cir. 2016). Mindful that the "[t]he duty to avoid constitutional difficulties when interpreting a statute warrants a narrow reading of the matters in which a magistrate judge may enter orders without *de novo* Article III review," the court held that even though a motion to remand is not in the enumerated list of dispositive motions in 28 U.S.C. § 636(b)(1)(A) and is not "dispositive" of

either party's claims or defenses under Rule 72, "a remand order ***is dispositive insofar as proceedings in the federal court are concerned***,' and thus is '***the functional equivalent of an order of dismissal***.'" *Id.* (emphasis added) (citation omitted).  The court noted that "a merits determination is not a necessary feature of a 'dispositive' matter as the statute labels requests for preliminary injunctions and class certification as dispositive." *Id.*  Thus, *de novo* review of the magistrate's decision was necessary in order to avoid a result in which "an Article III judge might never exercise *de novo* review of a case during its entire federal lifespan." *Id.*

Here, the magistrate's Recommendation on Applicants' Section 1782 request is dispositive of the entire case in federal court and therefore warrants *de novo* review by the district court.  Without such review, the matter would receive no *de novo* determination by an Article III judge throughout the "federal lifespan" of the proceeding.  *See Davidson*, 819 F.3d at 764.  Indeed, the rationale in *Davidson* applies to the instant case with even greater force: there, the court emphasized the finality of the magistrate's ruling even though the case would proceed in Louisiana state court.  *See id.* at 761, 764.  Here, the Recommendation would terminate the case and extinguish Applicants' ability to proceed in ***any*** U.S. court without ever submitting the decision for a *de novo* determination by an Article III judge.  *Davidson* clearly prohibits such a result.  *See id.* at 763-64.

In addition, a ruling on Applicants' discovery request for evidence for submission in a murder trial is dispositive not merely because it disposes of the entire federal proceeding, but also because it disposes—albeit prematurely and perhaps unintentionally—of the question of whether or not Applicants can admit the evidence they expect to find in the criminal proceeding in Honduras.  As such, the denial of the Application is tantamount to a decision on a motion "to suppress evidence in a criminal case," which Congress has explicitly excluded from magistrate

jurisdiction and which Respondent recognizes is "dispositive" and therefore subject to *de novo* review.  28 U.S.C. § 636(a)(1)(B); *see* Opp. at 3.

In the face of the Fifth Circuit's authoritative pronouncement to the contrary, Respondent cites to a number of out-of-circuit district court opinions to argue that the Recommendation is non-dispositive and should be reviewed for "clear error." Opp. at 1-6.  Far from the purported consensus Respondent presents, there is a recognized split of authority among and within circuits on this issue outside of the Fifth Circuit.  Second and Ninth Circuit courts, on whose decisions Respondent heavily relies (*see* Opp. at 2, 5), have explicitly recognized this tension.  *See, e.g.*, *In re Cohen*, No. 16-MC-2947 (MKB), 2016 U.S. Dist. LEXIS 169622, at *7 n.3 (E.D.N.Y. Dec. 6, 2016) ("'Whether rulings on motions under Section 1782 are considered dispositive—and therefore subject to *de novo* review by the district court—or non-dispositive—and therefore subject to a clear error standard—is an unsettled question.'") (citation omitted); *Qualcomm Inc.*, No. 18-mc-80134-PJH, 2019 U.S. Dist. LEXIS 5716, at *2 (N.D. Cal. Jan. 11, 2019) ("As an initial matter, the parties dispute whether [the magistrate judge's] § 1782 order should be reviewed under Rule 72(a)'s 'clearly erroneous or [ ] contrary to law' standard, or under Rule 72(b)'s more stringent de novo standard. The court acknowledges that there appears to be a split of authority on this point.").  *See also In re Hornbeam Corp.*, No. 14-24887-MC, 2018 U.S. Dist. LEXIS 71277, at *7 (S.D. Fla. Apr. 27, 2018) ("The parties' extensive caselaw does not resolve whether a § 1782 decision is dispositive; the Court's own review of caselaw was inconclusive."). Contrary to Respondent's portrayal and in recognition of this uncertainty, district judges in these jurisdictions regularly elect to review magistrate determinations on Section 1782 discovery under the *de novo* standard.  *See, e.g.*, *In re Cohen*, 2016 U.S. Dist. LEXIS, at *7 n.3 (recognizing split of authority and reviewing magistrate's report and recommendation on § 1782 application *de*

