**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

| | |
|---|---|
| **IN RE: EX PARTE APPLICATION OF LAURA ZUNIGA CACERES, BERTHA ZUNIGA CACERES, AND SALVADOR ZUINIGA CACERES FOR ASSISTANCE** | **CASE NO. 1:19-mc-00405-KS-RHW** |

**MEMORANDUM OPINION AND ORDER**

This cause comes before the Court on the Proposed Findings of Fact and Recommendation [28] ("R&R") issued by U.S. Magistrate Judge Robert Walker who is assigned to this matter concerning the Applicants' Ex Parte Application for Discovery for Use in a Foreign Tribunal pursuant to 28 U.S.C. § 1782 ("Application") [1]. Also before the Court is a Motion to Strike Rebuttal Filed by Applicants as Procedurally Improper ("Motion to Strike) [35], which has also been fully briefed [36, 38].

On July 17, 2019 Laura Zuniga Caceres, Bertha Zuniga Caceres, and Salvador Zuniga Caceres ("Applicants") filed an application under 28 U.S.C. § 1782, seeking discovery from Hancock Whitney Bank (the "Bank") located in Gulfport, Mississippi. [1]. After the Application was filed, Tanya Romero-Boca ("Respondent") made an appearance and requested leave to be heard on the Application [11], which the Court granted [16]. Briefs and various affidavits and documents were filed relating to the Application. [2, 4, 17, 27]. On October 30, 2019, the Magistrate Judge entered the R&R [28]. Applicants filed their objections [32], and Respondent filed a response to those objections [33]. Applicants then filed a rebuttal [34], which is the subject of Respondent's Motion to Strike [35]. The Court first addresses the Motion to Strike, then the R&R and Applicants' Objections, and then issues its ruling on the Application.

**I. BACKGROUND**

This proceeding arises from the indictment of David Castillo Mejia ("Castillo") as the orchestrator of the murder of Berta Isabel Caceres Flores ("Caceres") in Honduras, which occurred on March 2, 2016. None of the parties have taken issue with the Magistrate Judge's findings of fact, and thus, the Court adopts the same. For purposes of clarity within this Order, the Court notes only that the Applicants are the adult children of Ms. Caceres, who are participating in the criminal trial of Castillo in Honduras as private plaintiffs, through a private prosecutor, as permitted under Honduran law. *See* [4-13] at ¶ 2. Under Honduran law, the private prosecutor is authorized to present arguments, submit evidence, and examine witnesses at pretrial hearings and during the trial of criminal matters. [4-13] at ¶ 3.[1] Applicants have petitioned this Court for issuance of a subpoena to the Bank for use in the Honduran criminal proceedings against Castillo. Applicants seek a mortgage file relating to Castillo's purchase of a home in Houston, Texas several months after Cacera's killing. Applicants are requesting the file because they believe the records will adduce evidence that Castillo received a large sum of money to orchestrate Caceres's murder and that he had a strong financial motive to carry out the assassination. [2] at p. 11. Respondent is the wife of Castillo who opposes the issuance of the subpoena, arguing, among other things, her privacy interest in her information contained in the file and that the Application is a "bad faith fishing expedition." [17] at p. 1.

**II. DISCUSSION**

    **A. Motion to Strike**

In her Motion to Strike, Respondent argues that the rebuttal filed in response to her response to Applicants' objections to the R&R [34] is procedurally improper because it is not

---

[1] Doc. [4-13] is an affidavit from one of the private prosecutors representing the Applicants, who indicates that he also participated in the 2018 trial of eight men accused of Caceres's murder on behalf of the Applicants and that he presented evidence, cross-examined the accused and witnesses, presented arguments at pre-trial hearings and filed briefs in those proceedings. [4-13] at ¶ 4.

authorized under Local Uniform Civil Rule 72 and it contains a great deal of newly cited case law. Applicants respond that nothing in Rule 72 prohibits them from filing a rebuttal. Applicants cite to Local Uniform Rule 7 for the proposition that their Objections to the R&R were filed as a motion because they are a "written communication with the court that is intended to be an application for relief or other action by the court." [36] at p. 1. The Court finds this argument unavailing. The Objections are not a motion, but an authorized response to the Magistrate Judge's findings and conclusions of law, as provided explicitly in Rule 72.

