*WILSON SONSINI GOODRICH & ROSATI - PALO ALTO, CA 650 PAGE MILL ROAD PALO ALTO, CA 94304-1050*

# AFFIDAVIT OF SERVICE

Client's File No.: _____

Civil Action #:  **1:19-mc-00405-KS-RHW**

Date Filed: _____

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF MISSISSIPPI**

: _____



*IN RE: EX PARTE APPLICATION OF LAURA ZUNIGA CACERES, BERTHA ZUNIGA CACERES, AND SALVADOR ZUNIGA CACERES FOR ASSISTANCE BEFORE A FOREIGN TRIBUNAL*

STATE OF  MISSISSIPPI COUNTY OF    HINDS   SS.:

The undersigned being duly sworn deposes and says: that deponent is not a party to this action, is over 18 years of age and resides in the State of   Mississippi

That on the following date:      May 21, 2020      , at the following time:      2:50 PM      ,

at _____ 645 LAKELAND DRIVE EAST DRIVE, SUITE 101, FLOWOOD, MS 39232 _____ deponent served the within

Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action, Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13) With Attachments and Cover Letter by Leo P. Cunningham dated May 21, 2020

[X] Papers so served were properly endorsed with the Civil Action #.

**Upon: HANCOCK WHITNEY BANK C/O C.T. CORPORATION SYSTEM, ATTN: CUSTODIAN OF RECORDS** .

| | | |
|---|---|---|
| [ ] **Individual** | By delivering a true copy thereof to said recipient personally; deponent knew the person so served to be the individual described therein. | |

[ ] **Responsible Person** By delivering to and leaving with _____, _____
Relationship
a true copy thereof, a person of suitable age and discretion. Said premises being the defendant / respondent's
[ ] dwelling place     [ ] place of business/employment     [ ] last known address within the State.  [ ] usual place of abode

[ ] **Mail** A copy thereof was deposited in a postpaid, properly addressed envelope, marked "Personal and Confidential" in a depository maintained by the U. S. P. S. and mailed to the above address on _____

[X] **Corporation LLC / LLP** By delivering to and leaving with    Matt Thibodeaux    said individual to be    Assitant Secretary
who specifically stated he/she was authorized to accept service on behalf of the Corporation/Government Agency/Entity.

[ ] **Affixing To Door** By affixing a true copy thereof to the door, being the defendant/respondent's   [ ] dwelling place      [ ] place of business/employment
[ ] last known address within the State. [ ] usual place of abode

[ ] **Previous Attempts** Deponent previously attempted to serve the above named defendant/respondent on:

**Description of Recipient** Sex:  Male    Color of skin:  White    Color of hair:  Brown    Age:  36 - 50 Yrs.    Height:  5ft 9inch - 6ft 0inch
Weight:  161-200 Lbs.    Other Features:

[ ] **WITNESS FEES** Subpoena Fee Tendered in the amount of

[ ] **MILITARY SERVICE** I asked the person spoken to whether defendant was in active military service of the United States in any capacity whatever and received a negative reply. The source of my information and the grounds of my belief are the conversations and observations above narrated.

[ ] **Other**

STATE OF MISSISSIPPI
TERI JO WILLIAMS
ID No
126547
NOTARY PUBLIC
Comm Expires
January 21, 2023
RANKIN COUNTY

Sworn to before me on    May 22, 2020

*Teri Jo Williams*
Teri Jo Williams

*Mc Allister*
PROCESS SERVER - PRINT NAME BELOW SIGNATURE
Rusty McAllister

PROCESS SERVER LICENSE # _____

**Work Order #  1444259**

*RS McAllister, Jr*



WILSON
SONSINI

Wilson Sonsini Goodrich & Rosati
Professional Corporation

650 Page Mill Road
Palo Alto, California 94304-1050

O: 650.493.9300
F: 650.493.6811

May 21, 2020

**_VIA PERSONAL SERVICE_**

Hancock Whitney Bank Custodian of Records
c/o C. T. Corporation System
645 Lakeland Drive East Dr., Ste 101
Flowood,  MS 39232

Re:   **In Re: _Ex Parte_ Application of Laura Zúniga Cáceres, Bertha Zúniga
      Cáceres, and Salvador Zúniga Cáceres for Assistance Before a Foreign
      Tribunal Pursuant to 28 U.S.C. § 1782, Case No. 1:19-mc-00405-KS-
      RHW (U.S. District Court, Southern District of Mississippi)**

Dear Sir or Madam:

        This firm, along with Amelia S. McGowan (MSB# 103610) of the Mississippi Center for
Justice and Roxanna Altholz of the International Human Rights Law Clinic at the University of
California at Berkeley, represents Laura Zúniga Cáceres, Bertha Zúniga Cáceres, and Salvador
Zúniga Cáceres ("Applicants") in the subject matter.

        Enclosed, please find a subpoena for the production of documents, which was issued
pursuant to an Order of United States District Judge Keith Starrett, dated May 18, 2020.  A copy
of that Order is attached to the subpoena.  I have also enclosed a copy of the _Ex Parte_
Application for Assistance Before a Foreign Tribunal Pursuant to 28 U.S.C. § 1782 submitted by
Applicants.

        Please note that compliance with the subpoena requires producing responsive
documents directly to the Chambers of Hon. Keith Starrett, United States District Judge, located
at 701 N. Main St., Suite 228, Hattiesburg, MS 39401 **by June 20, 2020. Please do not send
responsive documents to the undersigned or any of the attorneys representing
Applicants identified herein.**  Please also note that prior to serving the enclosed subpoena
and pursuant to Federal Rule of Civil Procedure 45, counsel for Applicants provided notice of
service of this subpoena to Ms. Tanya Romero-Baca, who has appeared as an interested party in
this matter.  A copy of the Notice of Service of Subpoena to Ms. Romero-Baca is also enclosed.

AUSTIN   BEIJING   BOSTON   BRUSSELS   HONG KONG   LONDON   LOS ANGELES   NEW YORK   PALO ALTO

SAN DIEGO   SAN FRANCISCO   SEATTLE   SHANGHAI   WASHINGTON, DC   WILMINGTON, DE

**WILSON
SONSINI**

Hancock Whitney Bank Custodian of Records
May 21, 2020
Page 2


     If you have any questions or concerns regarding the requested documents, please do not hesitate to contact me at (650) 320-4573 or via email at lcunningham@wsgr.com.

     Thank you very much for your attention to this matter.


              Sincerely,

              WILSON SONSINI GOODRICH & ROSATI
              Professional Corporation

              Leo P. Cunningham


Enclosures:

- Subpoena (with attachments, including Memorandum Opinion and Order of United States District Judge Keith Starrett dated May 18, 2020)

- *Ex Parte* Application of Laura Zúniga Cáceres, Bertha Zúniga Cáceres, and Salvador Zúniga Cáceres for Assistance Before a Foreign Tribunal Pursuant to 28 U.S.C. § 1782 dated July 17, 2019

- Notice of Service of Subpoena dated May 21, 2020 (without enclosures)

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Southern District of Mississippi

IN RE: *EX PARTE* APPLICATION OF LAURA )
ZUNIGA CACERES, BERTHA ZUNIGA CACERES, )
AND SALVADOR ZUNIGA CACERES FOR ) Civil Action No. 1:19-mc-00405-KS-RHW
ASSISTANCE BEFORE A FOREIGN TRIBUNAL )
)
)

### SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
### OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To: Hancock Whitney Bank, c/o C.T. Corporation System, 645 Lakeland Drive East Dr., Suite 101, Flowood, MS, 39232
Attn: Custodian of Records

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following
documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the
material: See Attachments

| Place: 701 N. Main St., Suite 228 | Date and Time: |
|---|---|
| Hattiesburg, MS 39401 | |
| Attn: Chambers of Hon. Keith Starrett | 06/20/2020 11:59 pm |

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or
other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party
may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|
| | |

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance;
Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to
respond to this subpoena and the potential consequences of not doing so.

Date: 05/20/2020

*CLERK OF COURT*

OR *Amelia S. McGou*

*Signature of Clerk or Deputy Clerk*                    *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* Laura Zúniga
Cáceres, Bertha Zúniga Cáceres, and Salvador Zúniga Cáceres , who issues or requests this subpoena, are:
Amelia S. McGowan, Mississippi Center for Justice, 5 Old River Place, Suite 203 (390202), P.O. Box 1023, Jackson,
Mississippi 39215; (769)230-8003; amcgowan@mscenterforjustice.org. Leo Cunningham, Wilson Sonsini Goodrich &
Rosati, 650 Page Mill Road, Palo Alto, CA 94304; (650)320-4573; lcunningham@wsgr.com

**Notice to the person who issues or requests this subpoena**

If this subpoena commands the production of documents, electronically stored information, or tangible things or the
inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before
it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.   1:19-mc-00405-KS-RHW

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❏ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

❏ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $      0.00      .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B  (Rev.  02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

  **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
    **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
    **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

  **(2)** *For Other Discovery.* A subpoena may command:
    **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
    **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

  **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

  **(2)** *Command to Produce Materials or Permit Inspection.*
    **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
    **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

  **(3)** *Quashing or Modifying a Subpoena.*
    **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
    **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
    **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

  **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
    **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
    **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
    **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
    **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

  **(2)** *Claiming Privilege or Protection.*
    **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
    **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**Attachment 1**

**DEFINITIONS**

1.      The term "Document" is used in its customary and broadest sense, and is synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A).  A draft or non-identical copy is a separate document within the meaning of this term.

2.      The term "Financing Documents" means all Documents related to the mortgage or any other financing agreement entered into between You and Roberto D. Castillo and/or Tanya J. Romero Baca for the Property.  This includes, but is not limited to, the mortgage or financing application, all information submitted in support of the mortgage or financing application, all documents assessing the mortgage or financing application, all correspondence between You and Roberto D. Castillo and/or Tanya J. Romero Baca or their representatives related to the financing or mortgage and/or related to the Property, all information about the source of funds used for the down payment on the Property, and the Escrow file related to the Property.

3.      The term "Property" means the property located at 3735 Jardin St., Houston, Texas 77055.

4.      The terms "related to" or "relate to" mean relating to, concerning, referring to, evidencing, memorializing, constituting requests for documents "related to" any subject matter listed in the request below, including documents related to communications regarding that subject matter.

5.      The term "Relevant Time Period" means January 1, 2016 to the present.

6.      The terms "You" and "Your" mean Hancock Whitney Bank and its predecessors, successors, parents, subsidiaries, departments, divisions, joint ventures, affiliates, officers, directors, agents, employees, attorneys, consultants and any other person or entity acting on its behalf.

7.      The terms "all," "any," and "each" shall each be construed as encompassing any

and all.

8.     The connectives "and" and "or" shall be construed conjunctively or disjunctively as necessary to bring within the Request all information which might otherwise be construed as outside its scope.

9.     All references to the singular include the plural; and, all references to the plural include the singular.

## INSTRUCTIONS

A.     All responsive nonprivileged documents in Your possession, custody, or control are to be produced.  If, after exercising due diligence to secure the documents requested, You cannot produce all responsive documents, so state, produce to the extent possible, specify the reasons why You were unable to provide a full and complete response, and state what information and knowledge you do have concerning the unproduced portion.

B.     If You decline to produce any document or part thereof based on a claim of privilege or any other claim, please provide a privilege log that, for each such document, states: (a) the subject matter of the withheld document; (b) the nature of the document (letter, memorandum, notes, etc.); (c) the Bates number of the withheld document; (d) its date; (e) its author(s); (f) its recipient(s), if any (To / CC / BCC fields); (g) the privilege(s) claimed; (h) a description of the privilege(s) so as to explain the basis asserted for withholding the document in sufficient detail so as to enable the claim of privilege to be adjudicated, if necessary; and (i) whether the document has been redacted.

## REQUESTS

1.     All Documents from the Relevant Time Period related to the Property, including all Financing Documents.

**Attachment 2**

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**


IN RE: EX PARTE APPLICATION OF
LAURA ZUNIGA CACERES, BERTHA
ZUNIGA CACERES, AND SALVADOR
ZUINIGA CACERES FOR ASSISTANCE                CASE NO. 1:19-mc-00405-KS-RHW


<u>**MEMORANDUM OPINION AND ORDER**</u>

This cause comes before the Court on the Proposed Findings of Fact and Recommendation [28] ("R&R") issued by U.S. Magistrate Judge Robert Walker who is assigned to this matter concerning the Applicants' Ex Parte Application for Discovery for Use in a Foreign Tribunal pursuant to 28 U.S.C. § 1782 ("Application") [1]. Also before the Court is a Motion to Strike Rebuttal Filed by Applicants as Procedurally Improper ("Motion to Strike) [35], which has also been fully briefed [36, 38].

