**IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

| | |
|---|---|
| IN RE: *EX PARTE* APPLICATION OF LAURA ZÚNIGA CÁCERES, BERTHA ZÚNIGA CÁCERES, AND SALVADOR ZÚNIGA CÁCERES FOR ASSISTANCE BEFORE A FOREIGN TRIBUNAL | CASE NO.: 1:19-mc-00405-KS-RHW |

)
)
)
)
)
)
)

---

**APPLICANTS' RESPONSE IN OPPOSITION TO MOTION FOR STAY PENDING APPEAL**

---

Laura Yolanda Zúniga Cáceres, Bertha Isabel Zúniga Cáceres, and Salvador Edgardo Zúniga Cáceres (together, "Applicants") submit this response in opposition to Respondent Romero-Baca's Motion for Stay Pending Appeal (the "Motion" or "Mot."; Dkt. No. 43), which seeks to stay this Court's May 18, 2020 Order granting Applicants' Application for Discovery for Use in a Foreign Tribunal Pursuant to 28 U.S.C. § 1782 (the "Application" or "App."; Dkt. Nos. 1-2) and ordering the delivery of subpoenaed documents to this Court's chambers for *in camera* review by the Court to determine whether such documents warrant production (the "Order"; Dkt. No. 39).

## I.   INTRODUCTION

The clock is ticking in Honduras.  Honduran law requires that the accused mastermind of Berta Cáceres's murder be released from custody thirty months after his March 2018 arrest unless his conviction intercedes.  The Honduran prosecution, stalled by the accused's interlocutory appeal and COVID-19, is about to resume.  Here, the accused's wife has put up a lengthy and costly fight to delay production of routine discovery—a single mortgage file—which the victim's family has sought for use in obtaining the conviction.  Eleven months into that fight,

the wife has asserted a meritless appeal as a pretext for further delay generated by a stay pending appeal. Meanwhile, the clock continues to tick in Honduras, and the likelihood this proceeding can adduce the expected evidence in time for use in Honduras dwindles.

The stay, aimed to prevent *in camera* review of the subpoenaed file by this Court, should be denied. The appeal will fail; *in camera* review is no threat to anyone; and further delay runs the real risk of rendering these proceedings a nullity by vindicating the victims' right to the sought-after evidence too late for its use in the prosecution that is about to resume in Honduras.

## II.    BACKGROUND

Berta Cáceres was murdered over four years ago, on March 2, 2016. App. at 4. It took two years for David Castillo—the accused "intellectual author" of the murder—to be arrested. Dkt. No. 4-7. He was detained on March 2, 2018 at an airport in Honduras as he was attempting to leave the country. *Id.* Since his arrest, Castillo has filed motions and appeals that have repeatedly delayed his pretrial hearing. Declaration of Victor Fernández Guzmán in Support of Applicants' Response in Opposition to Motion for Stay Pending Appeal ("Fernández Decl.") ¶¶ 4-5. Castillo's most recent appeal has been fully briefed and argued, and on April 13, 2020, the clerk for the court where the appeal is pending confirmed in writing that all that is left to do is for the court to sign its decision. *Id.* ¶ 7. Applicants' private prosecutor made a request for prompt resolution of Castillo's appeal. *Id.*

Applicants' Honduran private prosecutor, Victor Fernández who has over twenty years of criminal and civil litigation experience and has been a public prosecutor for ten of those twenty years, believes that once Honduran courts reopen, the resolution of Castillo's appeal is imminent. *Id.* ¶¶ 3, 11, 13. Because the decision on Castillo's appeal is the last roadblock to resumption of a repeatedly delayed pretrial hearing, Mr. Fernández believes that Castillo's trial will begin shortly. *Id.* ¶ 13. Indeed, Mr. Fernández's highest priority is to ensure that it does and that

Castillo is finally brought to justice for Ms. Cáceres's murder before authorities are forced to release him from pretrial detention.  *Id*. ¶ 12.  In pursuit of this goal, Mr. Fernández intends to present relevant that he is able to obtain as result of the instant Application at Castillo's pretrial hearing.  *Id.* ¶ 14.

Applicants filed this Application almost a year ago, on July 17, 2019 in order to obtain evidence that can be used to secure Castillo's murder conviction.   Applicants sought the mortgage file for Castillo's $1.5 million luxury home in Houston, based on extensive evidence uncovered in the Honduran criminal proceedings that the Ms. Cáceres's murder was well-financed and financially motivated and on the suspicious timing of the property's purchase.  Dkt. Nos. 1-2.

While Section 1782 applications are routinely granted *ex parte*, the Respondent here has opposed and been heard on the Application every step of the way.  *See* Dkt. Nos. 11, 16, 17, 24, 28, 33, 35, 38, 44.  Respondent's most recent round of motion practice seeks a stay so she can appeal this Court's Order authorizing a subpoena directing Hancock Whitney Bank to deliver the subpoenaed mortgage file to this Court's chambers for review, after which the Court can determine whether production of the documents is warranted.  Order at 15-16.