*novo* "out of abundance of caution"); *Qualcomm Inc.*, 2019 U.S. Dist. LEXIS 5716, at *2 (same); *In re Godfrey*, Case No. 17-21631-CV-COOKE/GOODMAN, 2018 U.S. Dist. LEXIS 29794, at *17-19 (S.D. Fla. Feb. 22, 2018) (issuing report and recommendation subject to *de novo* review under "conservative approach" in light of the split in authority).

Moreover, the Second, Fourth, Tenth, and Eleventh Circuit Appeals Courts have all held that a decision on a Section 1782 request for discovery is a final order. *Vera v. Republic of Cuba*, 802 F.3d 242, 247 (2d Cir. 2015) ("Because the issuance of such an order concludes all proceedings before the issuing district court, we have recognized § 1782 orders as final decisions."); *Chevron Corp. v. Berlinger*, 629 F.3d 297, 306 (2d Cir. 2011) (order granting or denying discovery "is the final adjudication of the § 1782 application, . . . regardless of the fact that the suit in another tribunal, to which it relates, remains unadjudicated"); *In re Naranjo*, 768 F.3d 332, 347 (4th Cir. 2014) ("§ 1782 order is a sufficiently final order" for immediate appeal); *Phillips v. Beierwaltes*, 466 F.3d 1217, 1220-22 (10th Cir. 2006) (magistrate's order on Section 1782 was dispositive); *In re Republic of Ecuador*, 735 F.3d 1179, 1183 (10th Cir. 2013) ("[Section] 1782 'orders are considered final and appealable.'") (citation omitted); *Furstenberg Fin. SAS v. Litai Assets LLC*, 877 F.3d 1031, 1033 (11th Cir. 2017) ("[O]rder denying a motion to quash a subpoena is a final, appealable order in proceedings brought under § 1782.").

In light of the considerable flux on the applicable standard of review outside of the Fifth Circuit, Respondent's selective out-of-circuit citations are unpersuasive.[2]  Respondent's sole

---

[2] *In re Application of Hulley Enters., Ltd.*, on which Respondent relies heavily, is a Southern District of New York magistrate judge opinion which analogized a request for discovery under Section 1782 to a motion to quash under Rule 45, which is reviewed under the "clearly erroneous" standard. 358 F. Supp. 3d 331 (S.D.N.Y. 2019); Opp. at 2-4. A motion to quash is different, however, because the main case still receives federal judicial review, just in a different district court; a Section 1782 application on the other hand, receives no further federal review. *See also Furstenberg*, 877 F.3d at 1033-34 (explaining the "important difference" between an order quashing a subpoena in "an ongoing domestic case" and an order on § 1782 discovery; unlike the former, in a "§ 1782 proceeding, the underlying case is necessarily

citation to an in-circuit district court opinion does not fare any better. *In re Geert Duizendstraal*, No. 3:95-MC-150-X, 1997 U.S. Dist. LEXIS 16506 (N.D. Tex. Apr. 16, 1997); Opp. at 3-4. The *Geert* holding was based on the notion that an order on Section 1782 discovery is akin to a remand order which the court perceived as non-dispositive—a proposition that was specifically rejected in *Davidson*'s holding that such an order is dispositive and subject to *de novo* review. *Id.* at *3; *Davidson*, 819 F.3d at 763-64.