Notwithstanding, the Court is cognizant that courts in this district have allowed for a reply brief when there is a response filed to a party's objections to an R&R. *See, e.g., Buckhalter v. Mississippi*, No. 1:17CV191-LG-LRA, 2018 U.S. Dist. LEXIS 123391, at *1 (S.D. Miss. July 24, 2018); *Reeves v. Shaw*, No. 1:19-CV-29-LG-JCG, 2019 U.S. Dist. LEXIS 128345, at *1 (S.D. Miss. Aug. 1, 2019); *McKnight v. Ladner*, No. 5:17-cv-118(DCB)(JCG), 2019 U.S. Dist. LEXIS 56216, at *42 (S.D. Miss. Apr. 2, 2019); *Ellison v. Broadus*, No. 1:08-cv-262-HSO-JMR, 2010 U.S. Dist. LEXIS 24059, at *4-5 (S.D. Miss. Mar. 15, 2010). Understandably a reply will contain additional case law because it is responding to the arguments made by the opposition. In particular, the Court finds the briefing on the standard of review in this matter to be particularly helpful. To the extent the reply contains any new arguments or does not address particular arguments made by Respondent in her response, those have not been considered. Therefore, Respondent's Motion to Strike [35] is hereby DENIED.

**B. Review of Report and Recommendation**

**1. Legal Standards on Application for Discovery**

A district court may order discovery pursuant to 28 U.S.C. § 1782 ( hereinafter "§1782") when the following three statutory requirements are met: (1) the person from whom discovery is sought must reside or be found in the district where the application is filed; (2) the discovery

must be for use in a proceeding before a foreign tribunal; and (3) the application must be made by a foreign or international tribunal or any "interested person." *Texas Keystone*, 694 F.3d at 553. The district court has discretion to order the requested discovery when the statutory requirements are met. *Texas Keystone*, 694 F.3d at 553–54.

The Supreme Court has identified four factors to guide the court's exercise of discretion: (1) whether the respondent is a party to the foreign proceeding and subject to discovery in that jurisdiction; (2) the nature of the foreign tribunal, character of the proceedings underway, and the foreign court's receptivity to aid from U.S. federal courts; (3) whether the application conceals an attempt to circumvent foreign proof-gathering limits or other policies; and (4) whether the discovery sought is unduly intrusive or burdensome. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 255 (2004). These will be referred to herein as "the *Intel* factors."

### 2. The Magistrate Judge's Findings and Recommendation

In the R&R, the Magistrate Judge first noted that the Respondent had no dispute that the statutory requirements had been met and went on to state, "Hancock Whitney Bank is located in the Southern District of Mississippi. Applicants seek to use the financial records in a criminal proceeding against Mr. Castillo in Honduras. Applicants are interested parties in the Honduran criminal proceeding by virtue of their role as private plaintiffs." [28] at p. 3. Accordingly, the Magistrate Judge found that the Court possessed the statutory authority to grant the application. *Id*. The Magistrate Judge then went on to analyze the four discretionary factors. He found the first two factors weighed in favor of granting the application, the third factor was neutral, and the fourth factor weighed against granting the application. He then recommended that the application be denied. Applicants have raised objections to particular portions of the R&R, which this Court now reviews.

### 3. Standard of Review on the R&R

Before addressing the Applicants' objections, the first issue to be determined is the proper standard of review to be applied to the Magistrate Judge's R&R. Applicants argue the review is *de novo*, while Respondent argues that the review falls under the clearly erroneous or contrary to law standard.

The standard of review for a magistrate judge's rulings turns on whether the matter is dispositive or nondispositive. *See* Fed. R. Civ. P. 72. For nondispositive matters, the district judge assigned to the case "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). For dispositive matters, the district judge assigned to the case "must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3).

> Section 1782 provides in relevant part:
>
> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal .... The order may be made ... upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court .... To the extent that the order does not
>
> prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 1782(a). While discovery related issues are typically nondispositive matters, the procedure afforded an application for discovery for use in a foreign tribunal under §1782 is a bit different. As the Fifth Circuit Court of Appeals has explained, "[Section] 1782 does not establish a standard for discovery. Instead, it provides for a threshold determination of whether to allow foreign litigants to enjoy discovery in U.S. courts in accordance with the federal rules." *Tex. Keystone, Inc. v. Prime Natural Resources, Inc.*, 694 F.3d 548 (5th Cir. 2012) (quoting *Gov't of Ghana v. ProEnergy Servs.*, LLC, 677 F.3d 340, 343 (8th Cir. 2012)).