On July 17, 2019 Laura Zuniga Caceres, Bertha Zuniga Caceres, and Salvador Zuniga Caceres ("Applicants") filed an application under 28 U.S.C. § 1782, seeking discovery from Hancock Whitney Bank (the "Bank") located in Gulfport, Mississippi. [1]. After the Application was filed, Tanya Romero-Boca ("Respondent") made an appearance and requested leave to be heard on the Application [11], which the Court granted [16]. Briefs and various affidavits and documents were filed relating to the Application. [2, 4, 17, 27]. On October 30, 2019, the Magistrate Judge entered the R&R [28]. Applicants filed their objections [32], and Respondent filed a response to those objections [33]. Applicants then filed a rebuttal [34], which is the subject of Respondent's Motion to Strike [35]. The Court first addresses the Motion to Strike, then the R&R and Applicants' Objections, and then issues its ruling on the Application.

## I. BACKGROUND

This proceeding arises from the indictment of David Castillo Mejia ("Castillo") as the orchestrator of the murder of Berta Isabel Caceres Flores ("Caceres") in Honduras, which occurred on March 2, 2016. None of the parties have taken issue with the Magistrate Judge's findings of fact, and thus, the Court adopts the same. For purposes of clarity within this Order, the Court notes only that the Applicants are the adult children of Ms. Caceres, who are participating in the criminal trial of Castillo in Honduras as private plaintiffs, through a private prosecutor, as permitted under Honduran law. *See* [4-13] at ¶ 2. Under Honduran law, the private prosecutor is authorized to present arguments, submit evidence, and examine witnesses at pretrial hearings and during the trial of criminal matters. [4-13] at ¶ 3.[1] Applicants have petitioned this Court for issuance of a subpoena to the Bank for use in the Honduran criminal proceedings against Castillo. Applicants seek a mortgage file relating to Castillo's purchase of a home in Houston, Texas several months after Cacera's killing. Applicants are requesting the file because they believe the records will adduce evidence that Castillo received a large sum of money to orchestrate Caceres's murder and that he had a strong financial motive to carry out the assassination. [2] at p. 11. Respondent is the wife of Castillo who opposes the issuance of the subpoena, arguing, among other things, her privacy interest in her information contained in the file and that the Application is a "bad faith fishing expedition." [17] at p. 1.

## II. DISCUSSION

### A. Motion to Strike

In her Motion to Strike, Respondent argues that the rebuttal filed in response to her response to Applicants' objections to the R&R [34] is procedurally improper because it is not

---

[1] Doc. [4-13] is an affidavit from one of the private prosecutors representing the Applicants, who indicates that he also participated in the 2018 trial of eight men accused of Caceres's murder on behalf of the Applicants and that he presented evidence, cross-examined the accused and witnesses, presented arguments at pre-trial hearings and filed briefs in those proceedings. [4-13] at ¶ 4.

authorized under Local Uniform Civil Rule 72 and it contains a great deal of newly cited case law. Applicants respond that nothing in Rule 72 prohibits them from filing a rebuttal. Applicants cite to Local Uniform Rule 7 for the proposition that their Objections to the R&R were filed as a motion because they are a "written communication with the court that is intended to be an application for relief or other action by the court." [36] at p. 1. The Court finds this argument unavailing. The Objections are not a motion, but an authorized response to the Magistrate Judge's findings and conclusions of law, as provided explicitly in Rule 72.

Notwithstanding, the Court is cognizant that courts in this district have allowed for a reply brief when there is a response filed to a party's objections to an R&R. *See, e.g., Buckhalter v. Mississippi*, No. 1:17CV191-LG-LRA, 2018 U.S. Dist. LEXIS 123391, at *1 (S.D. Miss. July 24, 2018); *Reeves v. Shaw*, No. 1:19-CV-29-LG-JCG, 2019 U.S. Dist. LEXIS 128345, at *1 (S.D. Miss. Aug. 1, 2019); *McKnight v. Ladner*, No. 5:17-cv-118(DCB)(JCG), 2019 U.S. Dist. LEXIS 56216, at *42 (S.D. Miss. Apr. 2, 2019); *Ellison v. Broadus*, No. 1:08-cv-262-HSO-JMR, 2010 U.S. Dist. LEXIS 24059, at *4-5 (S.D. Miss. Mar. 15, 2010). Understandably a reply will contain additional case law because it is responding to the arguments made by the opposition. In particular, the Court finds the briefing on the standard of review in this matter to be particularly helpful. To the extent the reply contains any new arguments or does not address particular arguments made by Respondent in her response, those have not been considered. Therefore, Respondent's Motion to Strike [35] is hereby DENIED.

## B. Review of Report and Recommendation

### 1. Legal Standards on Application for Discovery

A district court may order discovery pursuant to 28 U.S.C. § 1782 ( hereinafter "§1782") when the following three statutory requirements are met: (1) the person from whom discovery is sought must reside or be found in the district where the application is filed; (2) the discovery

must be for use in a proceeding before a foreign tribunal; and (3) the application must be made by a foreign or international tribunal or any "interested person." *Texas Keystone*, 694 F.3d at 553. The district court has discretion to order the requested discovery when the statutory requirements are met. *Texas Keystone*, 694 F.3d at 553–54.

The Supreme Court has identified four factors to guide the court's exercise of discretion: (1) whether the respondent is a party to the foreign proceeding and subject to discovery in that jurisdiction; (2) the nature of the foreign tribunal, character of the proceedings underway, and the foreign court's receptivity to aid from U.S. federal courts; (3) whether the application conceals an attempt to circumvent foreign proof-gathering limits or other policies; and (4) whether the discovery sought is unduly intrusive or burdensome. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 255 (2004). These will be referred to herein as "the *Intel* factors."

## 2. The Magistrate Judge's Findings and Recommendation

In the R&R, the Magistrate Judge first noted that the Respondent had no dispute that the statutory requirements had been met and went on to state, "Hancock Whitney Bank is located in the Southern District of Mississippi. Applicants seek to use the financial records in a criminal proceeding against Mr. Castillo in Honduras. Applicants are interested parties in the Honduran criminal proceeding by virtue of their role as private plaintiffs." [28] at p. 3. Accordingly, the Magistrate Judge found that the Court possessed the statutory authority to grant the application. *Id*. The Magistrate Judge then went on to analyze the four discretionary factors. He found the first two factors weighed in favor of granting the application, the third factor was neutral, and the fourth factor weighed against granting the application. He then recommended that the application be denied. Applicants have raised objections to particular portions of the R&R, which this Court now reviews.

### 3. Standard of Review on the R&R

Before addressing the Applicants' objections, the first issue to be determined is the proper standard of review to be applied to the Magistrate Judge's R&R. Applicants argue the review is *de novo*, while Respondent argues that the review falls under the clearly erroneous or contrary to law standard.

The standard of review for a magistrate judge's rulings turns on whether the matter is dispositive or nondispositive. *See* Fed. R. Civ. P. 72. For nondispositive matters, the district judge assigned to the case "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). For dispositive matters, the district judge assigned to the case "must determine *de novo* any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3).

Section 1782 provides in relevant part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal .... The order may be made ... upon the application of any interested person and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court .... To the extent that the order does not
>
> prescribe otherwise, the testimony or statement shall be taken, and the document or other thing produced, in accordance with the Federal Rules of Civil Procedure.

28 U.S.C. § 1782(a). While discovery related issues are typically nondispositive matters, the procedure afforded an application for discovery for use in a foreign tribunal under §1782 is a bit different. As the Fifth Circuit Court of Appeals has explained, "[Section] 1782 does not establish a standard for discovery. Instead, it provides for a threshold determination of whether to allow foreign litigants to enjoy discovery in U.S. courts in accordance with the federal rules." *Tex. Keystone, Inc. v. Prime Natural Resources, Inc.*, 694 F.3d 548 (5th Cir. 2012) (quoting *Gov't of Ghana v. ProEnergy Servs.*, LLC, 677 F.3d 340, 343 (8th Cir. 2012)).

With regard to the authority of a Magistrate Judge on such a matter, the Federal Magistrate Act provides, in relevant part:

> (A) A judge may designate a magistrate judge to **hear and determine** any pretrial matter pending before the court, *except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action.* A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law.

> (B) a judge may also designate a magistrate judge to conduct hearings including evidentiary hearings, and **to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court,** *of any motion excepted in subparagraph (A)*, of applications for posttrial relief made by individuals convicted of criminal offenses and of prisoner petitions [*8] challenging conditions of confinement.

28 U.S.C. § 636(b)(1)(A), (B) (emphasis added). Also, "[e]ach district court shall establish rules pursuant to which the magistrate judges shall discharge their duties." Title 28 U.S.C. § 636(b)(4). Under Federal Rule of Civil Procedure 72, nondispositive matters are dealt with by a ruling of the magistrate, and dispositive matters result in a recommended disposition. *See* Fed. R. Civ. P. 72 (a), (b); *see also* S.D. Miss. L. U. Civ. R. 72. Here, the Magistrate Judge did not issue a ruling but merely recommended a disposition on the Application.

Respondent contends that regardless of the title "Proposed Findings of Fact and Recommendation," the R&R is actually a ruling that is subject to review under the clearly erroneous or contrary to law standard because it is not one of the enumerated dispositive matters listed in Section 636(b)(1)(A). Respondent relies on district court cases outside of this circuit that have reviewed a magistrate's ruling on a §1782 application as nondispositive and reviewable under the clearly erroneous standard. Granted, an application under §1782 is not an enumerated dispositive pretrial matter under Section 636(b)(1)(A), but in looking at the nature of the proceeding, a ruling on such is dispositive insofar as the proceedings in the federal district court

6

are concerned. *Cf. Davidson v. Georgia-Pacific, L.L.C.*, 819 F.3d 758, 764 (5th Cir. 2016) (holding that a remand order, which is not a listed matter, is nonetheless dispositive and subject to *de novo* review by the district court).

Applicants point out that the issue of the proper review is an unsettled question as some courts in other circuits have recently noted, some of which proceeded under *de novo* review. *See, e.g., In re Cohen*, No. 16-MC-2947, 2016 U.S. Dist. LEXIS 169622, at *7 n.3 (E.D.N.Y. Dec. 6, 2016) (noting that whether rulings on motions under §1782 are considered dispositive or non-dispositive is an unsettled question and proceeding under *de novo* review "out of abundance of caution"); *Qualcomm Inc.*, No. 18-mc-80134-PJH, 2019 U.S. Dist. LEXIS 5716, at *2 (N.D. Cal. Jan. 11, 2019) (acknowledging a split of authority in its circuit on the standard of review of a magistrate judge's order on a §1782 application); *In re Godfrey*, Case No. 17-cv-21631, 2018 U.S. Dist. LEXIS 29794, at *17-19 (S.D. Fla. Feb. 22, 2018) (reviewing report and recommendation subject to *de novo* review under "conservative approach" in light of the split in authority). *In re Hornbeam Corp.*, No. 14-24887-MC, 2018 U.S. Dist. LEXIS 71277, at *7 (S.D. Fla. Apr. 27, 2018) (finding that the extensive caselaw cited by the parties did not resolve whether a § 1782 decision is dispositive and the court's own review of caselaw was inconclusive but reserving on the issue because *de novo* review warranted on other grounds).