The Order reviewed the Magistrate Judge's Proposed Findings of Fact and Recommendation ("Recommendation" or "R&R"; Dkt. No. 28) denying the Application.  This Court concluded that none of the four *Intel* discretionary factors weighed against granting the Application under a *de novo* review.  Order at 15.  The Court noted the Magistrate Judge's imposition of a non-existent requirement was erroneous even under the higher "clearly erroneous or contrary to law" standard.  *Id.* at 12 n.10.  The Court granted the discovery sought by the

Application subject to a number of conditions designed to safeguard Respondent's privacy interests.

Subsequently, Respondent filed a Notice of Appeal and the instant Motion for Stay Pending Appeal, and the Court ordered expedited briefing on Respondent Motion.  Dkt. No. 42-44.

## III.  THIS COURT SHOULD DENY RESPONDENT'S MOTION BECAUSE IT DOES NOT MEET THE REQUIREMENTS FOR OBTAINING A STAY

### A.  Respondent Bears a Heavy Burden in Demonstrating a Stay is Warranted

A stay pending appeal is an "extraordinary remedy" that should only be granted on a showing of "sufficient reason" justifying the stay.  *Belcher v. Birmingham Trust Nat'l Bank*, 395 F.2d 685, 686 (5th Cir. 1968); *see also Avakian v. Citibank N.A.*, No. 1:12-CV-00139-SA-DAS, 2014 U.S. Dist. LEXIS 49745, at *6 (N.D. Miss. Apr. 10, 2014).  This is because "[a] stay is an intrusion into the ordinary processes of administration and judicial review, and accordingly is not a matter of right, ***even if*** irreparable injury might otherwise result to the appellant."  *Nken v. Holder*, 556 U.S. 418, 427 (2009) (emphasis added) (quotations and citations omitted).

Because a stay is an exercise of discretion, Respondent "bears the burden of showing that the circumstances justify an exercise of that discretion."  *Ind. State Police Pension Trust v. Chrysler LLC*, 129 S. Ct. 2275, 2276 (2009) (quotations and citations omitted).  In deciding whether Respondent has met this burden, the Court considers four factors:

> (1) whether the stay applicant has made a ***strong showing*** that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Veasey v. Perry*, 769 F.3d 890, 892 (5th Cir. 2014) (quoting *Nken*, 556 U.S. at 426) (emphasis added).[1]

"The first two factors are the most critical." *Barber v. Bryant*, 833 F.3d 510, 511 (5th Cir. 2016) (quoting *Nken*, 556 U.S. at 434).  As such, a party requesting stay "**must meet a heavy burden** of showing not only that the judgment of the lower court was erroneous on the merits, but also that the applicant will suffer irreparable injury if the judgment is not stayed pending his appeal." *Nken* at 439 (Kennedy, J., concurring) (emphasis added) (quotations and citations omitted) (citing decisions holding that both likelihood of success on the merits and irreparable harm must be met before a stay may be granted).

Respondent attempts to dispense with these formidable requirements by claiming that her case presents a "serious legal question," and that therefore she "need only present a substantial case on the merits" and "show that the balance of the equities weighs heavily in favor of granting the stay."  Dkt. No. 4 at 3 (quoting *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. 1981)).  "A serious legal question exists when legal issues have far-reaching effects, involve significant public concerns, or have a broad impact on federal/state relations." *In re Dernick*, No. 18-32417, 2019 Bankr. LEXIS 116, at *8 (Bankr. S.D. Tex. Jan. 16, 2019) (citing *Wildmon v. Berwick Universal Pictures*, 983 F.2d 21, 23-24 (5th Cir. 1992)).

Here, Respondent has not even attempted to show that her planned appeal involves such a question, asserting instead that an esoteric question regarding an intra-trial court standard of

---

[1] Respondent claims that she only needs to show a mere "likelihood" that she will prevail on appeal for the first factor to be in her favor.  Mot. at 3 (citing *Veasey*, 769 F.3d at 892).  To the contrary, the *Veasey* court held that a "strong showing" is required.  *Veasey*, 769 F.3d at 892; *see also Nken*, 556 U.S. at 426; *Wood v. Collier*, 836 F.3d 534, 538 (5th Cir. 2016); *Barber v. Bryant*, 833 F.3d 510, 511 (5th Cir. 2016); *Texas v. United States*, 787 F.3d 733, 746 (5th Cir. 2015); *Weingarten Realty Investors v. Miller*, 661 F.3d 904, 910 (5th Cir. 2011).