The Recommendation here, therefore, requires *de novo* review by this Court.³

### III. THE APPLICATION SHOULD BE GRANTED AND THE RECOMMENDATION REJECTED BECAUSE THE THIRD *INTEL* FACTOR FAVORS GRANTING THE APPLICATION

#### A. At Respondent's Urging, the Recommendation Erroneously Applied a Non-Existent Discoverability Requirement in Failing to Recommend That the Third *Intel* Factor Favors Granting the Application

Respondent does not credibly challenge the conclusion that there is no discoverability requirement under Section 1782 analysis or that this non-existent requirement was improperly applied here.

The required inquiry under the third *Intel* factor is whether an applicant is seeking to circumvent foreign proof gathering restrictions or other policies of a foreign country or the United States. *Intel*, 542 U.S. at 265. The law is clear that there is no requirement that the evidence sought be discoverable in the foreign tribunal—the *Intel* Court explicitly rejected such a requirement. *Id.* at 253. Further, any foreign discoverability considerations "should not be

---

conducted in a foreign tribunal" and therefore, "'once the district court has ruled on the parties' motions concerning the evidentiary requests, there is no further case or controversy before the district court'") (citation omitted). Respondent's oft-quoted *JSC MCC EuroChem v. Chauhan* relies exclusively on out-of-circuit citations. Case No. 3:17-mc-00005, 2018 U.S. Dist. LEXIS 138075, at *2 (M.D. Tenn. Aug. 15, 2018); Opp. at 2, 5.

³ As stated in Applicants' Objections, even were a "clearly erroneous or contrary to law standard" to be applied, multiple legal errors in the Recommendation would require its rejection and an order issuing the requested subpoena. *See infra* at 7-14; Obj. at 6-8.

afforded undue weight." *Mees v. Buiter*, 793 F.3d 291, 303 (2d Cir. 2015).  A district court's inquiry into discoverability "should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782." *Euromepa, S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1100 (2d Cir. 1995).  Absent such a "clear directive" from a foreign tribunal that it would reject evidence obtained with the aid of Section 1782, foreign discoverability considerations weigh in favor of granting the application.  *See id.*; *Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 377 (5th Cir. 2010).

Applicants' broad participatory rights and their ability to present evidence and issues in Castillo's murder trial are undisputed.  Rec. at 1, 4; App. at 6, 11; Obj. at 9.  Respondent focuses on the Recommendation's incantation of the truism that foreign discoverability considerations may not be afforded "undue weight" to distract the Court from what the Recommendation ***actually and exclusively considered***: Applicants' purported inability to conduct discovery in Honduras.  Opp. at 7.  Despite Respondent's argument to the contrary, the Magistrate Judge did not "[weigh] the various arguments regarding this factor," but instead focused solely, and improperly, on whether Honduran law provides for such discovery—as Respondent insisted in her opposition to the Application.  Opp. at 7; Dkt. No. 17 at 8-10; Rec. at 6 ("Given the apparent lack of authority for the Applicants to conduct discovery within their home jurisdiction, the court finds this factor neutral.").[4]  At no point did the Recommendation consider, as is required under

---

[4] *See also* Rec. at 5 ("With respect to the third factor, Applicants do not cite to any authority by which a private prosecutor may conduct discovery in a criminal proceeding in Honduras."); *id.* ("Respondent argues that Applicants do not possess the right to conduct discovery or issue subpoenas under Honduran law . . . . Applicants do not directly dispute this contention but argue that private prosecutors have the right to participate in the criminal proceedings and to present evidence."); *id.* ("Of course, presenting evidence in a proceeding and possessing independent authority to conduct discovery are two different matters."); *id.* ("The Court takes Applicants' failure to cite any positive authority and general evasiveness on this issue as an admission that they do not possess independent authority to conduct discovery under Honduran law."); *id.* ("It would seem anomalous to invest a foreign party with authority to conduct

*Intel*, whether there is evidence—and there is none—to suggest the Application is an affirmative "attempt to circumvent foreign proof-gathering restrictions" or whether there is "authoritative proof"—and there is not—that the Honduran court would reject the discovery. 542 U.S. at 265; *Euromepa*, 51 F.3d at 1100.