5

With regard to the authority of a Magistrate Judge on such a matter, the Federal Magistrate Act provides, in relevant part:

> (A) A judge may designate a magistrate judge to **hear and determine** any pretrial matter pending before the court, *except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action.* A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.
>
> (B) a judge may also designate a magistrate judge to conduct hearings including evidentiary hearings, and **to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court**, *of any motion excepted in subparagraph (A)*, of applications for posttrial relief made by individuals convicted of criminal offenses and of prisoner petitions [*8] challenging conditions of confinement.

28 U.S.C. § 636(b)(1)(A), (B) (emphasis added). Also, "[e]ach district court shall establish rules pursuant to which the magistrate judges shall discharge their duties." Title 28 U.S.C. § 636(b)(4). Under Federal Rule of Civil Procedure 72, nondispositive matters are dealt with by a ruling of the magistrate, and dispositive matters result in a recommended disposition. *See* Fed. R. Civ. P. 72 (a), (b); *see also* S.D. Miss. L. U. Civ. R. 72. Here, the Magistrate Judge did not issue a ruling but merely recommended a disposition on the Application.

Respondent contends that regardless of the title "Proposed Findings of Fact and Recommendation," the R&R is actually a ruling that is subject to review under the clearly erroneous or contrary to law standard because it is not one of the enumerated dispositive matters listed in Section 636(b)(1)(A). Respondent relies on district court cases outside of this circuit that have reviewed a magistrate's ruling on a §1782 application as nondispositive and reviewable under the clearly erroneous standard. Granted, an application under §1782 is not an enumerated dispositive pretrial matter under Section 636(b)(1)(A), but in looking at the nature of the proceeding, a ruling on such is dispositive insofar as the proceedings in the federal district court

6

are concerned. *Cf. Davidson v. Georgia-Pacific, L.L.C.*, 819 F.3d 758, 764 (5th Cir. 2016) (holding that a remand order, which is not a listed matter, is nonetheless dispositive and subject to *de novo* review by the district court).

Applicants point out that the issue of the proper review is an unsettled question as some courts in other circuits have recently noted, some of which proceeded under *de novo* review. *See, e.g., In re Cohen*, No. 16-MC-2947, 2016 U.S. Dist. LEXIS 169622, at *7 n.3 (E.D.N.Y. Dec. 6, 2016) (noting that whether rulings on motions under §1782 are considered dispositive or non-dispositive is an unsettled question and proceeding under *de novo* review "out of abundance of caution"); *Qualcomm Inc.*, No. 18-mc-80134-PJH, 2019 U.S. Dist. LEXIS 5716, at *2 (N.D. Cal. Jan. 11, 2019) (acknowledging a split of authority in its circuit on the standard of review of a magistrate judge's order on a §1782 application); *In re Godfrey*, Case No. 17-cv-21631, 2018 U.S. Dist. LEXIS 29794, at *17-19 (S.D. Fla. Feb. 22, 2018) (reviewing report and recommendation subject to *de novo* review under "conservative approach" in light of the split in authority). *In re Hornbeam Corp.*, No. 14-24887-MC, 2018 U.S. Dist. LEXIS 71277, at *7 (S.D. Fla. Apr. 27, 2018) (finding that the extensive caselaw cited by the parties did not resolve whether a § 1782 decision is dispositive and the court's own review of caselaw was inconclusive but reserving on the issue because *de novo* review warranted on other grounds).

Applicants rely on *Texas Keystone, Inc. v. Prime Natural Resources, Inc.,* 694 F.3d 548 (5th Cir. 2012), as well as district court cases from this circuit, to argue that the R&R is dispositive and therefore, *de novo* review is warranted. The Court does not agree, as Applicants urge, that the *Texas Keystone* case is determinative of the issue;[2] thus, with there being no direct

---

[2] The Court disagrees with Applicants' contention that the Fifth Circuit in *Texas Keystone* "unequivocally held that a decision whether to grant or deny a Section 1782 application is a final disposition." [34] at p. 2. That could not have been the "holding," as that was not an issue on appeal. One issue was whether a district court's order, quashing subpoenas after previously granting an application under §1782 was a final appealable order. 694 F.3d at 549. That is not what is at issue here. As such, this Court cannot say that the Fifth Circuit has definitively decided the standard of review issue.