Applicants rely on *Texas Keystone, Inc. v. Prime Natural Resources, Inc.,* 694 F.3d 548 (5th Cir. 2012), as well as district court cases from this circuit, to argue that the R&R is dispositive and therefore, *de novo* review is warranted. The Court does not agree, as Applicants urge, that the *Texas Keystone* case is determinative of the issue;[2] thus, with there being no direct

---

[2] The Court disagrees with Applicants' contention that the Fifth Circuit in *Texas Keystone* "unequivocally held that a decision whether to grant or deny a Section 1782 application is a final disposition." [34] at p. 2. That could not have been the "holding," as that was not an issue on appeal. One issue was whether a district court's order, quashing subpoenas after previously granting an application under §1782 was a final appealable order. 694 F.3d at 549. That is not what is at issue here. As such, this Court cannot say that the Fifth Circuit has definitively decided the standard of review issue.

guidance from the Fifth Circuit, the Court finds it prudent to take the conservative approach and, out of an abundance of caution, apply a *de novo* review as some of its sister courts in this circuit have done. *See, e.g., In re Solines*, No. 18-3680 Section "R" (3), 2018 U.S. Dist. LEXIS 81481, at *1 (E.D. La. May 15, 2018) (*de novo* review of magistrate judge's ruling on application for discovery under 28 U.S.C. § 1782); *In re Gazprom Latin Am. Servicios, C.A.*, Misc. A. No. 4:14-mc-1186, 2016 U.S. Dist. LEXIS 87175, at *33 (S.D. Tex. July 6, 2016) (same); *In re Trygg-Hansa Ins. Co.*, 896 F. Supp. 624, 628 (E.D. La. 1995) (same).

### 4. Applicants' Objections

Applicants take issue with the R&R's analysis and determination under the third and fourth *Intel* factors, arguing that the Magistrate Judge applied incorrect legal standards. Specifically, Applicants contend that the Court erroneously applied a non-existent discoverability requirement in finding that the third factor was neutral and that the Court erred in determining the fourth factor by subjecting the discovery request to an impermissibly high relevance standard for assessing whether the discovery would be unduly intrusive or burdensome. We address these issues in turn.

### a. The third *Intel* factor

Again, the third factor for a court to consider is whether the application conceals an attempt to circumvent foreign proof-gathering limits or other policies. *Intel*, 542 U.S. at 255. The Magistrate Judge's analysis turned on whether a private plaintiff has authority under Honduran law to conduct discovery in a criminal proceeding. [28] at p. 5. The Magistrate Judge notes that it is not the government prosecutor who is seeking the discovery of this financial information, but rather the Applicants, as private plaintiffs. *Id*. Because the Applicants failed to cite any positive authority as to their ability to conduct discovery under Honduran law, the Magistrate Judge found it to be an admission that they do not. *Id*. The Magistrate Judge then found this factor to

be neutral in determining whether to grant the application. Applicants argue that there is no requirement that Honduras explicitly allow Applicants to take discovery, and more so, no showing that Honduras explicitly prohibits them from taking discovery.

### i. No showing of attempt to circumvent proof-gathering limits or policies

What is at issue in the third discretionary factor is whether there has been a showing that the application conceals an attempt to circumvent foreign proof-gathering limits or other policies. This Court finds that indeed there has been no showing of specific restrictions on the Applicants from obtaining discovery. Respondent's initial arguments in this regard in opposition to the Application were vague and equivocal. First, Respondent argued that the "Applicants *are likely* exceeding their rights under Honduran law." [17] at p. 8 (emphasis added). She states that to her knowledge, the Applicants did not ask the Honduran court to authorize this discovery. This is not a requirement under § 1782. Respondent pointed out that there are six specific rights given under the victims rights statute, none of which include the right to propound discovery.[3] Applicants urge, on the contrary, that the absence of an express discovery right is not the same as a prohibition of obtaining such discovery. The Court agrees.[4] Respondent points to no law that specifically prohibits private plaintiffs from participating in discovery. The cases Respondent cites from Alaska and Arizona[5] have no bearing on the proof-gathering restrictions in Honduras.

Second, Respondent argued that the Applicants' request *appears* inconsistent with Article 149 of the Honduran Code of Criminal Procedure. [17] at p. 9 (emphasis added). However, even in the declaration provided by Respondent, Castillo's own defense attorney does not specifically

---

[3] These appear to be the general statements of rights, with more specific rights listed throughout the Honduran Code of Criminal Procedure.

[4] *Cf. Mees v. Buiter*, 793 F.3d 291, 303 n. 20 (2d Cir. 2015) ("That a country does not enable broad discovery within a litigation does not mean that it has a policy that restricts parties from obtaining evidence through other lawful means. '[P]roof-gathering restrictions' are best understood as rules akin to privileges that prohibit the acquisition or use of certain materials, rather than as rules that fail to facilitate investigation of claims by empowering parties to require their adversarial and non-party witnesses to provide information.")

[5] [17] at p. 9 (citing *Cooper v. Dist. Court*, 133 P.3d 692, 705 (Ala. Crim. App. 2006); *Lindsay R. v. Cohen*, 343 P.3d 435, 437 (Ariz. App. 2015)).

state that a discovery request such as the one at issue here *is required* to go through diplomatic channels or approved by a judge—he only recites the section from the Honduran Code. [17-2] at p. 4.   Interestingly, a signed translation from a certified translator of the statue itself, also submitted by the Respondent, bears the title "Communications Between the Judicial Authorities" and states, "Letters rogatory addressed to foreign courts or foreign authorities . . . will be handled via diplomatic channels . . . ."[6] Thus, it appears the statute applies when a Honduran court sends letters rogatory to a foreign jurisdiction. That is not the case here.

### ii.  Applicant need not show explicit authority to conduct discovery

The Court also agrees with the Applicants and finds that they need *not* show an ability to formally conduct discovery under Honduran law because the Applicants' ability to obtain the discovery is subsumed in their being an "interested party" under the statutory factors, as addressed by the Supreme Court in the *Intel* case.[7]

In *Intel*, the Supreme Court granted review of the question: "[D]oes §1782(a) make discovery available to complainants [] who do not have the status of private "litigants" and are not sovereign agents?" 542 U.S. at 253. In this case, based on the arguments of Respondent, and as it appears the Magistrate Judge viewed it, the question was similar—can a private plaintiff in Honduras, who is not the government prosecutor, seek the available discovery? In *Intel*, the party opposing the §1782 application (the company Intel) had argued that the interested persons authorized to apply for judicial assistance under § 1782(a) includes only "litigants, foreign sovereigns, and the designated agents of those sovereigns," and excluded the applicant, who was

---

[6] This Court is truly at a disadvantage by having to rely on translations of the various documents because, as shown above, they at times appear to be inconsistent.

[7] Although Applicants mention that there is no "foreign discoverability" requirement, that is not truly what is at issue here. The holding in *Intel* addressed whether the documents themselves must have been discoverable had the documents been located in the foreign jurisdiction. Thus, that question was: is what one is seeking discoverable? Here, the question is: are those who are seeking the discovery able to seek it? And the answer is yes.

a mere complainant before the European Commission. 542 U.S. at 256.[8]   Intel relied on the caption of the statute which reads, "Assistance to foreign and international tribunals and to *litigants* before such tribunals," to argue that the phrase "interested person" should be read to include only "litigants." *Id*. The Supreme Court found that the plain text of the statute undermined such a reading because the statute's use of the words "interested person" "plainly reaches beyond the universe of persons designated 'litigant.'" *Id*. While a litigant may be the most common example of an interested person who may invoke §1782, the statute is not so limited. *Id*.

The Supreme Court in *Intel* went on to explain that a complainant who triggers a DG Competition investigation has a significant role in the process, including not only the ability to prompt an investigation in the first place, but also the right to submit information for the DG Competition's consideration and may proceed to court if the investigation is discontinued or the complaint dismissed. 542 U.S. at 256. "Given these participation rights, a complainant 'possess[es] a reasonable interest in obtaining [judicial] assistance,' and therefore qualifies as an 'interested person' within any fair construction of that term." *Id*. at 256-257.

The same is true here.   In Honduras, victims of crime have the right to intervene in criminal proceedings and establish a private prosecution against the accused. Article 16 of the Honduran Code of Criminal Procedure explicitly allows a victim to "become a private plaintiff or complainant and intervene as such" throughout the criminal process. [11-2] ----- Two of the

---

[8] The applicant in *Intel* was Advanced Micro Devices, Inc. ("AMD"), who had filed an antitrust complaint with the Directorate-General for Competition ("DG Competition") against Intel Corporation, alleging a violation of European competition law. 542 U.S. at 241. After the DG Competition declined AMD's recommendation to seek documents Intel had produced in a private antitrust suit in Alabama, AMD filed an application under § 1782 to obtain the documents. *Id*. The DG Competition conducts investigations into alleged violations of the European Union's competition laws. *Id*. at 254. Upon receipt of a complaint, the DG Competition conducts a preliminary investigation, wherein it may take into account information provided by a complainant. *Id*. That investigation results in a formal decision whether or not to pursue the complaint. *Id*. Similar to the private prosecutors in Honduras, "[a]lthough lacking formal "party" or "litigant" status in Commission proceedings, [AMD] has significant procedural rights." *Id*. at 255. Similar to the Honduran private prosecutor's ability to present evidence at hearings and at trial, "the complainant may submit to the DG Competition information to support its allegations . . . ." *Id*.

particular rights acknowledged by Respondent include the right to accuse or make a complaint against a defendant, and to be involved in public hearings. According to the Applicants' private prosecutor himself as well as other provisions of the Honduran Code of Criminal Procedure,[9] the Applicants, as private plaintiffs through their private prosecutors, have the right to present arguments, submit evidence, and conduct direct and cross-examinations of witnesses at pre-trial hearings and during the criminal trial. [4-13] at ¶ 3. In addition, the private prosecutor may initiate proceedings and raise issues that the public prosecutor declines to pursue. [4-11] at p. 20 (Art. 97). Just as in *Intel*, these significant participation rights show that the Applicants possess a reasonable interest in obtaining judicial assistance. By qualifying as an interested person under the statute itself, there need not be any separate requirement that the Applicants show specific authority under Honduran law that they may conduct discovery.[10]

Based on the foregoing, with no showing of a particular prohibition on Applicants' seeking discovery and the Applicants being an appropriate "interested person," the Court finds the third *Intel* factor weighs in favor of granting the petition, or at least does not present a reason not to do so.[11]

### b. The fourth *Intel* factor

The fourth factor for a court to consider is whether the discovery sought is unduly intrusive or burdensome. In this regard, the Magistrate Judge found that the proper scope of the discovery is determined by the Federal Rules of Civil Procedure and utilized Rule 26 to determine that the request was not narrowly tailored, requested confidential information, and

---

[9] [4-11] at p. 21 (Art. 99) (stating that the "private accusation shall contain specific indication of the evidence he has or of which he knows"); [4-11] at p. 30 (Article 440-H) ("This act will be followed by presentation of the proposed evidence by the parties, starting with that of the Public Prosecutor, the private plaintiff, if applicable, and the evidence from the defense.)

[10] Although this Court has conducted a *de novo* review, the Magistrate Judge's apparent requirement that such authority be shown would be contrary law, even under the clearly erroneous or contrary to law standard.

[11] Applicants also argued that the analysis of this factor involves a determination of whether the discovery is being sought in bad faith. [32] at p. 9. The Court does not agree that this is the law in the Fifth Circuit and finds such an analysis unnecessary.

appeared to be a fishing expedition.[12] [28] at pp. 6-8. The Magistrate Judge also suggested that evidence requested was irrelevant to the theories of the case as described by Castillo's defense attorney. [28] at p. 7. He concluded, "Given the lack of nexus between the financial information and the charges in the criminal indictment, the undersigned recommends that the motion for discovery be denied." [28] at p. 8.

Applicants argue that the Magistrate Judge imposed an impermissibly high relevance threshold on the discovery request. Applicants also argue that their inability to substantiate what they believe the records will show does not preclude the discovery under the Federal Rules, as is the nature of broad discovery. Finally, Applicants argue that any privacy interest on Respondent's part is best remedied by a protective order and not a denial of the application. Respondent responds that the Applicants overlook the fact that the Magistrate Judge considered the evidence and arguments that Respondent posed and found the factor weighed against granting the application, which was entirely within his discretion. However, reviewing the issue *de novo*, this Court finds that the initial arguments presented by the Respondent may indeed be dealt with by imposing certain restrictions on the production of the mortgage file and not a denial of the application. *See Intel*, 542 U.S. at 265 (noting that unduly intrusive requests may be rejected or trimmed); *In re Application of HydroDive Nigeria, Ltd.*, No. 13-MC-0477, 2013 WL 12155021, at *4 (S.D. Tex. May 29, 2013) (allowing discovery pursuant to protective order).

In seeking the discovery, Applicants argued that they seek only those records held by the bank that relate to the financing secured to purchase the Houston property. [2] at p. 19. Applicants recognized that if the discovery sought was indeed excessive, the court may limit its scope rather than preclude it entirely when other factors weigh in favor of granting the application. *Id.* (citing *In re RSM Prod. Corp.*, 195 F. Supp. 3d 899 (S.D. Tex. 2016) and *Intel*,

---

[12] Judge Walker found that Applicants' "belief" in what the discovery will show would result in a fishing expedition because the Applicants "offer[ed] nothing to substantiate these 'beliefs'" as to what the evidence will show.