review "is an unsettled issue over which many Courts have disagreed." Dkt. No. 4 at 4. The only issue Respondent has identified for the Court of Appeals to "weigh in" on is whether a District Court should apply a de novo or a "clearly erroneous or contrary to law" standard in reviewing a Magistrate Judge's recommendation to deny foreign discovery assistance under 28 U.S.C. § 1782 (Dkt. No. 4 at 1-2, 8)—an arcane question with limited application. Moreover, as this case illustrates, the answer to that question is unlikely to affect the outcome of many, if any, cases. Respondent's issue does not rise to a "serious legal question with broad implications," and therefore the traditional four-factor test applies to her request to stay the proceedings. *SEC v. Farmer*, No. 4:13-MC-014-Y, 2013 U.S. Dist. LEXIS 196358, at *3-4 (N.D. Tex. Dec. 19, 2013) ("[P]ointing out that the issue is one of first impression in the Fifth Circuit . . . failed to satisfy [movant's] burden of showing why his case presents a serious legal question with broad implications."); *see also In re Investigation of Ingram*, No. 12-431, 2012 U.S. Dist. LEXIS 184629, at *7-8 (E.D. La. Apr. 30, 2012) (no "serious legal question" where movant failed to show that the Fifth Circuit's resolution of undecided  issue would have "rippling effect[s]"); *NLRB v. Sanderson Farms, Inc.*, No. 2:14-MC-201-KS-MTP, 2015 U.S. Dist. LEXIS 155840, at *5-6 (S.D. Miss. Nov. 18, 2015) (finding that movant failed to present a "serious legal question" and denying motion for stay pending appeal).

As further detailed below, regardless of which stay test the Court applies to Respondent's motion, she has not shown that any of the *Nken* factors favor granting a stay, and therefore the Court should deny her motion.

### B.    Respondent Cannot Meet the Required Merits Showing

Respondent has not met her burden regarding the first *Nken* factor because she has not made a "strong showing that [s]he is likely to succeed" or even a "substantial case on the merits" on appeal. *Nken*, 556 U.S. at 426. Respondent's appeal will fail because the Court of Appeals

lacks jurisdiction over the challenged order, which requires further judicial action before ***any*** documents are released to Applicants, and therefore is not a final decision.  Even if the appeal could be heard, Respondent would not prevail because this Court properly overruled the Magistrate Judge's Recommendation.

### 1.      Respondent's appeal will fail because the Court of Appeals lacks jurisdiction to review the Order that is not a final decision

Respondent is not entitled to a stay pending her premature appeal because the Court of Appeals has no jurisdiction to hear a challenge to an order that expressly requires a substantial further step by this Court before the application under 28 U.S.C. § 1782 is resolved.  Because the Order is not a final decision of the District Court, the appeal will fail for lack of jurisdiction.  28 U.S.C. § 1291.

Section 1291 limits appeals to "final decisions of the district courts . . . ."  *Id.*  An order constitutes a final decision "within the meaning of section 1291 if it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'"  *S. Travel Club v. Carnival Air Lines, Inc.*, 986 F.2d 125, 130 (5th Cir. 1993) (quoting *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 373 (1981)).  A decision is not final, if it is "tentative, informal or incomplete" or leaves "the matter open, unfinished or inconclusive."  *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949).  "[A]s a general rule, all claims and issues in a case must be adjudicated before appeal, and a notice of appeal is effective only if it is from a final order or judgment . . . . [T]he intention of the judge is crucial in determining finality."  *McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 350 (5th Cir. 2004) (internal citations and quotation marks omitted).  This requirement ensures deference to trial court judges, prevents piecemeal appeals, and promotes efficient judicial administration.  *Firestone*, 449 U.S. at 374.

Here, the Order is not appealable because it left unresolved the central issue of this litigation—whether Applicant's will actually obtain the documents they seek.  In rejecting the Recommendation of the Magistrate Judge, this Court did not order production of the subpoenaed materials to Applicants and terminate these district court proceedings.  To the contrary, the Order required the further critical step of *in camera* review by the Court:

> Mindful of the privacy concerns at issue, the Court hereby FURTHER ORDERS that the subpoena issued to Hancock Whitney Bank shall require that the mortgage file be produced to the undersigned's chambers for an in camera review ***prior to any release to the parties***.

Order at 15 (emphasis added).  Having recognized that "[n]o one truly knows what the file will show" (*id.* at 14), the Court made clear that it was no foregone conclusion that Applicants would receive any documents in imposing a protective order only "[s]hould the Court find production warranted upon review of the documents produced . . . ."  *Id.* at 15-16.  Moreover, Respondent conceded the lack of finality to these proceedings in arguing her privacy could be invaded only "to the extent the Court allows any of the requested documents to be produced to Applicants' counsel after in camera review."  Dkt. No. 43 at 4.

Applicants here are not assured of obtaining any part of the subpoenaed mortgage file because that will be determined only after the *in camera* review the Court has ordered and taken upon itself to conduct.  Because there is no finality here, and therefore no appellate jurisdiction, there is no appellate case for Respondent to make.[2]  *See Cohen*, 337 U.S. at 546 ("Appeal gives

---

[2] The sole authority on which Respondent relies in support of the Order being appealable, *Chevron Corp. v. Berlinger*, 629 F.3d 297 (2d Cir. 2011), demonstrates why there is no jurisdiction here.  In *Chevron*, the Second Circuit properly permitted an appeal from the granting of a Section 1782 petition that constituted a "final resolution" of the petition.  *Id.* at 306.  In that case, however, and unlike here, the district court had left no open issues and had not expressly conditioned the petitioner's receipt of subpoenaed material on a further review by the district court.

the upper court a power of review, not one of intervention.  So long as the matter remains open, unfinished or inconclusive, there may be no intrusion by appeal.").