Respondent's mischaracterization of Applicants' argument notwithstanding, Applicants do not argue that discoverability considerations are wholly irrelevant to the Section 1782 analysis. *See* Opp. at 7. Instead, they argue that foreign discoverability should not be afforded "undue weight," and where Applicants' purported inability to obtain discovery in Honduras was the ***only*** basis for the determination that the third *Intel* factor was neutral, such consideration was necessarily given "undue weight." Thus, in conducting the analysis the way it did, the Recommendation shifted the burden onto Applicants to show that they are entitled to conduct discovery in Honduras, rather than requiring Respondent to present ***evidence*** that the Section 1782 Application is an attempt to circumvent foreign discovery procedures, in contravention of *Intel*. This was clear error.

### B. The Recommendation Failed to Recognize That the Third *Intel* Factor Favors Granting the Application Because Respondent Adduced No Evidence of Bad Faith

Respondent is plainly wrong—the third *Intel* factor favors granting the application in the absence of evidence that Applicants are seeking the discovery in bad faith. *See* Obj. at 9-11. The weight of authority on this issue clearly establishes that Respondent must show evidence of bad faith to turn the third *Intel* factor in her favor. *See, e.g.*, *In re Hansainvest Hanseatische Investment-GmbH*, 364 F. Supp. 3d 243, 251 (S.D.N.Y. 2018) ("Thus, to demonstrate circumvention, Respondents must illustrate not merely that the requested documents are not

---

discovery in a United States district court when that same party lacks such authority within its home jurisdiction.")

obtainable through German procedures, but that Applicants are engaged in a bad faith endeavor to misuse Section 1782."); *In re Barnwell Enters., Ltd.*, 265 F. Supp. 3d 1, 13 (D.D.C. 2017) ("[T]he Court finds no reason to believe that Petitioners are seeking to do anything other than obtain discovery in possession of a non-party located in the District of Columbia to use in foreign litigation, and thus concludes that this factor, too, militates in favor of granting Petitioners' application."); *Chevron Corp v. Shefftz*, 754 F. Supp. 2d 254, 262 (D. Mass. 2010) ("The inquiry here is whether the discovery is being sought in bad faith."); *In re Veiga*, 746 F. Supp. 2d 8, 25 (D.D.C. 2010) ("There is no evidence in the record—none—that would lead this Court to believe that Applicants have sought to circumvent the proof-gathering procedures or polices of the foreign tribunals or otherwise brought their applications in bad faith. Accordingly, this factor also weighs in favor of granting the Applications."); *In re Schlich*, No. 16-91278, 2016 U.S. Dist. LEXIS 170769, at *18 (D. Mass. Dec. 9, 2016) ("The primary inquiry is whether the discovery is being requested in bad faith."), *aff'd*, 893 F.3d 40 (1st Cir. 2018); *In re Platebright Ltd.*, No. 2013-94, 2013 U.S. Dist. LEXIS 184524, at *16 (D.V.I. Dec. 18, 2013) ("There is no indication that the discovery sought from MCB is being sought in bad faith. Accordingly, the third *Intel* factor weighs in favor of [Applicant]." (internal citations omitted)); *In re Republic of Ecuador*, No. C 11-80171 CRB, 2011 U.S. Dist. LEXIS 108612, at *16 (N.D. Cal. Sept. 23, 2011) ("Applicants do not appear to be seeking discovery for an improper purpose, but for use in the arbitral proceeding if and when it reaches the merits phase. Accordingly, this factor weighs in their favor."); *Chevron Corp.*, No. 7:10-MC-00067, 2010 U.S. Dist. LEXIS 125174, at *10 (D.W. Va. Nov. 24, 2010) ("In determining whether a petition is an effort to circumvent foreign proof-gathering restrictions, the issue is whether the discovery is being sought in bad faith."); *In re Chevron Corp.*, No. 4:10-MC-134, 2010 U.S. Dist. LEXIS 120479,