7

guidance from the Fifth Circuit, the Court finds it prudent to take the conservative approach and, out of an abundance of caution, apply a *de novo* review as some of its sister courts in this circuit have done. *See, e.g., In re Solines*, No. 18-3680 Section "R" (3), 2018 U.S. Dist. LEXIS 81481, at *1 (E.D. La. May 15, 2018) (*de novo* review of magistrate judge's ruling on application for discovery under 28 U.S.C. § 1782); *In re Gazprom Latin Am. Servicios, C.A.*, Misc. A. No. 4:14-mc-1186, 2016 U.S. Dist. LEXIS 87175, at *33 (S.D. Tex. July 6, 2016) (same); *In re Trygg-Hansa Ins. Co.*, 896 F. Supp. 624, 628 (E.D. La. 1995) (same).

### 4. Applicants' Objections

Applicants take issue with the R&R's analysis and determination under the third and fourth *Intel* factors, arguing that the Magistrate Judge applied incorrect legal standards. Specifically, Applicants contend that the Court erroneously applied a non-existent discoverability requirement in finding that the third factor was neutral and that the Court erred in determining the fourth factor by subjecting the discovery request to an impermissibly high relevance standard for assessing whether the discovery would be unduly intrusive or burdensome. We address these issues in turn.

### a. The third *Intel* factor

Again, the third factor for a court to consider is whether the application conceals an attempt to circumvent foreign proof-gathering limits or other policies. *Intel*, 542 U.S. at 255. The Magistrate Judge's analysis turned on whether a private plaintiff has authority under Honduran law to conduct discovery in a criminal proceeding. [28] at p. 5. The Magistrate Judge notes that it is not the government prosecutor who is seeking the discovery of this financial information, but rather the Applicants, as private plaintiffs. *Id*. Because the Applicants failed to cite any positive authority as to their ability to conduct discovery under Honduran law, the Magistrate Judge found it to be an admission that they do not. *Id.*  The Magistrate Judge then found this factor to

be neutral in determining whether to grant the application. Applicants argue that there is no requirement that Honduras explicitly allow Applicants to take discovery, and more so, no showing that Honduras explicitly prohibits them from taking discovery.

### i. No showing of attempt to circumvent proof-gathering limits or policies

What is at issue in the third discretionary factor is whether there has been a showing that the application conceals an attempt to circumvent foreign proof-gathering limits or other policies. This Court finds that indeed there has been no showing of specific restrictions on the Applicants from obtaining discovery. Respondent's initial arguments in this regard in opposition to the Application were vague and equivocal. First, Respondent argued that the "Applicants *are likely* exceeding their rights under Honduran law." [17] at p. 8 (emphasis added). She states that to her knowledge, the Applicants did not ask the Honduran court to authorize this discovery. This is not a requirement under § 1782. Respondent pointed out that there are six specific rights given under the victims rights statute, none of which include the right to propound discovery.[3] Applicants urge, on the contrary, that the absence of an express discovery right is not the same as a prohibition of obtaining such discovery. The Court agrees.[4] Respondent points to no law that specifically prohibits private plaintiffs from participating in discovery. The cases Respondent cites from Alaska and Arizona[5] have no bearing on the proof-gathering restrictions in Honduras.

Second, Respondent argued that the Applicants' request *appears* inconsistent with Article 149 of the Honduran Code of Criminal Procedure. [17] at p. 9 (emphasis added). However, even in the declaration provided by Respondent, Castillo's own defense attorney does not specifically

---

[3] These appear to be the general statements of rights, with more specific rights listed throughout the Honduran Code of Criminal Procedure.
[4] *Cf. Mees v. Buiter*, 793 F.3d 291, 303 n. 20 (2d Cir. 2015) ("That a country does not enable broad discovery within a litigation does not mean that it has a policy that restricts parties from obtaining evidence through other lawful means. '[P]roof-gathering restrictions' are best understood as rules akin to privileges that prohibit the acquisition or use of certain materials, rather than as rules that fail to facilitate investigation of claims by empowering parties to require their adversarial and non-party witnesses to provide information.")
[5] [17] at p. 9 (citing *Cooper v. Dist. Court*, 133 P.3d 692, 705 (Ala. Crim. App. 2006); *Lindsay R. v. Cohen*, 343 P.3d 435, 437 (Ariz. App. 2015)).