542 U.S. at 265). While it is not uncommon for courts to grant these applications ex parte,[13] the Respondent here filed a request to be heard [11], which the Court allowed [16].

In her initial opposition, Respondent raised a number of issues, not just with regard to the fourth factor, but in general, including the fact that the discovery appeared irrelevant based on theories presented in the case thus far. [17] at p. 5. Respondent also argued she has a privacy interest in her financial information and concern that the discovery request is only a pretext for obtaining access to the Castillo's assets, arguing that it was made in bad faith and for harassment. [17] at pp. 6-7. Respondent additionally argued that there is no reasonable way to protect the Castillos from potential misuse of their financial information and the serious threat that such misuse may occur. [17] at p. 8. She further offered an explanation as to why the family moved to Houston and where the funds to purchase the Houston property came from. [17] at pp. 3-4.

Contrary to Respondent's assertions, it is not up to this Court to determine the particular relevancy of the information sought, nor can this Court conclude that the Applicants' purpose in seeking the discovery is to harass. Given the Applicants' broad participation rights as private plaintiffs in Honduras and their attorney's averment that the evidence he has compiled indicates that Castillo had strong financial motives to carry out the murder and seeks the mortgage file will reveal evidence of payment, as well as previously unknown or unindicted individuals and/or entities in the Caceres murder, there appears to the undersigned to be nothing to indicate that the request is improper. No one truly knows what the file will show, and this Court cannot make a credibility determination and accept only Respondent's version of what will be found in the file or where the money for the purchase came from.

This Court also will not speculate on any theories of the criminal case in Honduras, particularly given that, as noted above, a private plaintiff may raise issues that the public

---

[13] *See* cases cited by Applicants in [2] at p. 20.

14

prosecutor declines to pursue. "Under § 1782, an applicant may seek discovery of any materials that can be made use of in the foreign proceeding to increase her chances of success." *Mees v. Buiter*, 793 F.3d 291, 299 (2d Cir. 2015). The file may very well contain such information.

Again, the issue for the fourth factor is whether the discovery is unduly intrusive or burdensome. As far as the Bank is concerned, it is neither. As for the Respondent, it is not burdensome. She need not produce anything. Thus, the question is whether the request is unduly intrusive to Respondent. Given that this Court can place restrictions and limitations on the production, the Court finds that it is not. Although, the Court is mindful of Respondent's concern about the misuse of the information, which will be addressed in the restrictions placed on the discovery. Therefore, in light of the foregoing, the Court finds this fourth factor weighs in favor of granting the application.

## III. CONCLUSION

Based on a *de novo* review of the stated objections, and for the reasons set forth above, the Court finds that the statutory requirements of 28 U.S.C. §1782 have been met and that there are no discretionary factors weighing against the Application being granted. Therefore, the Court adopts the Magistrate Judge's factual findings, but declines to adopt the Magistrate Judge's conclusions as to third and fourth discretionary factors or his recommendation.

Accordingly, it is hereby ORDERED that the Ex Parte Application for Discovery for Use in a Foreign Tribunal Pursuant to 28 U.S.C. §1782 [1] is hereby granted. Mindful of the privacy concerns at issue, the Court hereby FURTHER ORDERS that the subpoena issued to Hancock Whitney Bank shall require that the mortgage file be produced to the undersigned's chambers for an in camera review prior to any release to the parties. Also, Hancock Whitney Bank will be required to redact all account numbers and social security numbers (or their Honduran equivalent) from responsive documents prior to production. **Should the Court find production**

warranted upon review of the documents produced by Hancock Whitney Bank, the production shall be made pursuant to the following protective order:

It is ORDERED that the disclosure of any documents produced by Hancock Whitney Bank shall be to attorneys' eyes only, which shall be Respondent's counsel and the Applicants' private prosecutor, presumably Mr. Victor Antonio Fernandez Guzman. The Applicants' Honduran attorney must consent to the jurisdiction of this Court for enforcement of this protective order. Applicants may properly notify the Court by filing a Notice of Consent with an attached signed written consent from the attorney. The Court finds no need for local counsel to be involved in production.

SO ORDERED AND ADJUDGED this 18th day of May 2020.


/s/ Keith Starrett_____
KEITH STARRETT
UNITED STATES DISTRICT JUDGE

**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF MISSISSIPPI**
~~GULFPORT~~ Southern **DIVISION**



SOUTHERN DISTRICT OF MISSISSIPPI
**FILED**
JUL 17 2019
ARTHUR JOHNSTON
BY _____ DEPUTY

IN RE: *EX PARTE* APPLICATION OF )
LAURA ZÚNIGA CÁCERES, BERTHA )
ZÚNIGA CÁCERES, AND SALVADOR )
ZÚNIGA CÁCERES FOR ASSISTANCE )
BEFORE A FOREIGN TRIBUNAL )
_____ )

CASE NO.: 1:19mc 405 LG-RHW

---

*EX PARTE* **APPLICATION OF LAURA ZÚNIGA CÁCERES, BERTHA ZÚNIGA CÁCERES, AND SALVADOR ZÚNIGA CÁCERES FOR DISCOVERY FOR USE IN A FOREIGN TRIBUNAL PURSUANT TO 28 U.S.C. § 1782**

---

Amelia S. McGowan, MSB# 103610
MISSISSIPPI CENTER FOR JUSTICE
5 Old River Place, Suite 203 (39202)
P. O. Box 1023
Jackson, Mississippi 39215
Telephone: (769) 230-8003
Facsimile: (601) 352-4769
Email: amcgowan@mscenterforjustice.org

OF COUNSEL:
Leo P. Cunningham, *Pro Hac Vice Forthcoming*
Ralitza S. Dineva, *Pro Hac Vice Forthcoming*
Sean P. Killeen, *Pro Hac Vice Forthcoming*
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, California 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email: lcunningham@wsgr.com
        rdineva@wsgr.com
        skilleen@wsgr.com

Roxanna Altholz, *Pro Hac Vice Forthcoming*
INTERNATIONAL HUMAN RIGHTS LAW
CLINIC, UNIVERSITY OF CALIFORNIA
BERKELEY
489 Simon Hall,
Berkeley, California 94720
Telephone: (510) 643-8781
Facsimile: (510) 643-4625
Email: raltholz@law.berkeley.edu

*Attorneys for Applicants*
*Laura Zúniga Cáceres, Bertha Zúniga Cáceres,*
*and Salvador Zúniga Cáceres*

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE: On July 17, 2019, Laura Yolanda Zúniga Cáceres, Bertha

Isabel Zúniga Cáceres, and Salvador Edgardo Zúniga Cáceres (together, "Applicants") hereby

present an *ex parte* application seeking document discovery from Hancock Whitney Bank for

use in a foreign tribunal pursuant to 28 U.S.C. § 1782 (the "Application").

Applicants' request is based on this Application, the Memorandum of Points and

Authorities in support thereof, the Declaration of Ralitza S. Dineva with exhibits, and any other

evidence submitted by Applicants.

Dated: July 17, 2019                    Respectfully submitted,

By: _Amelia S. McGowan_
        Amelia S. McGowan

MISSISSIPPI CENTER FOR JUSTICE
5 Old River Place, Suite 203 (39202)
P. O. Box 1023
Jackson, Mississippi 39215

OF COUNSEL:

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
Leo P. Cunningham
Ralitza S. Dineva
Sean Killeen
650 Page Mill Road
Palo Alto, California 94304-1050

INTERNATIONAL HUMAN RIGHTS LAW
CLINIC, UNIVERSITY OF CALIFORNIA
BERKELEY
Roxanna Altholz
489 Simon Hall,
Berkeley, California 94720

*Attorneys for Applicants*
*Laura Zúniga Cáceres, Bertha Zúniga*
*Cáceres, and Salvador Zúniga Cáceres*



SOUTHERN DISTRICT OF MISSISSIPPI
FILED
JUL 17 2019
ARTHUR JOHNSTON
BY _____ DEPUTY

**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
~~GULFPORT~~ DIVISION**
Southern

IN RE: *EX PARTE* APPLICATION OF )
LAURA ZÚNIGA CÁCERES, BERTHA )
ZÚNIGA CÁCERES, AND SALVADOR )
ZÚNIGA CÁCERES FOR ASSISTANCE )
BEFORE A FOREIGN TRIBUNAL )
————————————————————— )

CASE NO.: 1:19mc 405 LG-RHW

---

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *EX PARTE*
APPLICATION OF LAURA ZÚNIGA CÁCERES, BERTHA ZÚNIGA CÁCERES,
AND SALVADOR ZÚNIGA CÁCERES FOR DISCOVERY FOR USE IN A FOREIGN
TRIBUNAL PURSUANT TO 28 U.S.C. § 1782**

---

Amelia S. McGowan, MSB# 103610
MISSISSIPPI CENTER FOR JUSTICE
5 Old River Place, Suite 203 (39202)
P. O. Box 1023
Jackson, Mississippi 39215
Telephone: (769) 230-8003
Facsimile: (601) 352-4769
Email: amcgowan@mscenterforjustice.org

OF COUNSEL:
Leo P. Cunningham, *Pro Hac Vice Forthcoming*
Ralitza S. Dineva, *Pro Hac Vice Forthcoming*
Sean P. Killeen, *Pro Hac Vice Forthcoming*
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, California 94304-1050
Telephone: (650) 493-9300
Facsimile: (650) 565-5100
Email: lcunningham@wsgr.com
        rdineva@wsgr.com
        skilleen@wsgr.com

Roxanna Altholz, *Pro Hac Vice Forthcoming*
INTERNATIONAL HUMAN RIGHTS LAW
CLINIC, UNIVERSITY OF CALIFORNIA
BERKELEY
489 Simon Hall,
Berkeley, California 94720
Telephone: (510) 643-8781
Facsimile: (510) 643-4625
Email: raltholz@law.berkeley.edu

*Attorneys for Applicants
Laura Zúniga Cáceres, Bertha Zúniga Cáceres,
and Salvador Zúniga Cáceres*

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION .................................................................................................... 1

II.  FACTUAL BACKGROUND..................................................................................... 2

    A.   Ms. Cáceres Successfully Campaigned against the DESA-led Agua Zarca
        Dam................................................................................................................... 2

    B.   Ms. Cáceres was Murdered in Order to Silence Her Opposition to the
        Agua Zarca Dam ............................................................................................. 4

    C.   The Cáceres Children Seek Justice for their Mother's Murder .............................. 5

III. LEGAL STANDARDS ............................................................................................ 6

IV.  ARGUMENT............................................................................................................ 8

    A.   Hancock Whitney Bank Resides in This District .................................................. 8

    B.   The Discovery is Sought for Use in a Criminal Trial in Honduras ........................ 8

    C.   The Cáceres Children are "Interested Persons" in the Honduran
        Proceedings .................................................................................................... 10

    D.   The Court Should Exercise Its Discretion and Grant This Application................ 11

        1.   The discovery sought is outside of the jurisdictional reach of
             Honduran courts, and thus inaccessible absent assistance under
             Section 1782 ..................................................................................... 11

        2.   The Honduran Government is Receptive to U.S. Judicial
             Assistance in this Criminal Proceeding ...................................................... 12

        3.   The Application Does Not Attempt to Circumvent Honduran
             Evidentiary Procedures ............................................................................ 13

        4.   The Discovery Sought is Not Unduly Burdensome................................... 14

    E.   The Court Should Grant the Requested Discovery on an *Ex Parte* Basis ............ 15

V.   CONCLUSION........................................................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Bravo Express Corp. v. Total Petrochemicals & Ref. USA, Inc.*,
   613 F. App'x 319 (5th Cir. 2015) ...................................................................................7, 8

*Ecuadorian Plaintiffs v. Chevron Corp.*,
   619 F.3d 373 (5th Cir. 2010) ............................................................................................13

*Gushlak v. Gushlak*,
   486 F. App'x 215 (2d Cir. 2012) ......................................................................................15

*In re Accent Delight Int'l Ltd.*,
   869 F.3d 121 (2d Cir. 2017)...............................................................................................9

*In re Bayer AG*,
   146 F.3d 188 (3d Cir. 1998)...............................................................................................7