> ### 2. Respondent's appeal would fail because this Court was correct in overruling Magistrate Judge's denial of the Application under either standard of review

Respondent has identified a single issue for her appeal: that this Court erred in reviewing *de novo* the Magistrate Judge's Recommendation to terminate, by denying, an application under 28 U.S.C. § 1782 rather than applying the "clearly erroneous or contrary to law" standard of review.  Dkt. No. 4 at 1-2.  Even if there were jurisdiction for the appeal to be heard, Respondent has neither a  "substantial case on the merits" nor any "likelihood [she] will succeed on the merits" on her appeal for at least two additional reasons: (i) to the extent the Court engaged in *de novo* review of the Magistrate Judge's Recommendation, it was correct in doing so; and (ii) the Magistrate Judge's conclusion on the fourth *Intel* factor, and, therefore, the entire application, was properly overruled under either standard of review because they were "contrary to law*." See Nken*, 556 U.S. at 426.  Consequently, if the Court of Appeals had jurisdiction (it does not), and even if it agreed with Respondent on her one issue (it would not), it would still affirm this Court's decision.  Under these circumstances, a stay serves no legitimate interest.

> #### a. This Court was correct to the extent it conducted *de novo* review of the Magistrate Judge's Recommendation

Although Respondent has the burden to demonstrate that she is likely to prevail on appeal, she has offered no new or different argument as to why *de novo* review was improper.  Instead, she asserts in conclusory fashion that she "believes that the Fifth Circuit will resolve" the apparent split in authority on this issue in her favor, pointing to the same out-of-circuit authority that this Court already found, and the Court of Appeals would be likely to find, unpersuasive.  Dkt. No. 4 at 3-4; Order at 6-7 ("Respondent relies on district court cases outside

of this circuit that have reviewed a magistrate's ruling on a § 1782 application as nondispositive and reviewable under the clearly erroneous standard.  Granted, an application under § 1782 is not an enumerated dispositive pretrial matter under Section 636(b)(1)(A), ***but in looking at the nature of the proceeding, a ruling on such is dispositive insofar as the proceedings in the federal district court are concerned.***" (citing *Davidson v. Georgia-Pacific, L.L.C.*, 819 F.3d 758, 764 (5th Cir. 2016)))(emphasis added).

For the reasons previously stated in Applicants' Objections to the Magistrate Judge's Recommendation (Dkt. No. 32 at 5) and Rebuttal in support of their Objections (Dkt. No. 34 at 2-7), Applicants submit that this Court was correct in undertaking a *de novo* review and, if the Court of Appeals addressed the issue, it would agree.

> **b.   The Court of Appeals would affirm this Court's decision even if it were to agree with Respondent that the "clearly erroneous or contrary to law" standard of review applies**

In reviewing the Magistrate Judge's Recommendation, the Court disagreed with the Magistrate Judge with respect to both the third and fourth *Intel* factors.  Importantly, the Court noted that the Recommendation's conclusion regarding the third *Intel* factor was erroneous even under the standard of review Respondent urges, explicitly stating that the Magistrate Judge's "apparent requirement that such authority [that under Honduran law Applicants may conduct discovery] be shown ***would be contrary law, even under the clearly erroneous or contrary to law standard***." Order. at 12 n.10 (emphasis added).  Respondent does not contend this Court erred in that regard, and it did not.  Thus, at least three of the four discretionary factors under

*Intel* are conceded to favor granting the Application regardless of which standard of review is applied.[3]

Consequently, the application of *de novo* review—Respondent's sole issue for appeal—potentially matters only with respect to the fourth *Intel* factor.  However, her motion does not even contend that applying the "clearly erroneous or contrary to law" standard would have changed the outcome on that factor or the application, and it would not have.

The fourth *Intel* factor evaluates whether the discovery sought is unduly intrusive or burdensome.  Order at 12.  This Court recognized that because burden is irrelevant to Respondent, the only issue is intrusiveness, and concluded that "[g]iven that this Court can place restrictions and limitation on the production"—including *in camera* review prior to production and limiting access to the materials produced, if any—the discovery request is not unduly intrusive to Respondent.  *Id.* at 15.   In failing to reach the same correct conclusion, the Magistrate Judge committed at least the following errors, which are contrary to law, making overruling the Recommendation proper under either standard of review:

- The Magistrate Judge imposed an impermissibly high relevance threshold.  R&R at 8 ("Given the lack of nexus between the financial information and the charges in

---

[3] There is no meaningful distinction between the two standards of review where, as explained below, the Magistrate Judge's errors are contrary to the law.  *Haines v. Liggett Group, Inc.*, 975 F.2d 81, 91 (3d Cir. 1992) ("The phrase 'contrary to law' indicates plenary review as to matters of law."); *Smith v. Smith*, 154 F.R.D. 661, 665-66 (N.D. Tex. 1994) ("When a party objects to a magistrate judge's ruling on the ground that it is contrary to law, the party must demonstrate that the magistrate judge erred in some respect in his legal conclusions. The magistrate judge's legal conclusions are freely reviewable by the district judge, who applies a *de novo* standard."); *Adolph Coors Co. v. Wallace*, 570 F. Supp. 202, 204-05 (N.D. Cal. 1983)  ("[T]he second aspect of § 636(b)(1)(A) . . . permits this Court to review the magistrate's order to the extent it may be "contrary to law". Thus, while we may review magistral findings of fact, subject only to the 'clearly erroneous' standard, we may overturn any conclusions of law which contradict or ignore applicable precepts of law, as found in the Constitution, statutes or case precedent.")

the criminal indictment, the undersigned recommends that the motion for discovery be denied.").  This Court correctly recognized that "it is not up to this Court to determine the particular relevancy of the information sought . . . ."  Order at 14.  Thus, the Magistrate Judge's evaluation of the fourth *Intel* factor, and his ultimate conclusion, were contrary to law.