at *3 (S.D. Tex. Apr. 5, 2010) ("The Court finds that the Application does not conceal an attempt to circumvent foreign proof-gathering restrictions, and the discovery is not being sought in bad faith."); *Minatec Fin. S.a.r.l. v. SI Grp. Inc.*, Civ. No. 1:08-CV-269 (LEK/RFT), 2008 U.S. Dist. LEXIS 63802, at *26-27 (N.D.N.Y. Aug. 18, 2008) ("The primary issue for us is whether Minatec is pursuing this discovery in bad faith.  Other than SI Group's contentions, we find nothing within this record to support that Minatec is seeking this information with less than a good faith belief that § 1782 discovery would be helpful to the foreign tribunals and itself.  Thus, this factor weighs favorable for Minatec.").[5]

The Recommendation erred by adopting Respondent's unsupported claim that the Application is a "fishing expedition" without requiring evidence of bad faith from Respondent in evaluating the third *Intel* factor.[6]  Both the Recommendation and Respondent failed to identify a single piece of evidence supporting a conclusion that Applicants are acting in a bad faith attempt to evade foreign proof-gathering restrictions rather than seeking relevant evidence to aid the prosecution of their mother's accused murderer.  Instead, the Recommendation—at Respondent's urging—concluded, without any evidence, that the application is a "fishing expedition."  Opp. at 1, 7, 8, and 10; Rec. at 6, 8; Dkt. No. 17 at 1.  On the contrary, the evidence shows that Castillo had strong financial incentives to order the murder of Ms. Cáceres and that he employed paid assassins.  Obj. at 3-4 (citing App. at 2-5; Ex. 8 at 50-52; Ex. 13 ¶¶ 7-8); Rec.

---

[5] Instead of citing case law supporting her argument under the third *Intel* factor, Respondent only attempts to distinguish the cases cited by Applicants.  The failure to offer any case law supporting her position speaks volumes.

[6] Respondent argues, and Applicants agree, that the *Intel* factors are not to be applied mechanically and are a manner in which to apply a court's discretion.  Opp. at 9.  However, the Recommendation's failure to recognize that the third *Intel* factor favors granting the Application in the absence of a showing of bad faith is not a disagreement with the magistrate judge's application of the law—it is a failure to identify and apply the correct legal standard from the outset.  Such a failure constitutes legal error.  *See SEC v. Commonwealth Advisors, Inc.*, No. 3:12-00700-JWD-EWD, 2016 U.S. Dist. LEXIS 46438, at *20-21 (M.D. La. Apr. 6, 2016) ("An order violates [the contrary to law standard] if it 'misinterpreted or misapplied applicable law.'" (internal citation omitted)).

at 2. Contrary to Respondent's unsupported accusation and the Recommendation's conclusory proclamation, the record in this case demonstrates that Applicants' Section 1782 request could not be further from a "fishing expedition."

IV. **RESPONDENT IMPLICITLY CONCEDES APPLICANTS' ARGUMENTS THAT THE RECOMMENDATION ERRED IN EVALUATING THE FOURTH *INTEL* FACTOR**

Respondent's mischaracterization notwithstanding, Applicants seek a narrow category of documents: records from a single bank, related to a single real estate transaction, and covering a limited period of time for use in Castillo's murder trial in Honduras. App. at Ex. A. The discovery is relevant, narrowly tailored, and not unduly burdensome or intrusive. *See* Obj. at 11-14.

Respondent cites no case law and offers only the conclusory statement that the Recommendation's determination that the of the fourth *Intel* factor was not made "in a vacuum" and was based on unidentified "specific evidence and arguments" presented by Respondent, citing her entire opposition to the Application. Opp. at 9 (citing Dkt. No. 17). Respondent also claims that Applicants "inappropriately overlook or unfairly minimize [Respondent's] objections," but again offers no further detail or explanation. *Id.*

Respondent does not dispute that relevance under Section 1782 is broadly construed and does not challenge Applicants' argument that they have met the statute's *de minimis* nexus requirement. Obj. at 11-12. She also does not dispute that the Recommendation imposed an impermissibly high relevance threshold by requiring Applicants to present evidence that Castillo's home purchase was funded by proceeds from the murder, which is precisely the evidence the Application seeks to uncover. Obj. at 13-14.