state that a discovery request such as the one at issue here *is required* to go through diplomatic channels or approved by a judge—he only recites the section from the Honduran Code. [17-2] at p. 4.  Interestingly, a signed translation from a certified translator of the statue itself, also submitted by the Respondent, bears the title "Communications Between the Judicial Authorities" and states, "Letters rogatory addressed to foreign courts or foreign authorities . . . will be handled via diplomatic channels . . . ."[6] Thus, it appears the statute applies when a Honduran court sends letters rogatory to a foreign jurisdiction. That is not the case here.

### ii.  Applicant need not show explicit authority to conduct discovery

The Court also agrees with the Applicants and finds that they need *not* show an ability to formally conduct discovery under Honduran law because the Applicants' ability to obtain the discovery is subsumed in their being an "interested party" under the statutory factors, as addressed by the Supreme Court in the *Intel* case.[7]

In *Intel*, the Supreme Court granted review of the question: "[D]oes §1782(a) make discovery available to complainants [] who do not have the status of private "litigants" and are not sovereign agents?" 542 U.S. at 253. In this case, based on the arguments of Respondent, and as it appears the Magistrate Judge viewed it, the question was similar—can a private plaintiff in Honduras, who is not the government prosecutor, seek the available discovery? In *Intel*, the party opposing the §1782 application (the company Intel) had argued that the interested persons authorized to apply for judicial assistance under § 1782(a) includes only "litigants, foreign sovereigns, and the designated agents of those sovereigns," and excluded the applicant, who was

---

[6] This Court is truly at a disadvantage by having to rely on translations of the various documents because, as shown above, they at times appear to be inconsistent.
[7] Although Applicants mention that there is no "foreign discoverability" requirement, that is not truly what is at issue here. The holding in *Intel* addressed whether the documents themselves must have been discoverable had the documents been located in the foreign jurisdiction. Thus, that question was: is what one is seeking discoverable? Here, the question is: are those who are seeking the discovery able to seek it? And the answer is yes.

a mere complainant before the European Commission. 542 U.S. at 256.[8] Intel relied on the caption of the statute which reads, "Assistance to foreign and international tribunals and to *litigants* before such tribunals," to argue that the phrase "interested person" should be read to include only "litigants." *Id*. The Supreme Court found that the plain text of the statute undermined such a reading because the statute's use of the words "interested person" "plainly reaches beyond the universe of persons designated 'litigant.'" *Id*. While a litigant may be the most common example of an interested person who may invoke §1782, the statute is not so limited. *Id*.

The Supreme Court in *Intel* went on to explain that a complainant who triggers a DG Competition investigation has a significant role in the process, including not only the ability to prompt an investigation in the first place, but also the right to submit information for the DG Competition's consideration and may proceed to court if the investigation is discontinued or the complaint dismissed. 542 U.S. at 256. "Given these participation rights, a complainant 'possess[es] a reasonable interest in obtaining [judicial] assistance,' and therefore qualifies as an 'interested person' within any fair construction of that term." *Id*. at 256-257.

The same is true here. In Honduras, victims of crime have the right to intervene in criminal proceedings and establish a private prosecution against the accused. Article 16 of the Honduran Code of Criminal Procedure explicitly allows a victim to "become a private plaintiff or complainant and intervene as such" throughout the criminal process. [11-2] ----- Two of the

---

[8] The applicant in *Intel* was Advanced Micro Devices, Inc. ("AMD"), who had filed an antitrust complaint with the Directorate-General for Competition ("DG Competition") against Intel Corporation, alleging a violation of European competition law. 542 U.S. at 241. After the DG Competition declined AMD's recommendation to seek documents Intel had produced in a private antitrust suit in Alabama, AMD filed an application under § 1782 to obtain the documents. *Id*. The DG Competition conducts investigations into alleged violations of the European Union's competition laws. *Id.* at 254. Upon receipt of a complaint, the DG Competition conducts a preliminary investigation, wherein it may take into account information provided by a complainant. *Id*. That investigation results in a formal decision whether or not to pursue the complaint. *Id*. Similar to the private prosecutors in Honduras, "[a]lthough lacking formal "party" or "litigant" status in Commission proceedings, [AMD] has significant procedural rights." *Id.* at 255. Similar to the Honduran private prosecutor's ability to present evidence at hearings and at trial, "the complainant may submit to the DG Competition information to support its allegations . . . ." *Id.*