*In re Berlamont*,
   No. 14-mc-00190 (JSR), 2014 U.S. Dist. LEXIS 111594
   (S.D.N.Y. Aug. 4, 2014) .....................................................................................................9

*In re Chevron Corp.*,
   No. 4:10-mc-134, 2010 U.S. Dist. LEXIS 120479 (S.D. Tex. Apr. 5, 2010)....................13

*In re Edelman*,
   295 F.3d 171 (2d Cir. 2002)...............................................................................................7

*In re Eurasian Bank Joint Stock Co.*,
   No. 3:15-mc-106-L-BN, 2015 U.S. Dist. LEXIS 142866
   (N.D. Tex. Oct. 21, 2015) ...........................................................................................13, 15

*In re Furstenberg Fin. SAS*,
   No. 18-mc-44 (JGK), 2018 U.S. Dist. LEXIS 116391
   (S.D.N.Y. July 12, 2018) ...............................................................................................9, 10

*In re Godfrey*,
   No. 3:08-MC-0107-K, 2009 U.S. Dist. LEXIS 127279
   (N.D. Tex. Mar. 24, 2009) .................................................................................................15

*In re Gorsoan, Ltd.*, No. 13 MISC 397 (PGG), 2014 U.S. Dist. LEXIS 175613
   (S.D.N.Y. Dec. 10, 2014)...................................................................................................13

*In re Grupo Mex. Sab De CV*,
   No. 3:14-MC-0073-G, 2015 U.S. Dist. LEXIS 177694
   (N.D. Tex. Mar. 10, 2015) .................................................................................................15

*In re HydroDive Nig., Ltd.*,
   No. 13-MC-0477, 2013 U.S. Dist. LEXIS 200238
   (S.D. Tex. May 29, 2013) .........................................................................................9, 10, 13

*In re iManagement Servs. Ltd.*,
    No. MISC 05-89 (FB), 2005 U.S. Dist. LEXIS 17025
    (E.D.N.Y. Aug. 16, 2005) ...................................................................13

*In re Inversiones y Gasolinera Petroleos Valenzuela, S. de R.L.*,
    No. 08-20378-MC, 2011 WL 181311 (S.D. Fla. Jan. 19, 2011) ...................................9, 13

*In re Metallgesellschaft AG*,
    121 F.3d 77 (2d Cir. 1997).................................................................13

*In re Republic of Ecuador*,
    No. C-10-80255 MISC CRB (EMC), 2010 U.S. Dist. LEXIS 102158
    (N.D. Cal. Sept. 15, 2010) .....................................................13, 14, 15

*In re RSM Prod. Corp.*,
    195 F. Supp. 3d 899 (S.D. Tex. 2016) ...............................................14, 15

*In re Sarrio S.A.*,
    173 F.R.D. 190 (S.D. Tex. 1995).....................................................7, 9, 13

*In re Solines*,
    No. 18-3680, 2018 U.S. Dist. LEXIS 82501 (E.D. La. Apr. 30, 2018)...........................14

*In re Veiga*,
    746 F. Supp. 2d 8 (D.D.C. 2010) .....................................................9, 10

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004) ................................................................. *passim*

*Mees v. Buiter*,
    793 F.3d 291 (2d Cir. 2015).............................................................9

*Minatec Fin. S.a.r.L. v. SI Grp. Inc.*,
    No. 1:08-CV-269, 2008 U.S. Dist. LEXIS 63802
    (N.D.N.Y. Aug. 18, 2008) ............................................................13, 14

*Republic of Ecuador v. Connor*,
    708 F.3d 651 (5th Cir. 2013) ..............................................................7

*Tex. Keystone, Inc. v. Prime Nat. Res., Inc.*,
    694 F.3d 548 (5th Cir. 2012) ..........................................................7, 14

## STATUTES

28 U.S.C. § 1782.................................................................. *passim*

## MISCELLANEOUS

Global Witness 2016 Annual Report, https://www.globalwitness.org/documents/
    19085/Annual_report_2016_AW_lowres.pdf ....................................................4

Inter-American Convention on Letters Rogatory, Jan. 30, 1995,
    1438 U.N.T.S. 283 .....................................................................12

International Advisory Group of Experts (GAIPE), *Dam Violence: The Plan That
    Killed Berta Cáceres*, https://gaipe.net/wp-
    content/uploads/2017/10/GAIPE-Report-English.pdf ...............................................3, 4, 5

International Labour Organization, Indigenous and Tribal Peoples Convention,
    1989 (No. 169), ratified by Honduras in 1995....................................................................3

## I.   INTRODUCTION

In March 2018, Roberto David Castillo Mejia ("Castillo") was indicted by the Honduran Office of the Public Prosecutor for ordering the murder of Berta Isabel Cáceres Flores ("Ms. Cáceres"). Ms. Cáceres was murdered on March 2, 2016, when hired gunmen broke down the door to her home and shot her multiple times in her bedroom. Ms. Cáceres's adult children, Laura Yolanda Zúniga Cáceres, Bertha Isabel Zúniga Cáceres, and Salvador Edgardo Zúniga Cáceres (together, "Applicants" or the "Cáceres Children"), now apply to this Court *ex parte* as authorized by 28 U.S.C. § 1782 ("Section 1782") for an order to aid them in obtaining justice as recognized victims in the pending Honduran criminal case against Castillo.

Applicants request that this Court grant them leave to obtain limited document discovery for use in the trial in Honduras against Castillo for Ms. Cáceres's murder. They seek bank records from Hancock Whitney Bank related to a $1.6 million real estate purchase Castillo made in the United States just a few months after successfully orchestrating Ms. Cáceres's assassination. Hancock Whitney Bank, which is headquartered in Gulfport, Mississippi, holds the mortgage to Castillo's property and is in possession of financial information related to the purchase. Evidence of the source of the funds used to purchase the property is expected to corroborate proof of Castillo's motive and connection to those who benefited directly from the murder, i.e., the owners of a dam construction project that was ground to a halt by Ms. Cáceres's efforts. The Cáceres Children, who are recognized as parties to the criminal proceedings in Honduras and are represented by private prosecutors there, intend to present evidence obtained from Hancock Whitney Bank—as is their right under Honduran law—to help secure Castillo's conviction.

As detailed below, the Cáceres Children's application under Section 1782 (the "Application") should be granted because it satisfies all three of the statute's threshold requirements and because all four of the discretionary factors identified by the Supreme Court in *Intel Corp. v. Advanced Micro Devices, Inc.* favor granting the application.

Accordingly, Applicants respectfully request that the Court enter the order attached as Exhibit A, allowing Applicants to serve a subpoena in substantially the same form as that attached as Exhibit B.

## II.    FACTUAL BACKGROUND

### A.    Ms. Cáceres Successfully Campaigned against the DESA-led Agua Zarca Dam

In 2009, the Honduran Congress granted a concession to construct a hydroelectric project—the Agua Zarca Dam on the Gualcarque River in western Honduras—to a newly-formed hydroelectric company called Desarrollos Energéticos S.A. ("DESA"). Ex. 1[1] at 7, 8; Ex. 2 at 15.  DESA was founded by two employees of Castillo, who served as his proxies, and held just $1,200 in equity. Ex. 1 at 8-9; Ex. 2 at 15.  In addition to the large project concession, DESA secured operating permits, water rights, and a lucrative contract to sell power to the Honduran National Electricity Company ("ENEE"), at which Castillo held a managerial position. Ex. 1 at 8-11; Ex. 2 at 15.  Notably—and partly due to Ms. Cáceres's efforts—Castillo has been indicted for fraud, forgery, abuse of authority, and other public official violations in connection with the deal between DESA and ENEE.  Ex. 1.

Almost from the outset, Ms. Cáceres and the Council of Popular and Indigenous Organizations of Honduras ("COPINH," an indigenous rights group she co-founded) mounted a vigorous grassroots campaign against the Agua Zarca Dam, which if built, would cut off the supply of water, food, and medicine to hundreds of members of the local Lenca community who also considered the Gualcarque River their spiritual home.  Ex. 3 at 24; Ex. 4 at 28. Moreover, the Agua Zarca Dam concession had been granted without free, prior, and informed consultation with the Lenca people in violation of international law.  Ex. 4 at 28; *see*

---

[1] Exhibit numbers refer to the exhibits attached to the Declaration of Ralitza S. Dineva in Support of *Ex Parte* Application of Laura Zúniga Cáceres, Bertha Zúniga Cáceres, and Salvador Zúniga Cáceres for Discovery for Use in a Foreign Tribunal Pursuant to 28 U.S.C. § 1782.

International Labour Organization, Indigenous and Tribal Peoples Convention, 1989 (No. 169), ratified by Honduras in 1995.

Ms. Cáceres led the fight against the construction of the Agua Zarca Dam. She filed legal complaints, organized community meetings and peaceful protests, and even brought the case before the Inter-American Commission on Human Rights. Ex. 5 at 32. In July 2011, COPINH and Honduran President Porfirio Lobo Sosa signed an agreement, in which the government agreed not to authorize construction of dams in Lenca territories without free, prior, and informed consultation with the affected communities. International Advisory Group of Experts (GAIPE), *Dam Violence: The Plan That Killed Berta Cáceres* at 14, https://gaipe.net/wp-content/uploads/2017/10/GAIPE-Report-English.pdf (hereafter "GAIPE Report"). Around the same time, DESA received a massive infusion of funds from the Atala Zablah family—one of the most powerful families in Honduras (Ex. 2 at 16; Ex. 6 at 36)—and in November 2011, Castillo formalized his position at DESA, which he had been running unofficially since its founding, and became president of the company. Ex. 1 at 8-9.

In 2013, despite the 2011 agreement between COPINH and the Honduran President, an expansion of the Agua Zarca Dam was authorized. GAIPE Report at 14. Once again, Ms. Cáceres and COPINH vehemently opposed this action as a violation of the rights of the Lenca people and worked tirelessly to halt construction of the dam. The opposition included maintaining an over-a-year-long coordinated blockade to prevent DESA's access to the project site, while withstanding violent attacks and eviction attempts by security contractors hired by DESA. Ex. 4 at 29.

Ms. Cáceres's persistence paid off in late 2013, when DESA's construction partner—Chinese state-owned Sinohydro and the world's largest dam builder—withdrew from the project, citing community resistance and outrage over the killing of a community leader during

a peaceful protest. *Id.* at 30.[2] Additionally, international financial institutions withdrew their support, further jeopardizing DESA's lucrative project and highlighting the effectiveness and threat posed by Ms. Cáceres's activism. Ex. 4 at 30.

**B.** **Ms. Cáceres was Murdered in Order to Silence Her Opposition to the Agua Zarca Dam**

Ms. Cáceres's success in organizing the opposition against the Agua Zarca Dam made her a target of violence and intimidation. She filed over thirty complaints related to threats she had received for her resistance to the project, leading the Inter-American Commission on Human Rights to order the Honduran government to provide protective measures for Ms. Cáceres. Ex. 2 at 16. However, this was not enough to save her life in "the deadliest country on the planet for environmental activists," where more than 120 such activists had been killed between 2010 and 2016, including Ms. Cáceres and two other COPINH members. Ex. 3 at 23; (citing Global Witness 2016 Annual Report at 20, https://www.globalwitness.org/documents/19085/Annual_report_2016_AW_lowres.pdf); Ex. 7 at 40.

On March 2, 2016, multiple armed men broke into Ms. Cáceres's home and murdered her in her bedroom. Ex. 8 at 50. The assassination was the culmination of a carefully planned operation months in the making. *Id.* Security contractors and hired mercenaries had been tracking the movements of Ms. Cáceres and members of her organization. *Id.* at 51; GAIPE Report at 17-18. They had been maintaining constant contact via WhatsApp messages, SMS messages, and phone calls. Ex. 8 at 51; GAIPE Report at 17-18. They had planned an earlier assassination attempt that was aborted at the last minute. Ex. 8 at 52. Less than a month later, the hit men completed their mission—they burst into Ms. Cáceres's home, fatally shot her, and wounded another man who happened to be in the house at the time. *Id.* at 50.

---

[2] For her work in opposing the Agua Zarca Dam, in 2015 Ms. Cáceres was awarded the prestigious Goldman Prize Award, referred to as the "green Nobel"[2] and awarded to individuals "for sustained and significant efforts to protect and enhance the natural environment, often at great personal risk." Ex. 4. By the time of her murder, Ms. Cáceres had become an internationally sought-after speaker and advocate for the rights of indigenous peoples. Ex. 3 at 22.