- The Magistrate Judge denied the Application even after recognizing that at least some portion of the requested documents could be relevant.  R&R at 7-8 ("Presumably *most* of this financial information does not constitute evidence of cash payment to Mr. Castillo from murder-for-hire benefactors.") (emphasis added).  Thus, in concluding that the discovery request was "not narrowly tailored" and failing to consider appropriate limitations that would allow Applicants to obtain relevant evidence—including *in camera* review to determine if production is warranted, as this Court has ordered—the Magistrate Judge acted contrary to Federal Rules of Civil Procedure which allow discovery of relevant evidence.  *See* Fed. R. Civ. Proc. 26(b)(1).

- The Magistrate Judge treated Respondent's privacy interest in financial information as if it were an absolute privilege and wholly failed to consider whether such interest could be accommodated through the use of *in camera* review, a protective order, and redaction.  R&R at 5-7.  In so doing, he acted contrary to the ample case law allowing the fashioning of protective orders, and other tools, to safeguard privacy interests while allowing discovery—the approach this Court recognized.  Order at 15-16.

- The Magistrate Judge acted contrary to law when he failed to recognize that an applicant may seek any evidence that increases her chances of success in the foreign proceeding and disregarding Applicants' broad participation rights and ability to inject evidence in the Honduran criminal proceedings.  This Court correctly recognized that "a private plaintiff may raise issues that the public prosecutor declines to pursue" and that "[u]nder § 1782, an applicant may seek discovery of any materials that can be made use of in the foreign proceeding to increase her chances of success.'  *Mees v. Buiter*, 793 F. 3d 291, 299 (2d Cir. 2015)."  Order at 14-15.

The foregoing demonstrates that the Magistrate Judge's Recommendation was properly overruled under both standards of review because its conclusions were "contrary to law."

That this Court identified its review as *de novo* would be no impediment to the Court of Appeals affirming the Order even if it concluded "clearly erroneous or contrary to law" to be the correct standard of review inasmuch as the Court of Appeals is free to affirm a district court's order on any basis in the record.  *Stegmaier v. Trammell*, 597 F.2d 1027, 1038 (5th Cir. 1979) ("[I]t is firmly established that an appellate court must affirm the lower court's judgment if the result is correct even though it is based upon an improper ground."); *see also Stratta v. Roe*, No. 18-50994, 2020 U.S. App. LEXIS 17124, at *44 n.16 (5th Cir. May 29, 2020) (the Court of Appeals is "free to uphold the district court's judgment on any basis that is supported by the record" (internal citation and quotation marks omitted)).

Said differently, any error here was harmless and cannot result in a reversal.  28 U.S.C. § 2111 ("On the hearing of any appeal or writ of certiorari in any case, the court shall give judgment after an examination of the record without regard to errors or defects which do not

affect the substantial rights of the parties."); Fed. R. Civ. P. 61 ("Unless justice requires otherwise, no error in admitting or excluding evidence—or any other error by the court or a party—is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not affect any party's substantial rights."); *Miles v. M/V Miss. Queen*, 753 F.2d 1349, 1352 (5th Cir. 1985) ("The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties. This embodies the harmless error rule and applies to appellate review of trial court proceedings.").  Here, where the Magistrate Judge's recommendation was properly overruled under both standards of review, any error was harmless. *See Coca-Cola Co. v. Atchison, T. & S. F. R. Co.*, 608 F.2d 213, 215 (5th Cir. 1979) ("We determine that while the district court selected an incorrect standard of review, . . . its final conclusion . . . is correct.  We therefore affirm."); *Fleming Bldg. Co. v. Ne. Okla. Bldg. & Constr. Trades Council*, 532 F.2d 162, 164-66 (10th Cir. 1976) (where district court erred in requiring clear and convincing evidence when quantum of proof standard was actually preponderance of evidence, the error was harmless where neither standard was satisfied).

Consequently, there is no reason the Court of Appeals would even resolve the standard of review issue Respondent raised, much less resolve it in favor of Respondent, or that even if it did, such a resolution would result in reversal of this Court's Order.  A stay is therefore unwarranted.

### C.   Respondent Does Not and Cannot Show that She Will Suffer Irreparable Injury Without a Stay

Respondent has not demonstrated irreparable injury as she is required to do in order to prevail on her motion for a stay pending appeal.  The law is clear that "to establish irreparable

harm, speculative injury is not sufficient; there must be more than an unfounded fear[.]"  *Walker v. Epps*, 287 F. App'x 371, 376 (5th Cir. 2008) (*quoting United States v. Emerson*, 270 F.3d 203, 262 (5th Cir. 2001)); *see also Nken*, 556 U.S. at 434 ("[S]imply showing some possibility of irreparable injury fails to satisfy the second factor.").