Respondent does not dispute the ample evidence provided by Applicants regarding the relevance of the requested discovery, including that Castillo had strong financial incentives to

order the murder of Ms. Cáceres; that it was carried out by paid assassins; that Castillo's indictment explicitly charged that he planned the murder because of the significant losses his company was incurring as a result of Ms. Cáceres's opposition to its dam. Obj. at 12-13. Further, Respondent does not even address the statement by Applicants' Honduran prosecutor that "the evidence [he has] compiled and reviewed indicates that Castillo had strong financial motives to carry out [Ms. Cáceres's] murder" and that the requested discovery "will reveal that Castillo received a large amount of money to orchestrate the murder." Obj. 12-13 (quoting Ex. 13 ¶¶ 7-8). Nor does she confront the Recommendation's own acknowledgment that the requested records likely contain relevant information. *See* Rec. at 7 ("Presumably *most* of this financial information does not constitute evidence of cash payments to Mr. Castillo from murder-for-hire benefactors.") (emphasis added). Respondent also does not dispute that Honduras empowers Applicants, as victims, to prosecute Castillo alongside the public prosecutor. Obj. at 16 (citing Rec. at 1, 3; App. at 6, 11).

Respondent does not dispute that private financial information is discoverable and routinely allowed by courts. Obj. at 14-15 (collecting cases). Likewise, she provides no authority (or other argument) to explain why her financial information should be shielded from discovery or cannot be safeguarded via a protective order or redaction. In failing to address Applicants' arguments on this issue, Respondent also offers no reason why any privacy interest she may have outweighs Applicants' right to relevant discovery in the murder trial of their mother's killer.

In sum, effectively conceding Applicants' position on the proper relevance standard, their satisfaction of the relevance burden, the discoverability of financial information, the ability and willingness of the victims' prosecutor to present evidence in Castillo's Honduran murder trial,

Respondent's entire argument on this point boils down to the audacious contention that her purported privacy interest in an accused killer's mortgage file immunizes that file from discovery for use in a pending criminal case, requiring outright denial of the victims' Section 1782 Application. That the Recommendation adopted this contention without attempting to accommodate any legitimate privacy interest with judicial tools routinely used for that is a further error requiring that the Recommendation be rejected.

## V. CONCLUSION

For the foregoing reasons, the Court should sustain Applicants' Objections and grant their Application.

Dated:  December 2, 2019                    Respectfully submitted,

By:  /s/ Amelia S. McGowan
  Amelia S. McGowan

MISSISSIPPI CENTER FOR JUSTICE
Amelia S. McGowan, MSB# 103610
5 Old River Place, Suite 203 (39202)
P. O. Box 1023
Jackson, Mississippi 39215
Telephone:  (769) 230-8003
Facsimile:  (601) 352-4769
Email:  amcgowan@mscenterforjustice.org

(Continued on next page)

OF COUNSEL:

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
Leo P. Cunningham *Admitted Pro Hac Vice*
Ralitza S. Dineva *Admitted Pro Hac Vice*
Sean P. Killeen *Admitted Pro Hac Vice*
650 Page Mill Road
Palo Alto, California 94304-1050
Telephone:  (650) 493-9300
Facsimile:   (650) 565-5100
Email:  lcunningham@wsgr.com
              rdineva@wsgr.com
              skilleen@wsgr.com

INTERNATIONAL HUMAN RIGHTS LAW CLINIC, UNIVERSITY OF CALIFORNIA BERKELEY
Roxanna Altholz *Admitted Pro Hac Vice*
489 Simon Hall,
Berkeley, California 94720
Telephone:  (510) 643-8781
Facsimile:   (510) 643-4625
Email:  raltholz@law.berkeley.edu