particular rights acknowledged by Respondent include the right to accuse or make a complaint against a defendant, and to be involved in public hearings. According to the Applicants' private prosecutor himself as well as other provisions of the Honduran Code of Criminal Procedure,[9] the Applicants, as private plaintiffs through their private prosecutors, have the right to present arguments, submit evidence, and conduct direct and cross-examinations of witnesses at pre-trial hearings and during the criminal trial. [4-13] at ¶ 3. In addition, the private prosecutor may initiate proceedings and raise issues that the public prosecutor declines to pursue. [4-11] at p. 20 (Art. 97). Just as in *Intel*, these significant participation rights show that the Applicants possess a reasonable interest in obtaining judicial assistance. By qualifying as an interested person under the statute itself, there need not be any separate requirement that the Applicants show specific authority under Honduran law that they may conduct discovery.[10]

Based on the foregoing, with no showing of a particular prohibition on Applicants' seeking discovery and the Applicants being an appropriate "interested person," the Court finds the third *Intel* factor weighs in favor of granting the petition, or at least does not present a reason not to do so.[11]

### b. The fourth *Intel* factor

The fourth factor for a court to consider is whether the discovery sought is unduly intrusive or burdensome. In this regard, the Magistrate Judge found that the proper scope of the discovery is determined by the Federal Rules of Civil Procedure and utilized Rule 26 to determine that the request was not narrowly tailored, requested confidential information, and

---

[9] [4-11] at p. 21 (Art. 99) (stating that the "private accusation shall contain specific indication of the evidence he has or of which he knows"); [4-11] at p. 30 (Article 440-H) ("This act will be followed by presentation of the proposed evidence by the parties, starting with that of the Public Prosecutor, the private plaintiff, if applicable, and the evidence from the defense.)

[10] Although this Court has conducted a *de novo* review, the Magistrate Judge's apparent requirement that such authority be shown would be contrary law, even under the clearly erroneous or contrary to law standard.

[11] Applicants also argued that the analysis of this factor involves a determination of whether the discovery is being sought in bad faith. [32] at p. 9. The Court does not agree that this is the law in the Fifth Circuit and finds such an analysis unnecessary.

appeared to be a fishing expedition.[12] [28] at pp. 6-8. The Magistrate Judge also suggested that evidence requested was irrelevant to the theories of the case as described by Castillo's defense attorney. [28] at p. 7. He concluded, "Given the lack of nexus between the financial information and the charges in the criminal indictment, the undersigned recommends that the motion for discovery be denied." [28] at p. 8.

Applicants argue that the Magistrate Judge imposed an impermissibly high relevance threshold on the discovery request. Applicants also argue that their inability to substantiate what they believe the records will show does not preclude the discovery under the Federal Rules, as is the nature of broad discovery. Finally, Applicants argue that any privacy interest on Respondent's part is best remedied by a protective order and not a denial of the application. Respondent responds that the Applicants overlook the fact that the Magistrate Judge considered the evidence and arguments that Respondent posed and found the factor weighed against granting the application, which was entirely within his discretion. However, reviewing the issue *de novo*, this Court finds that the initial arguments presented by the Respondent may indeed be dealt with by imposing certain restrictions on the production of the mortgage file and not a denial of the application. *See Intel*, 542 U.S. at 265 (noting that unduly intrusive requests may be rejected or trimmed); *In re Application of HydroDive Nigeria, Ltd.*, No. 13-MC-0477, 2013 WL 12155021, at *4 (S.D. Tex. May 29, 2013) (allowing discovery pursuant to protective order).

In seeking the discovery, Applicants argued that they seek only those records held by the bank that relate to the financing secured to purchase the Houston property. [2] at p. 19. Applicants recognized that if the discovery sought was indeed excessive, the court may limit its scope rather than preclude it entirely when other factors weigh in favor of granting the application. *Id.* (citing *In re RSM Prod. Corp.*, 195 F. Supp. 3d 899 (S.D. Tex. 2016) and *Intel*,

---

[12] Judge Walker found that Applicants' "belief" in what the discovery will show would result in a fishing expedition because the Applicants "offer[ed] nothing to substantiate these 'beliefs'" as to what the evidence will show.