Castillo—a former military intelligence officer and president of DESA—was one of the masterminds behind the murder. He ordered the assassination and coordinated its execution with Douglas Bustillo, DESA's former security chief and a former Honduran army lieutenant, whom Castillo tasked with assembling a team of hitmen. *Id.* at 51-52. Castillo also provided resources and logistical support to the assassins, who were paid to carry out the murder. *Id.* As the criminal indictment filed by the Honduran Public Prosecutor makes clear, Castillo put this plan in motion because of the significant losses incurred by DESA as a result of Ms. Cáceres's activism. *Id.* at 50-51.

In May 2016, six men, including two DESA employees who had reported to Castillo, were arrested in connection with the murder of Berta Cáceres. GAIPE Report at 6. Castillo was not implicated in the murder at that time, and a few months later he purchased a 5,073 sq. ft. house valued at over $1.5 million in Houston, Texas. Ex. 9; Ex. 10. He financed part of the purchase through a mortgage held by Hancock Whitney Bank in the amount of $1,036,750 (Ex. 9 at 59, 73), thus paying ***hundreds of thousands of dollars*** as down payment. (This Application is for a subpoena to that bank for records related to that transaction.)

By February 2017, two other individuals were implicated in Ms. Cáceres's murder. GAIPE Report at 6. In 2018, all eight men were tried for her murder. Ex. 6 at 36. On November 29, 2018, the Honduran National Criminal Court convicted seven of those men. *Id.*

On March 1, 2018, Castillo was indicted as "the intellectual author" of Ms. Cáceres's killing. Ex. 8 at 49. He is currently on trial in Honduras, which has been suspended pending an appeal. Declaration of Victor Fernández in Support of *Ex Parte* Application of Laura Zúniga Cáceres, Bertha Zúniga Cáceres, and Salvador Zúniga Cáceres for Discovery for Use in a Foreign Tribunal Pursuant to 28 U.S.C. § 1782 ("Fernández Decl.") (Ex. 13) ¶ 9. Castillo's trial will resume once the appeal is resolved, which may happen at any time. *Id.*

### C. The Cáceres Children Seek Justice for their Mother's Murder

In Honduras, victims of crime have the right to intervene in criminal proceedings and establish a private prosecution against the accused. Article 16 of the Honduran Code of

Criminal Procedure explicitly allows a victim to "become a private plaintiff or complainant and to intervene as such" throughout the criminal process. Ex. 11 art. 16(a) (p. 143). A victim may be represented by an attorney who is referred to as a private prosecutor. Importantly, the private prosecutor may present evidence and arguments at pre-trial hearings and during trial, and may even cross-examine the defendant. *Id.* arts. 294, 301, 321, 323 (pp. 148-51). Additionally, a private prosecutor may, after providing notice, raise issues and proceedings separate and apart from those pursued by the Office of the Public Prosecutor. *Id.* art. 97 (p. 145).

Honduran law recognizes the Cáceres Children as victims of their mother's murder. *Id.* art. 17 (p. 147). They are determined to hold those responsible for Ms. Cáceres's death accountable and are unrelenting in their pursuit of justice. The Cáceres Children previously intervened in the 2018 trial of the eight men originally implicated in Ms. Cáceres's murder. Fernández Decl. ¶ 4. They have also retained attorneys to represent them as private prosecutors in Mr. Castillo's trial, who have already appeared in pre-trial proceedings on their behalf. *Id.* ¶¶ 3-5. The private prosecutors intend to present relevant evidence obtained as a result of this Application in the criminal proceedings in Honduras. *Id.* ¶ 8. They believe that records obtained from Hancock Whitney Bank related to the mortgage on the property will adduce evidence that Castillo received a large sum of money to orchestrate Ms. Cáceres's murder and that he had a strong financial motive to carry out the assassination. The private prosecutors further believe that this evidence may also help identify other, yet unknown, individuals who were involved in the killing. *Id.* ¶ 7.

## III.    LEGAL STANDARDS

Section 1782 authorizes a federal district court to order discovery of documents and testimony for use in a foreign proceeding from any person who resides or is found in the court's district:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . . The order may be made . . . upon the application of any interested person and may direct that the

testimony or statement be given, or the document or other thing be produced,
before a person appointed by the court.

28 U.S.C. § 1782(a). The statute seeks to "make discovery of evidence for use in foreign

litigation simple and fair," (*In re Edelman*, 295 F.3d 171, 173 (2d Cir. 2002)) and the court's

discretion should be exercised in furtherance the statute's "twin aims of 1) providing equitable

and efficient means to assist parties engaged in international litigation and, by so doing, 2)

inviting foreign countries to provide similar assistance to our courts." *Id.* at 181; *see also Tex.*

*Keystone, Inc. v. Prime Nat. Res., Inc.*, 694 F.3d 548, 549 (5th Cir. 2012).

Congress enacted Section 1782 to "facilitate the conduct of litigation in foreign

tribunals, improve international cooperation in litigation, and put the United States into the

leadership position among world nations in this respect." *In re Bayer AG*, 146 F.3d 188, 191-

92 (3d Cir. 1998). The statute's legislative history also "indicates that Congress intended

federal courts to provide *broad assistance* to foreign litigants who request permission to

conduct discovery in the United States." *In re Sarrio S.A.*, 173 F.R.D. 190, 193 (S.D. Tex.

1995) (emphasis added). This "promote[s] international dispute resolution and

comity." *Republic of Ecuador v. Connor*, 708 F.3d 651, 654 (5th Cir. 2013).

Section 1782 does not create a new discovery standard; it merely provides for a

"threshold determination" regarding whether to allow foreign litigants to access discovery in

federal courts that is consistent with federal rules. *Tex. Keystone*, 694 F.3d at 554. The statute

sets forth three requirements: (1) the person or entity from whom the discovery is sought must

be a resident of or be found in the district where the application is filed, (2) the discovery

sought must be "for use in a proceeding in a foreign or international tribunal," and (3) the

application must be made "by a foreign or international tribunal" or "any interested

person." 28 U.S.C. § 1782(a); *Bravo Express Corp. v. Total Petrochemicals & Ref. USA, Inc.*,

613 F. App'x 319, 322 (5th Cir. 2015) (citing *Tex. Keystone*, 694 F.3d at 553).

Once Section 1782's statutory requirements are met, whether to grant the application is

within the district court's discretion. *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S.

241, 264 (2004). The Supreme Court has identified four discretionary factors to aid courts in determining whether to exercise their discretion in granting Section 1782 Applications: (1) whether the documents or testimony sought are within the foreign tribunal's jurisdictional reach and thus accessible absent Section 1782 aid; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (3) whether the Section 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (4) whether the subpoena contains unduly intrusive or burdensome requests. *Id.* at 264-65.

IV.     **ARGUMENT**

The Court should grant this Application because it satisfies all of Section 1782's statutory requirements. *First*, the Application is filed in "the district in which a person resides," 28 U.S.C. § 1782(a), because Hancock Whitney Bank is headquartered in Gulfport, Mississippi. *Second*, the discovery is sought "for use in a proceeding in a foreign . . . tribunal," (*id.*), namely the murder trial against Castillo in the Honduran court. *Third*, Applicants, as victims of Castillo's crime and legally recognized as parties in the criminal prosecution under Honduran law, are "interested person[s]" in the foreign proceeding. *Id.* Moreover, all four of the discretionary *Intel* factors favor granting the application.

A.     **Hancock Whitney Bank Resides in This District**

Hancock Whitney Bank "resides" and is "found" in the Southern District of Mississippi under 28 U.S.C. § 1782 because its headquarters is located in Gulfport, Mississippi, which is within this District. Dineva Decl. ¶ 16; *see Bravo Express*, 613 F. App'x at 322. Therefore, Hancock Whitney Bank is subject to this Court's authority under Section 1782.

B.     **The Discovery is Sought for Use in a Criminal Trial in Honduras**

The requested discovery is sought for use in a pending foreign judicial proceeding, i.e., Castillo's murder trial in Honduras. Fernández Decl. ¶¶ 7-8. Under Section 1782, "a district court has broad discretion to grant a foreign litigant's request to conduct discovery in the

United States for use in foreign proceedings." *Sarrio*, 173 F.R.D. at 193. To establish that the evidence sought is "for use" in a criminal proceeding, the applicant need only demonstrate "that he or she has the practical ability to inject the requested information into a foreign proceeding." *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 132 (2d Cir. 2017) (stating the under Section 1782, "for use" means "that the requested discovery is 'something that will be employed with some advantage or serve some use in the proceeding'" (citation omitted)). Courts have held that merely having the ability to present evidence to an official or magistrate overseeing an investigation satisfies this factor. *See In re Inversiones y Gasolinera Petroleos Valenzuela, S. de R.L.*, No. 08-20378-MC, 2011 WL 181311, at *9-10 (S.D. Fla. Jan. 19, 2011) (finding the "for use" requirement was met where petitioners sought to use evidence in criminal investigation in Honduras); *In re Furstenberg Fin. SAS*, No. 18-mc-44 (JGK), 2018 U.S. Dist. LEXIS 116391, at *11-12 (S.D.N.Y. July 12, 2018) (citing *Accent Delight*, 869 F.3d at 132 (finding that "for use" requirement was met where the "[p]etitioners are parties to that proceeding who, while they have abandoned any claim there for monetary relief, retain the procedural right to submit the requested documents to the magistrate overseeing the investigation")), *appeal docketed*, No. 18-3158 (2d Cir. Oct. 22, 2018); *In re Berlamont*, No. 14-mc-00190 (JSR), 2014 U.S. Dist. LEXIS 111594, at *3 (S.D.N.Y. Aug. 4, 2014) ("A complaining witness's presentation of evidence to an investigating magistrate satisfies the 'for use' prong of § 1782."), *aff'd sub nom. In re Application for an Order Pursuant to 28 U.S.C. 1782 to Conduct Discovery for Use in Foreign Proceedings*, 773 F.3d 456 (2d Cir. 2014).

There is no requirement that the discovery be necessary to prevail in the underlying foreign proceeding. *Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015). Section 1782 likewise does not require that the evidence sought be admissible. *See In re HydroDive Nig., Ltd.*, No. 13-MC-0477, 2013 U.S. Dist. LEXIS 200238, at *7-8 (S.D. Tex. May 29, 2013) (citing *In re Veiga*, 746 F. Supp. 2d 8, 18-19 (D.D.C. 2010)). The district court "should generally refrain from addressing admissibility" because the foreign tribunal is responsible for determining how evidence is used within that tribunal. *Id.* "Relevancy in this context is 'broadly construed and

encompasses any material that bears on, or that reasonably leads to other matters that could bear on, any issue that is or may be in the case.'" *Id.* (quoting *Veiga*, 746 F. Supp. 2d at 19).

Here, the discovery is sought for the specific purpose of presenting evidence in Castillo's murder trial in Honduras. Applicants, who are legally recognized parties in the trial, have robust participatory and procedural rights, including the right to present evidence through their private prosecutors. Ex. 11 arts. 16 (a), 294, 301, 321, 323 (pp. 143, 145, 148-51). The information sought is relevant because it bears on the financial motivations and means behind Castillo's involvement in Ms. Cáceres's murder. Fernández Decl. ¶ 7. Therefore, the Cáceres Children are able to demonstrate that the documents they seek are "for use" in a foreign proceeding.

## C. The Cáceres Children are "Interested Persons" in the Honduran Proceedings

The Cáceres's Children are "interested persons" under Section 1782 because they are legally recognized parties in Castillo's murder trial and have significant participation rights in the Honduran proceedings. The Supreme Court has stated that "[n]o doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782." *Intel*, 542 U.S. at 256. However, the term "any interested person" in the statute is broad and includes "any other person whether he be designated by foreign law or international convention or merely possess a reasonable interest in obtaining the [judicial] assistance." *Id.* at 257. The *Intel* court held that a private party that filed a complaint before a foreign commission and which had the right to submit evidence for the foreign commission's consideration and the ability to proceed to a court if the commission discontinued the investigation or dismissed the complaint had a "significant role" in the proceedings, and "therefore qualifie[d] as an 'interested person'" under Section 1782. *Id.* at 256-57; *see also Furstenberg*, 2018 U.S. Dist. LEXIS 116391, at *17 (finding that applicants who filed a Section 1782 application with an intent to file a criminal complaint that will trigger legal proceedings and an independent criminal investigation were interested persons).