At the outset, Respondent's purported harm of disclosure of her private financial information while an appeal is pending is speculative because the Court has not ordered the disclosure of *any* documents to Applicants and any such production is contingent on further action by the Court.  Respondent repeatedly concedes the speculative nature of her purported injury, noting that it is "potential," that it would occur only "if the documents are disclosed" or "in the event of disclosure," and "to the extent the Court allows…produc[tion]."  Dkt. No. 43 at 4-5.  In reality, all that is proceeding in this case is the production of a single mortgage file by Hancock Whitney Bank to this Court's chambers.  Respondent fails to show how the production of documents *to this Court for in camera review* would inflict the injury she fears, and thus this factor weighs against a stay.  *See United States v. Transocean Deepwater Drilling, Inc.*, 537 F. App'x 358, 362 (5th Cir. 2013) (denying stay pending appeal and finding where "[defendant] offered no valid reason why immediately turning over the subpoenaed documents will cause irreparable injury," the factor weighs against a stay).

Respondent also asserts that if after *in camera* review, the Court allows the requested documents to be provided to Applicants, "there is no way to un-ring the bell" (Dkt. No. 43 at 4), and that there would be no way to remedy the wrongful disclosure "if the Fifth Circuit agrees

that this Court applied the wrong standard of review" (*Id.* at 5).[4]  This argument is unpersuasive

in light of the ability of both this Court and the Court of Appeals to fashion "meaningful relief,"

including by "ordering [the] records returned" if they are produced pursuant to a subpoena later

found to be unlawful.  *Transocean*, 537 F. App'x at 362-63362; *see also Ingram*, 2012 U.S. Dist.

LEXIS 184629, at *9-13 (denying stay and expressly rejecting the argument that there is "no

way to unring the bell" of a wrongful disclosure since the harm can be lessened with measures

"such as return or destruction of the documents."); *SEC v. Farmer*, 2013 U.S. Dist. LEXIS

196358, at *5-6 (denying stay pending appeal where disclosure of documents "d[id] not leave the

Fifth Circuit without the ability to fashion some form of meaningful relief.") (internal quotations

omitted). This is true even when a privacy interest in the documents is involved.  *See id.* , 2013

U.S. Dist. LEXIS 196358, at *5 (citing cases).

Additionally, Respondent has not shown that she will suffer irreparable harm because in

the event that any materials are disclosed to Applicants (which is not a foregone conclusion),

such disclosure will be subject to the robust protections this Court has put in place to safeguard

her privacy interests.  "Mindful of the privacy concerns at issue," the Court ordered that

documents produced in response to Applicants' request, if any, must (1) be redacted to remove

"all account numbers and social security numbers (or their Honduran equivalent)," (2) be

provided on an "Attorneys' Eyes Only" basis to Respondent's counsel and Applicants' Honduran

private prosecutor Mr. Fernández, and no one else, and (3) only after Mr. Fernández submits to

the jurisdiction of the Court via signed written consent.  Order at 15-16.  The Court's detailed

and stringent limitations on any produced documents, along with Court's own pre-production

---

[4] As detailed *supra*, even if the Court of Appeals were to conclude that this Court applied the wrong standard of review, Respondent has not contended, let alone established, that reversal of this Court would ensue.

review of the requested discovery, were specifically designed to alleviate Respondent's privacy concerns—an unspecified specter she has repeatedly invoked throughout this litigation—allowing the Court to conclude that producing the requested documents would not be "unduly intrusive." *See id.* at 15 ("Given that this Court can place restrictions and limitations on the production, the Court finds that it is not [unduly intrusive to Respondent].").

Respondent's Motion suggests she has an expansive notion of what is private. Her insinuation that Applicants violated her privacy because photographs of the $1.5 million property securing the mortgage the file for which is at issue in this case became public ignores that the photographs came from a publicly accessible real estate website on which the estate was being marketed as a rental (presumably by Respondent and her husband) and have also been publicly accessible from this Court's docket for nearly a year. *See* Dkt. No. 4-10 at 2 (Realtor.com logo displayed on photograph of the Castillos' property). Nevertheless, the Court will be protecting her legitimate interests by means of an *in camera* review before anything is further produced and a protective order if and when it is.

Contrary to Respondent's unfounded and unsupported insinuations that Applicants will misuse the information they may obtain (*see generally* Dkt. No. 4 at 5-6), Applicants have promptly and diligently complied with the Court's directives. When serving the subpoena this Court authorized, Applicants instructed the bank to send the subpoenaed documents directly to the District Judge's chambers and explicitly admonished the bank not to disclose any documents to Applicants' attorneys. Dkt. No. 41-1 at 2 ("Please note that compliance with the subpoena requires producing responsive documents directly to the Chambers of Hon. Keith Starrett, United States District Judge . . . . **Please do not send responsive documents to the undersigned or any of the attorneys representing Applicants identified herein.**" (emphasis in original)).