542 U.S. at 265). While it is not uncommon for courts to grant these applications ex parte,[13] the Respondent here filed a request to be heard [11], which the Court allowed [16].

In her initial opposition, Respondent raised a number of issues, not just with regard to the fourth factor, but in general, including the fact that the discovery appeared irrelevant based on theories presented in the case thus far. [17] at p. 5. Respondent also argued she has a privacy interest in her financial information and concern that the discovery request is only a pretext for obtaining access to the Castillo's assets, arguing that it was made in bad faith and for harassment. [17] at pp. 6-7. Respondent additionally argued that there is no reasonable way to protect the Castillos from potential misuse of their financial information and the serious threat that such misuse may occur. [17] at p. 8. She further offered an explanation as to why the family moved to Houston and where the funds to purchase the Houston property came from. [17] at pp. 3-4.

Contrary to Respondent's assertions, it is not up to this Court to determine the particular relevancy of the information sought, nor can this Court conclude that the Applicants' purpose in seeking the discovery is to harass. Given the Applicants' broad participation rights as private plaintiffs in Honduras and their attorney's averment that the evidence he has compiled indicates that Castillo had strong financial motives to carry out the murder and seeks the mortgage file will reveal evidence of payment, as well as previously unknown or unindicted individuals and/or entities in the Caceres murder, there appears to the undersigned to be nothing to indicate that the request is improper. No one truly knows what the file will show, and this Court cannot make a credibility determination and accept only Respondent's version of what will be found in the file or where the money for the purchase came from.

This Court also will not speculate on any theories of the criminal case in Honduras, particularly given that, as noted above, a private plaintiff may raise issues that the public

---

[13] *See* cases cited by Applicants in [2] at p. 20.

prosecutor declines to pursue. "Under § 1782, an applicant may seek discovery of any materials that can be made use of in the foreign proceeding to increase her chances of success." *Mees v. Buiter*, 793 F.3d 291, 299 (2d Cir. 2015). The file may very well contain such information.

Again, the issue for the fourth factor is whether the discovery is unduly intrusive or burdensome. As far as the Bank is concerned, it is neither. As for the Respondent, it is not burdensome. She need not produce anything. Thus, the question is whether the request is unduly intrusive to Respondent. Given that this Court can place restrictions and limitations on the production, the Court finds that it is not. Although, the Court is mindful of Respondent's concern about the misuse of the information, which will be addressed in the restrictions placed on the discovery. Therefore, in light of the foregoing, the Court finds this fourth factor weighs in favor of granting the application.

## III. CONCLUSION

Based on a *de novo* review of the stated objections, and for the reasons set forth above, the Court finds that the statutory requirements of 28 U.S.C. §1782 have been met and that there are no discretionary factors weighing against the Application being granted. Therefore, the Court adopts the Magistrate Judge's factual findings, but declines to adopt the Magistrate Judge's conclusions as to third and fourth discretionary factors or his recommendation.

Accordingly, it is hereby ORDERED that the Ex Parte Application for Discovery for Use in a Foreign Tribunal Pursuant to 28 U.S.C. §1782 [1] is hereby granted. Mindful of the privacy concerns at issue, the Court hereby FURTHER ORDERS that the subpoena issued to Hancock Whitney Bank shall require that the mortgage file be produced to the undersigned's chambers for an in camera review prior to any release to the parties. Also, Hancock Whitney Bank will be required to redact all account numbers and social security numbers (or their Honduran equivalent) from responsive documents prior to production. Should the Court find production

warranted upon review of the documents produced by Hancock Whitney Bank, the production shall be made pursuant to the following protective order:

It is ORDERED that the disclosure of any documents produced by Hancock Whitney Bank shall be to attorneys' eyes only, which shall be Respondent's counsel and the Applicants' private prosecutor, presumably Mr. Victor Antonio Fernandez Guzman. The Applicants' Honduran attorney must consent to the jurisdiction of this Court for enforcement of this protective order. Applicants may properly notify the Court by filing a Notice of Consent with an attached signed written consent from the attorney. The Court finds no need for local counsel to be involved in production.

SO ORDERED AND ADJUDGED this 18th day of May 2020.

/s/ Keith Starrett_____
KEITH STARRETT
UNITED STATES DISTRICT JUDGE