Here, under Honduran law, the Cáceres Children are victims who have the right to intervene in the criminal process against Castillo as private complainants via their private prosecutors. Ex. 11 arts. 16, 17 (pp. 143-44). As such, they are litigants in the foreign proceedings and plainly qualify as "interested persons" under Section 1782.

Moreover, as the private party in *Intel*, Applicants have expansive participation rights, including the right to present arguments, submit evidence, and even cross-examine the accused via a private prosecutor. *Id.* arts. 294, 301, 321, 323 (pp. 148-51); *see Intel*, 542 U.S. at 256-57. The private prosecutor may even initiate proceedings and raise issues that the Office of the Public Prosecutor fails or declines to pursue. Ex. 11 art. 97 (p. 145). Thus, just as the private party in *Intel*, the Cáceres Children have a strong and legally cognizable interest in obtaining judicial assistance. Additionally, Applicants' interest in the Honduran proceedings is neither abstract nor hypothetical. The Cáceres Children have already taken advantage of their right to engage a private prosecutor and intervene in Castillo's murder trial. Fernández Decl. ¶¶ 3-5. They also previously exercised their right to participate in the trial of the eight men originally implicated in Ms. Cáceres's murder. Fernández Decl. ¶ 4.

**D.    The Court Should Exercise Its Discretion and Grant This Application**

The factors identified by the Supreme Court to guide the Court's discretion in analyzing requests under Section 1782 favor granting this application.

**1.    The discovery sought is outside of the jurisdictional reach of Honduran courts, and thus inaccessible absent assistance under Section 1782**

The first *Intel* factor—whether the documents or testimony sought are within the foreign tribunal's jurisdictional reach and thus accessible absent Section 1782 aid—weighs in favor of granting discovery in this case. 542 U.S. at 264. As the Court explained in *Intel*, non-participants in the foreign proceeding are not subject to the foreign tribunal's reach:

> [W]hen the person from whom discovery is sought is a participant in the foreign proceeding . . . , the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad. A foreign tribunal has jurisdiction over those appearing before it, and can itself order them to produce evidence. . . . In contrast, nonparticipants in the foreign proceeding may be outside the foreign tribunal's jurisdictional reach;

hence, their evidence, available in the United States, may be unobtainable absent § 1782(a) aid.

*Id.*

The situation here is analogous to the one in *Intel*: Hancock Whitney Bank is not a participant in the underlying Honduran murder trial and is not expected to be a participant in those proceedings. Further, as a corporation incorporated and located in the United States, Hancock Whitney Bank is outside of the Honduran court's jurisdictional reach. Thus, the evidence in Hancock Whitney Bank's possession would likely be unobtainable by Applicants absent Section 1782 aid.

### 2. The Honduran Government is Receptive to U.S. Judicial Assistance in this Criminal Proceeding

The second *Intel* fact—the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance—also weighs in favor of granting the Application. *Id.* at 265. The Honduran government has demonstrated that it is receptive to receiving foreign discovery aid in connection with the criminal investigation and prosecution of Castillo. Specifically, on December 2, 2018, the Public Ministry of Honduras issued a request to United States authorities pursuant to the Inter-American Convention on Mutual Assistance in Criminal Matters to obtain SIM card information related to Castillo. Ex. 12 at 165-70. Moreover, Honduran courts and authorities are generally amenable to U.S. federal court assistance. Honduras has ratified the Inter-American Convention on Letters Rogatory, which sets out procedures for "[t]he taking of evidence and the obtaining of information abroad." *See* Inter-American Convention on Letters Rogatory, art. 2(b) Jan. 30, 1975, 1438 U.N.T.S. 283. In addition to Honduras's general receptivity, one of the private prosecutors in this matter has submitted a declaration stating his intent to present relevant evidence obtained as a result of this Application in the criminal proceedings against Castillo in Honduras. Fernández Decl. ¶ 8.

Furthermore, in the absence of authoritative proof or "clear directive" that a foreign tribunal would reject evidence obtained under Section 1782, this factor weighs in favor of

exercising discretion to grant a Section 1782 application. *Ecuadorian Plaintiffs v. Chevron Corp.*, 619 F.3d 373, 377 (5th Cir. 2010) (citation omitted).[3] The Fifth Circuit has determined that such proof would only be authoritative if it is "embodied in a forum country's judicial, executive or legislative declarations that specifically address the use of evidence gathered under foreign procedures," and absent such evidence, "a district court's ruling should be informed by Section 1782's overarching interest in 'providing equitable and efficacious procedures for the benefit of tribunals and litigants involved in litigation with international aspects.'" *Sarrio*, 173 F.R.D. at 196 (citation omitted); *see also Inversiones y Gasolinera Petroleos Valenzuela*, 2011 WL 181311, at *13 (absence of evidence that Honduran prosecutor would be either receptive or hostile to evidence favored granting Section 1782 application).

### 3. The Application Does Not Attempt to Circumvent Honduran Evidentiary Procedures

Similarly, the third *Intel* factor— whether the Section 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States—weighs in favor of granting the application. 542 U.S. at 266. There is no requirement that evidence sought be discoverable in the foreign tribunal or that an applicant seek discovery in the foreign jurisdiction before requesting the assistance of a federal court. *See id.* at 259-66; *HydroDive*, 2013 U.S. Dist. LEXIS 200238, at *9-10 (citing *In re Metallgesellschaft AG*, 121 F.3d 77, 79 (2d Cir. 1997)). However, the court may consider whether the Section 1782 request is an attempt to circumvent foreign restrictions or policies. *See Intel*, 542 U.S. at 259-66. In conducting this analysis, courts probe whether the applicants are seeking discovery in bad faith. *In re Chevron Corp.*, No. 4:10-mc-134, 2010 U.S. Dist. LEXIS 120479, at *3 (S.D. Tex. Apr. 5, 2010) (citing *Minatec Fin. S.a.r.L. v. SI Grp. Inc.*, No.

---

[3] *See also In re Eurasian Bank Joint Stock Co.*, No. 3:15-mc-106-L-BN, 2015 U.S. Dist. LEXIS 142866, at *7 (N.D. Tex. Oct. 21, 2015); *In re Gorsoan, Ltd.*, No. 13 MISC 397 (PGG), 2014 U.S. Dist. LEXIS 175613, at *19-23 (S.D.N.Y. Dec. 10, 2014); *In re Republic of Ecuador*, No. C-10-80255 MISC CRB (EMC), 2010 U.S. Dist. LEXIS 102158, at *14-16 (N.D. Cal. Sept. 15, 2010); *In re iManagement Servs. Ltd.*, No. MISC 05-89 (FB), 2005 U.S. Dist. LEXIS 17025, at *15-19 (E.D.N.Y. Aug. 16, 2005).

1:08-CV-269 (LEK/RFT), 2008 U.S. Dist. LEXIS 63802, at *25-26 (N.D.N.Y. Aug. 18, 2008) ("The primary issue for us [under the third *Intel* factor] is whether [applicant] is pursuing this discovery in bad faith.")).

Applicants are not aware of any restriction on obtaining the discovery requested in this Application. They merely seek to obtain additional probative information that could provide evidence of motive and support a murder conviction. This goal is in line with the statute's purpose of "provid[ing] efficient means of assistance to participants in international litigation in our federal courts." *Tex. Keystone*, 694 F.3d at 553-54 (citation omitted). Indeed, where the evidence sought cannot be obtained via discovery in the foreign tribunal—as is the case here where Hancock Whitney Bank is outside of the Honduran court's jurisdictional reach—it is clear that such an application is not an attempt to avoid a foreign rule or order. *See Republic of Ecuador*, 2010 U.S. Dist. LEXIS 102158, at *11-12.

### 4. The Discovery Sought is Not Unduly Burdensome

Finally, the fourth *Intel* factor—whether the subpoena contains unduly intrusive or burdensome discovery requests—also favors granting this application. 542 U.S. at 266. The Cáceres Children seeks only those records held by Hancock Whitney Bank that relate to the financing secured to purchase Castillo's Houston property. *See* Exhibit B, attached hereto. Such narrow and specific requests are not unduly burdensome. *See In re Solines*, No. 18-3680, 2018 U.S. Dist. LEXIS 82501, at *6 (E.D. La. Apr. 30, 2018) (finding a request for production of documents not unduly burdensome where the request listed only six specific and narrow requests). Even if the Court determines that the discovery sought in this case is excessive, it may limit its scope rather than preclude it entirely in situations where the other factors weigh in favor of granting the application, as is the case here. *See In re RSM Prod. Corp.*, 195 F. Supp. 3d 899 (S.D. Tex. 2016); *see also Intel*, 542 U.S. at 265 (requests in a § 1782 application "may be . . . trimmed" where they are overly broad).

## E. The Court Should Grant the Requested Discovery on an *Ex Parte* Basis

Finally, it is proper for the Court to consider this Application *ex parte*. *Gushlak v. Gushlak*, 486 F. App'x 215, 217 (2d Cir. 2012) (stating that it is "neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*"). Courts in this Circuit routinely grant *ex parte* applications for discovery under Section 1782. *See, e.g.*, *Eurasian Bank*, 2015 U.S. Dist. LEXIS 142866 (granting *ex parte* Section 1782 application); *In re Godfrey*, No. 3:08-MC-0107-K, 2009 U.S. Dist. LEXIS 127279 (N.D. Tex. Mar. 24, 2009) (same); *RSM*, 195 F. Supp. 3d 899 (same); *In re Grupo Mex. Sab De CV*, No. 3:14-MC-0073-G, 2015 U.S. Dist. LEXIS 177694 (N.D. Tex. Mar. 10, 2015) (same), *aff'd sub nom. Grupo Mex. Sab De DV v. SAS Asset Recovery, Ltd.*, 821 F.3d 573 (5th Cir. 2016). Indeed, courts have recognized that in the context of applications under Section 1782, "it is common for the process of presenting the request to a court and to obtain the order authorizing discovery to be conducted *ex parte*." *Republic of Ecuador*, 2010 U.S. Dist. LEXIS 102158, at \*4-8. Proceeding *ex parte* on a Section 1782 applications is "typically justified by the fact that the parties will be given adequate notice of any discovery taken pursuant to the request and will then have the opportunity to move to quash the discovery or to participate in it." *Id.* at \*7 (citation omitted).

## V.    CONCLUSION

The Cáceres Children are seeking narrowly-tailored discovery for use in the trial against Castillo for the murder of their mother.  This Application satisfies the statutory requirements of Section 1782, and the *Intel* factors weigh in favor of its granting.  As such, Applicants respectfully request leave to serve on Hancock Whitney Bank the subpoena attached as Exhibit B to this application.

Dated:  July 17, 2019

Respectfully submitted,

By: _____
Amelia S. McGowan

MISSISSIPPI CENTER FOR JUSTICE
5 Old River Place, Suite 203 (39202)
P. O. Box 1023
Jackson, Mississippi 39215

OF COUNSEL:

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
Leo P. Cunningham
Ralitza S. Dineva
Sean Killeen
650 Page Mill Road
Palo Alto, California 94304-1050

INTERNATIONAL HUMAN RIGHTS LAW
CLINIC, UNIVERSITY OF CALIFORNIA
BERKELEY
Roxanna Altholz
489 Simon Hall,
Berkeley, California 94720

*Attorneys for Applicants*
*Laura Zúniga Cáceres, Bertha Zúniga*
*Cáceres, and Salvador Zúniga Cáceres*

# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
~~GULFPORT~~ DIVISION
Southern

IN RE: *EX PARTE* APPLICATION OF )   CASE NO.:
LAURA ZÚNIGA CÁCERES, BERTHA )
ZÚNIGA CÁCERES, AND SALVADOR )
ZÚNIGA CÁCERES FOR ASSISTANCE )
BEFORE A FOREIGN TRIBUNAL )
_____)

---

## [PROPOSED] ORDER GRANTING *EX PARTE* APPLICATION OF LAURA ZÚNIGA CÁCERES, BERTHA ZÚNIGA CÁCERES, AND SALVADOR ZÚNIGA CÁCERES FOR DISCOVERY FOR USE IN A FOREIGN TRIBUNAL PURSUANT TO 28 U.S.C. § 1782

---

Pending before the Court is the *Ex Parte* Application of Laura Zúniga Cáceres, Bertha Zúniga Cáceres, and Salvador Zúniga Cáceres (together, "Applicants") for Discovery for Use in a Foreign Tribunal Pursuant to 28 U.S.C. § 1782 (the "Application").