Applicants also promptly obtained and filed Mr. Fernández's signed written consent to the jurisdiction of the District Court for enforcement of its Protective Order, as instructed.  Dkt. No. 40-1.  In the face of Applicants' undisputed record of compliance with this Court's directives, all Respondent offers are the same bad faith, unsupported arguments regarding Applicants' ulterior motives and supposed plans to disobey a federal court order.

Thus, this Court, Applicants, and Mr. Fernández have been diligent in addressing Respondent's concerns regarding her privacy interests, and her claimed injury of "wrongful disclosure" is speculative, unfounded, and insufficient to warrant a stay.  *See, e.g.*, *Reprod. Servs., Inc. v. Walker*, 439 U.S. 1307, 1308-09 (1978) ("no irreparable injury to any patient's privacy interests which would justify a stay" where parties agreed to protective order).  As such, this Court should deny Respondent's Motion for Stay since she does not, and cannot, demonstrate the irreparable harm required.

### D.     Applicants Will Be Severely Prejudiced by a Stay

Respondent has also failed to meet her burden of showing that the stay will not substantially prejudice Applicants.  The third *Nken* factor weighs powerfully against granting a stay because further delay in this nearly year-long litigation to obtain routine document discovery substantially increases the likelihood that Applicants will not obtain the evidence in time to use it in the prosecution of their mother's accused murderer.

The time in which the discovery Applicants seek will be useful is running out.  Castillo's interlocutory appeal that Respondent admits has been holding up the proceedings is near resolution, having been briefed, argued and decided by the appellate court justices.  Fernández Decl. ¶ 5; *id.* ¶ 7 (appellate court clerk decision on appeal needs only to be signed by the court). The Honduran judiciary, although still in a shutdown due to the COVID-19 pandemic, has made clear its intent to prioritize criminal cases such as Castillo's upon reopening, and had attempted

to reopen as early as June 8, 2020. *Id.* ¶ 8. The legal limit on Castillo's pretrial detention expires in less than three months. *Id.* ¶¶ 9-10. Mr. Fernández cites all of the foregoing, as well as the seriousness of Castillo's alleged crime, as reasons why he, his co-private prosecutor, the public prosecutor, and the trial court would be compelled to conclude Castillo's prosecution promptly. *Id.* ¶ 11.

Since the Honduran interlocutory appeal is all but resolved, once the Honduran courts reopen, it would conduct Castillo's pretrial hearing—a critical evidentiary hearing at which the court will determine whether enough evidence has been presented to continue the murder case against Castillo. *Id.* ¶ 13. Applicants' private prosecutor is entitled and intends to submit relevant evidence he obtains as a result of the instant Application. *Id.* ¶ 14. Indeed, he has submitted evidence in a previous pretrial hearing to argue that Castillo must be held to answer for orchestrating Ms. Caceres's murder. *Id.* Thus, Applicants will be significantly prejudiced by a stay that will deprive them from the opportunity to present such evidence at Castillo's pretrial impending pretrial hearing.

Time is of the essence here. Castillo's murder case in Honduras is likely to resume imminently and conclude before an appeal in this case is ever heard. [5] As such, a stay of this Court's Order, will significantly prejudice Applicants because it would deprive them of the opportunity to present evidence that could be helpful in securing Castillo's murder conviction.

---

[5] "As of June 30, 2019, there were 4,633 cases pending in the Fifth Circuit. Administrative Office of the U. S. Courts statistics showed the median time from filing the notice of appeal to issuance of the court's opinion was 9.1 months." *See* Fifth Circuit Practitioner's Guide, available at http://www.ca5.uscourts.gov/docs/default-source/forms-and-documents---clerks-office/documents/practitionersguide.pdf at page 16 of 122. Additionally, Respondent's suggestion that the appeal could be resolved on an expedited basis lacks merit because Respondent has not requested an expedited appeal of the Court's order.

E.      **Public Policy Does Not Favor a Stay**

Respondent's one sentence argument that public policy favors a stay is wrong, counter to the weight of the law discouraging delay, and contrary to public statements made by the United States government and its elected officials on the topic of bringing Berta Cáceres' murderers to justice.

The public has an interest in the "speedy resolution of disputes." *Weingarten Realty Investors*, 661 F.3d at 913; *Uniloc 2017 LLC v. Samsung Elecs. Am., Inc.*, No. 2:19-cv-00259-JRG-RSP, 2020 U.S. Dist. LEXIS 50354, at *4 (E.D. Tex. Mar. 24, 2020) ("[I]t is bedrock that there is a public interest in the just and speedy resolution of disputes."); *see also* Fed. R. Civ. P. 1 (courts should "secure the just, speedy, and inexpensive determination of every action and proceeding"). However, this application for routine discovery has been pending since July 17, 2019. *See* Dkt. No. 1. Castillo's trial will resume any day, and time is running out for Applicants to obtain this information. *See* Fernández Decl. ¶ 11. While further delay might serve Respondent's interest in aiding the defense of her husband in his murder trial, it does not serve the public interest. Based on the authority and realities of this case, proceeding with this Court's review of the requested documents in this matter best serves the public interest.