The Court finds that the statutory requirements of 28 U.S.C. § 1782 are met and that the discretionary factors set forth in *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-66 (2004) favor granting the Application. Therefore, the Application is hereby GRANTED.

1. Applicants are hereby authorized to immediately issue to the Custodian of Records at Hancock Whitney Bank, a subpoena directing Hancock Whitney Bank to produce documents as identified in Schedule A hereto within fourteen (14) calendar days following service of the subpoena.

IT IS SO ORDERED.

Dated: _____     _____

                                 UNITED STATES DISTRICT JUDGE

## Schedule A

## <u>DEFINITIONS</u>

1.     The term "Document" is used in its customary and broadest sense, and is synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term.

2.     The term "Financing Documents" means all Documents related to the mortgage or any other financing agreement entered into between You and Roberto D. Castillo and/or Tanya J. Romero Baca for the Property. This includes, but is not limited to, the mortgage or financing application, all information submitted in support of the mortgage or financing application, all Documents assessing the mortgage or financing application, all correspondence between You and Roberto D. Castillo and/or Tanya J. Romero Baca or their representatives related to the financing or mortgage and/or related to the Property, all information about the source of funds used for the down payment on the Property, and the Escrow file related to the Property.

3.     The term "Property" means the property located at 3735 Jardin St., Houston, Texas 77055.

4.     The terms "related to" or "relate to" mean relating to, concerning, referring to, evidencing, memorializing, constituting requests for Documents "related to" any subject matter listed in the request below, including Documents related to communications regarding that subject matter.

5.     The term "Relevant Time Period" means January 1, 2016 to the present.

6.     The terms "You" and "Your" mean Hancock Whitney Bank and its predecessors, successors, parents, subsidiaries, departments, divisions, joint ventures, affiliates, officers,

directors, agents, employees, attorneys, consultants and any other person or entity acting on its behalf.

      7.    The terms "all," "any," and "each" shall each be construed as encompassing any and all.

      8.    The connectives "and" and "or" shall be construed conjunctively or disjunctively as necessary to bring within the Request all information which might otherwise be construed as outside its scope.

      9.    All references to the singular include the plural; and, all references to the plural include the singular.

### INSTRUCTIONS

      A.    All responsive non-privileged Documents in Your possession, custody, or control are to be produced. If, after exercising due diligence to secure the Documents requested, You cannot produce all responsive Documents, so state, produce to the extent possible, specify the reasons why You were unable to provide a full and complete response, and state what information and knowledge you do have concerning the unproduced portion.

      B.    If You decline to produce any Document or part thereof based on a claim of privilege or any other claim, please provide a privilege log that, for each such Document, states: (a) the subject matter of the withheld Document; (b) the nature of the Document (letter, memorandum, notes, etc.); (c) the Bates number of the withheld Document; (d) its date; (e) its author(s); (f) its recipient(s), if any (To / CC / BCC fields); (g) the privilege(s) claimed; (h) a description of the privilege(s) so as to explain the basis asserted for withholding the Document in sufficient detail so as to enable the claim of privilege to be adjudicated, if necessary; and (i) whether the Document has been redacted.

## **REQUESTS**

1.      All Documents from the Relevant Time Period related to the Property, including all Financing Documents.

# EXHIBIT B

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Southern District of Mississippi

| | | |
|---|---|---|
| Laura, Bertha, and Salvador Zúniga Cáceres | ) | |
| *Plaintiff* | ) | |
| v. | ) | Civil Action No. |
| | ) | |
| | ) | |
| *Defendant* | ) | |

## SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS
## OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION

To:     Hancock Whitney Bank, Hancock Whitney Plaza, 2510 14th Street, Gulfport, Mississippi
Attn: Custodian of Records

---

*(Name of person to whom this subpoena is directed)*

☑ *Production:* **YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following documents, electronically stored information, or objects, and to permit inspection, copying, testing, or sampling of the material: See Attachment

| Place: lcunningham@wsgr.com rdineva@wsgr.com skilleen@wsgr.com | Date and Time: 07/31/2019 11:09 pm |
|---|---|

☐ *Inspection of Premises:* **YOU ARE COMMANDED** to permit entry onto the designated premises, land, or other property possessed or controlled by you at the time, date, and location set forth below, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it.

| Place: | Date and Time: |
|---|---|

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date: _____

           *CLERK OF COURT*

                                   OR

      _____       _____
        *Signature of Clerk or Deputy Clerk*                 *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Laura , Bertha, and Salvador Zúniga Cáceres _____ , who issues or requests this subpoena, are:
Leo Cunningham, Wilson Sonsini Goodrich & Rosati, 650 Page Mill Rd, Palo Alto, CA 94304, 650-493-9300
lcunningham@wsgr.com

## Notice to the person who issues or requests this subpoena

If this subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 88B (Rev. 02/14) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action(Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1) *For a Trial, Hearing, or Deposition.*** A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2) *For Other Discovery.*** A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1) *Avoiding Undue Burden or Expense; Sanctions.*** A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2) *Command to Produce Materials or Permit Inspection.***
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3) *Quashing or Modifying a Subpoena.***
  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:
    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or

    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1) *Producing Documents or Electronically Stored Information.*** These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2) *Claiming Privilege or Protection.***
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

## Attachment 1

## DEFINITIONS

1. The term "Document" is used in its customary and broadest sense, and is synonymous in meaning and equal in scope to the usage of the term "documents or electronically stored information" in Fed. R. Civ. P. 34(a)(1)(A). A draft or non-identical copy is a separate document within the meaning of this term.

2. The term "Financing Documents" means all Documents related to the mortgage or any other financing agreement entered into between You and Roberto D. Castillo and/or Tanya J. Romero Baca for the Property. This includes, but is not limited to, the mortgage or financing application, all information submitted in support of the mortgage or financing application, all documents assessing the mortgage or financing application, all correspondence between You and Roberto D. Castillo and/or Tanya J. Romero Baca or their representatives related to the financing or mortgage and/or related to the Property, all information about the source of funds used for the down payment on the Property, and the Escrow file related to the Property.

3. The term "Property" means the property located at 3735 Jardin St., Houston, Texas 77055.

4. The terms "related to" or "relate to" mean relating to, concerning, referring to, evidencing, memorializing, constituting requests for documents "related to" any subject matter listed in the request below, including documents related to communications regarding that subject matter.

5. The term "Relevant Time Period" means January 1, 2016 to the present.

6. The terms "You" and "Your" mean Hancock Whitney Bank and its predecessors, successors, parents, subsidiaries, departments, divisions, joint ventures, affiliates, officers, directors, agents, employees, attorneys, consultants and any other person or entity acting on its behalf.

7. The terms "all," "any," and "each" shall each be construed as encompassing any

and all.

8.     The connectives "and" and "or" shall be construed conjunctively or disjunctively as necessary to bring within the Request all information which might otherwise be construed as outside its scope.

9.     All references to the singular include the plural; and, all references to the plural include the singular.

## INSTRUCTIONS

A.     All responsive nonprivileged documents in Your possession, custody, or control are to be produced.  If, after exercising due diligence to secure the documents requested, You cannot produce all responsive documents, so state, produce to the extent possible, specify the reasons why You were unable to provide a full and complete response, and state what information and knowledge you do have concerning the unproduced portion.

B.     If You decline to produce any document or part thereof based on a claim of privilege or any other claim, please provide a privilege log that, for each such document, states: (a) the subject matter of the withheld document; (b) the nature of the document (letter, memorandum, notes, etc.); (c) the Bates number of the withheld document; (d) its date; (e) its author(s); (f) its recipient(s), if any (To / CC / BCC fields); (g) the privilege(s) claimed; (h) a description of the privilege(s) so as to explain the basis asserted for withholding the document in sufficient detail so as to enable the claim of privilege to be adjudicated, if necessary; and (i) whether the document has been redacted.

## REQUESTS

1.     All Documents from the Relevant Time Period related to the Property, including all Financing Documents.

# IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
### SOUTHERN DIVISION

| | |
|---|---|
| IN RE: *EX PARTE* APPLICATION OF LAURA ZÚNIGA CÁCERES, BERTHA ZÚNIGA CÁCERES, AND SALVADOR ZÚNIGA CÁCERES FOR ASSISTANCE BEFORE A FOREIGN TRIBUNAL | )  CASE NO.: 1:19-mc-00405-KS-RHW<br>)<br>)<br>)<br>)<br>)<br>) |

## NOTICE OF SERVICE OF SUBPOENA

PLEACE TAKE NOTICE that copies of (1) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action to Hancock Whitney Bank, cover letter, and attachments thereto (including the Court's Memorandum Opinion and Order dated May 18, 2020) and (2) *Ex Parte* Application of Laura Zúniga Cáceres, Bertha Zúniga Cáceres, and Salvador Zúniga Cáceres for Assistance Before a Foreign Tribunal Pursuant to 28 U.S.C. § 1782 will be served on May 21, 2020 upon the following in the manner indicated:

Hancock Whitney Bank Custodian of Records
Hancock Whitney Plaza, 2510 14th Street
Gulfport, Mississippi

*VIA PERSONAL SERVICE*
C. T. Corporation System
645 Lakeland Drive East Dr., Ste 101
Flowood,  MS 39232

Dated:  May 21, 2020

By: _____/s/ Amelia S. McGowan_____
     Amelia S. McGowan

MISSISSIPPI CENTER FOR JUSTICE
5 Old River Place, Suite 203 (39202)
P. O. Box 1023
Jackson, Mississippi 39215

OF COUNSEL:

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
Leo P. Cunningham
Ralitza S. Dineva
Sean Killeen
650 Page Mill Road
Palo Alto, California 94304-1050

INTERNATIONAL HUMAN RIGHTS LAW
CLINIC, UNIVERSITY OF CALIFORNIA
BERKELEY
Roxanna Altholz
489 Simon Hall,
Berkeley, California 94720

*Attorneys for Applicants*
*Laura Zúniga Cáceres, Bertha Zúniga*
*Cáceres, and Salvador Zúniga Cáceres*

---

**CERTIFICATE OF SERVICE**

---

I, Ralitza Dineva, declare:

I am employed in Santa Clara County, State of California.  I am over the age of 18 years and not a party to this action.  My business address is Wilson Sonsini Goodrich & Rosati, 650 Page Mill Road, Palo Alto, California 94304-1050.

On this date, I served:

1.      **NOTICE OF SERVICE OF SUBPOENA;**

2.      **SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS OR TO PERMIT INSPECTION OF PREMISES IN A CIVIL ACTION TO HANCOCK WHITNEY BANK, COVER LETTER, AND ATTACHMENTS THERETO; AND**

3.      ***EX PARTE* APPLICATION OF LAURA ZÚNIGA CÁCERES, BERTHA ZÚNIGA CÁCERES, AND SALVADOR ZÚNIGA CÁCERES FOR ASSISTANCE BEFORE A FOREIGN TRIBUNAL PURSUANT TO 28 U.S.C. § 1782**

☒      By coordinating the printing and consigning of the document(s) to an express mail service for guaranteed next day delivery to the following person(s):

> B. Wayne Williams
> Norma Carr Ruff
> WEBB SANDERS & WILLIAMS, P.L.L.C.
> 363 North Broadway
> Post Office Box 496
> Tupelo, Mississippi 38802
>
> Randy Papetti
> Jared Sutton
> Jennifer Lee-Cota
> LEWIS ROCA ROTHGERBER CHRISTIE LLP
> 201 East Washington Street, Suite 1200
> Phoenix, AZ 85004-2595

☒      By forwarding the document(s) by electronic transmission on this date to the Internet email address listed below:

B. Wayne Williams, MSB #9769
wwilliams@webbsanders.com

Norma Carr Ruff
nruff@webbsanders.com

Randy Papetti
rpapetti@lrrc.com

Jared Sutton
jsutton@lrrc.com

Jennifer Lee-Cota
jlee-cota@lrrc.com

I am readily familiar with Wilson Sonsini Goodrich & Rosati's practice for collection and processing of documents for delivery according to instructions indicated above.  In the ordinary course of business, documents would be handled accordingly.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed at San Jose, California on May 21, 2020.

Ralitza Dineva