The United States government and its elected officials have also demonstrated that the public interest is not in favor of Applicant's request for further delay. A U.S. Senator, Congressional represnetative, and the government itself have all made statements regarding their desire for Berta's murderers to be brought to justice. *See* Senator Patrick Leahy, *Statement of Senator Patrick Leahy on Berta Caceres* (Mar. 4, 2019), https://www.leahy.senate.gov/press/statement-of-senator-patrick-leahy-on-berta-caceres ("[o]ur desire to see justice done in her case is as strong today as it was three years ago." ); Representative Marcia Kaptur, *Rep Johnson reintroduces the "Berta Cáceres Human Rights in*

*Honduras Act,"* (Mar. 28, 2019), https://hankjohnson.house.gov/media-center/press-releases/rep-johnson-reintroduces-berta-c-ceres-human-rights-honduras-act ("[h]er family and her countrymen deserve justice and rightful due process, where those who commit[] this brutality are held responsible."); U.S. Department of State, *U.S. Condemns Murder of Honduran Activist Berta Caceres*, (Mar. 4, 2016), https://2009-2017.state.gov/r/pa/prs/ps/2016/03/253997.htm; U.S. Embassy in Honduras, *Statement on the Anniversary of the Murder of Berta Cáceres*, (Mar. 2, 2017), https://hn.usembassy.gov/statement-anniversary-murder-berta-caceres/; U.S. Embassy in Honduras, *Embassy Statement on the Second Anniversary of the Murder of Berta Cáceres*, (Mar. 2, 2018), https://hn.usembassy.gov/embassy-statement-second-anniversary-murder-berta-caceres/ (repeatedly stating that those responsible for Berta's murder must be brought to justice). Further, a bill named the "Berta Cáceres Human Rights in Honduras Act" was introduced in the House of Representatives to encourage the Honduran government to investigate Berta's death and prosecute her murderers.  Representative Hank Johnson, *Rep Johnson reintroduces the "Berta Cáceres Human Rights in Honduras Act,"* (Mar. 28, 2019), https://hankjohnson.house.gov/media-center/press-releases/rep-johnson-reintroduces-berta-c-ceres-human-rights-honduras-act.  The public's interest in this matter is clear. The Cáceres Children's application furthers that public interest by producing all potentially relevant evidence prior to trial, and Respondent's request for a stay cuts sharply against the public's interest.

Respondent's one-sentence argument asserts that the public interest favors a stay in this case because it involves an undecided legal issue and might jeopardize Respondent's privacy. Mot. at 6.  However, where an applicant for a stay "fails to demonstrate a likelihood of success of the merits of its appeal . . . [t]he interest in speedy resolution of disputes prevails" in consideration of the public interest factor. *Vine v. PLS Fin. Servs., Inc.*, No. 4:18-CV-00450,

2019 U.S. Dist. LEXIS 153328, at *30 (E.D. Tex. Sept. 9, 2019).  As explained above, Respondent is not likely to succeed on the merits of her appeal (and has not demonstrated the existence of any "serious legal question").  Additionally, Respondent's individual interest in maintaining the secrecy of these documents cannot possibly outweigh the clear interest of the public in seeking justice for Berta's assassination (particularly where any legitimate privacy interest will be protected by the safeguards the Court has implemented).  *See In re Porter*, 54 B.R. 81, 82 (Bankr. N.D. Okla. 1985) ("The public interest, though difficult to measure in a case involving primarily private rights, is generally served by moving forward.").  Accordingly, Respondent's arguments fall flat, and the fourth factor favors denying the Motion.

## IV.    CONCLUSION

For the foregoing reasons, and based on the entire record in this case, the Court should deny the Motion for Stay Pending Appeal.

Dated:  June 15, 2020                                            Respectfully submitted,

By:  /s/ Amelia S. McGowan
    Amelia S. McGowan

MISSISSIPPI CENTER FOR JUSTICE
Amelia S. McGowan, MSB# 103610
5 Old River Place, Suite 203 (39202)
P. O. Box 1023
Jackson, Mississippi 39215
Telephone:  (769) 230-8003
Facsimile:  (601) 352-4769
Email:  amcgowan@mscenterforjustice.org

(Continued on next page)

OF COUNSEL:

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
Leo P. Cunningham *Admitted Pro Hac Vice*
Ralitza S. Dineva *Admitted Pro Hac Vice*
Sean P. Killeen *Admitted Pro Hac Vice*
650 Page Mill Road
Palo Alto, California 94304-1050
Telephone:  (650) 493-9300
Facsimile:   (650) 565-5100
Email:  lcunningham@wsgr.com
             rdineva@wsgr.com
             skilleen@wsgr.com

INTERNATIONAL HUMAN RIGHTS LAW
CLINIC, UNIVERSITY OF CALIFORNIA
BERKELEY
Roxanna Altholz *Admitted Pro Hac Vice*
489 Simon Hall,
Berkeley, California 94720
Telephone:  (510) 643-8781
Facsimile:   (510) 643-4625
Email:  raltholz@law.berkeley.edu