**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

**IN RE: EX PARTE APPLICATION OF
LAURA ZUNIGA CACERES, BERTHA
ZUNIGA CACERES, AND SALVADOR
ZUINIGA CACERES FOR ASSISTANCE**          **CASE NO. 1:19-mc-00405-KS-RHW**

<u>**FINAL ORDER ON APPLICANTS' EX PARTE APPLICATION FOR DISCOVERY
FOR USE IN A FOREIGN TRIBUNAL PURSUANT TO 28 U.S.C. § 1782**</u>

This cause comes before the Court, following a review of the requested discovery from

Hancock Whitney Bank pursuant to a subpoena issued by the Applicants in this case. For the

reasons set forth below, the Court finds that none of the documents contained in the subject will

be produced to the Applicants.

**I. BRIEF BACKGROUND AND PROCEDURAL HISTORY**

This proceeding arises from the indictment of David Castillo Mejia ("Castillo") as the

orchestrator of the murder of Berta Isabel Caceres Flores ("Caceres") in Honduras, whose death

occurred on March 2, 2016. On July 17, 2019 Laura Zuniga Caceres, Bertha Zuniga Caceres, and

Salvador Zuniga Caceres ("Applicants") filed an application under 28 U.S.C. § 1782, seeking

discovery, namely a mortgage file, from Hancock Whitney Bank (the "Bank") located in

Gulfport, Mississippi for the purpose of presenting evidence in Castillo's murder trial in

Honduras. [1]; [2] at p. 10. The Applicants are the adult children of Ms. Caceres, who are

participating in the criminal trial of Castillo in Honduras as private plaintiffs, through a private

prosecutor, as permitted under Honduran law. *See* [4-13] at ¶ 2. Applicants requested the file

because they believe the records will adduce evidence that Castillo received a large sum of

money to orchestrate Caceres's murder and will perhaps identify other, yet unknown, individuals

who were involved in the murder.  [2] at p. 6; [4-13] at §7.

After the Application was filed, Castillo's wife, Tanya Romero-Boca ("Respondent"), made an appearance and requested leave to be heard on the Application [11], which the Court granted [16]. Briefs and various affidavits and documents were filed relating to the Application. [2], [4], [17], [27]. On October 30, 2019, U.S. Magistrate Judge Robert Walker entered his Proposed Findings of Fact and Recommendation ("R&R"), recommending that the application be denied. [28]. Applicants filed their objections [32], and Respondent filed a response to those objections [33]. Applicants then filed a rebuttal [34].

After reviewing the R&R, the parties' objections and responses, as well as the parties' original submissions in light of the relevant legal authority, on May 18, 2020, this Court issued its Order [39], sustaining Applicants' objections and declining to adopt the R&R in its entirety. Applying de novo review,[1] this Court found that the discretionary factors under *Intel Corp. v. Advanced Micro Devices, Inc*., 542 U.S. 241, 255 (2004) had been met, and that the application would be granted. [39] at p. 15. However, the Court, mindful of the Respondent's privacy rights in financial information and her concern about the misuse of the information, further ordered as follows:

> that the subpoena issued to Hancock Whitney Bank shall require that the mortgage file be produced to the undersigned's chambers for an *in camera* review prior to any release to the parties. Also, Hancock Whitney Bank will be required to redact all account numbers and social security numbers (or their Honduran equivalent) from responsive documents prior to production. Should the Court find production warranted upon review of the documents produced by Hancock Whitney Bank, the production shall be made pursuant to the following protective order:
>
> It is ORDERED that the disclosure of any documents produced by Hancock Whitney Bank shall be to attorneys' eyes only, which shall be Respondent's counsel and the Applicants' private prosecutor, presumably Mr. Victor Antonio Fernandez Guzman. The Applicants' Honduran attorney must consent to the jurisdiction of this Court for enforcement of this protective order. Applicants may properly notify the Court by filing a Notice of Consent with an

---

[1] The Court did explain in a footnote, regarding the third factor, that it found the Magistrate Judge had read in a requirement that was contrary to law, even under the clearly erroneous or contrary to law standard. [39]at p. 12 n.10.

attached signed written consent from the attorney. The Court finds no need for local counsel to be involved in production.

[39] at pp. 15-16.

Respondent filed a Notice of Appeal and sought a stay of the Court's May 18, 2020 Order pending the appeal. [42], [43]. The Court ordered an expedited briefing schedule; the Applicants responded; and the Respondent replied. [44], [46], [47]. The Court denied Respondent's request for a stay primarily on the bases that the grounds for the appeal, which Respondent argued that the Court applied the wrong standard of review to the R&R, would not result in a change in the outcome of the Application and that Respondent would not be irreparably harmed because there was to first be an *in camera* review prior to any disclosure of documents. [48].

Respondent then sought a stay in the Fifth Circuit Court of Appeals, which was granted. [50]. However, on July 8, 2020, the Fifth Circuit dismissed Respondent' appeal for lack of jurisdiction. [53]. Once the stay was lifted, on or about July 30, 2020, the Court received the mortgage file from Hancock Whitney Bank via an encrypted compact disc.

**II. DISCUSSION**

The Court has now received and thoroughly reviewed the mortgage file from Hancock Whitney Bank. For the reasons set forth below, the Court finds that no documents will be produced to the Applicants pursuant to the subpoena. The Court based its prior ruling under the law regarding the granting of a Section 1782 Application, which was proper. However, due to the unique procedural deviation in this case, the Court now exercises its discretion in denying production.

**A. Procedural Deviation Still Results in a Two-Step Process**

Production of discovery through an Application submitted under 28 U.S.C. § 1782 can sometimes result in a two-step process. This is so because, first, an application may be submitted and granted *ex parte*. *See Gushlak v. Gushlak*, 486 Fed. App'x 215, 217 (2d Cir. 2012) (explaining that "it is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*"); *see also El Paso Corp. v. La Comision Ejecutiva Hidroelectrica Del Rio Lempa*, 341 Fed. App'x 31, 32 (5th Cir.2009) (noting that 28 U.S.C. § 1782 applications were filed *ex parte* and granted by the district courts in Texas and Delaware); *Chevron Corp. v. 3TM Consulting, LLC,* No. 4:10–mc–134, 2010 WL 8814519, at *1 (S.D. Tex. Apr. 5, 2010) (granting *ex parte* application for an order pursuant to 28 U.S.C. § 1782).

Then, once the application is granted, a respondent "can later challenge any discovery request by moving to quash pursuant to Federal Rule of Civil Procedure 45(c)(3)." *Gushlak*, 486 Fed. App'x at 217; *see also In re Meydan Group LLC*, No. 15–02141, 2015 WL 2453757*1 n.1 (D.N.J. May 21, 2015) (noting that "once the subpoenas are served, Respondents will have the opportunity to move to quash or modify the subpoenas under Federal Rule of Civil Procedure 45"). As the Fifth Circuit has recognized, there are certain threshold standards to be met in an application for discovery, which requires a different analysis than a motion to quash once the application has been granted. *See Tex. Keystone, Inc. v. Prime Nat. Res., Inc*., 694 F.3d 548, 556 (5th Cir. 2012).

In this case, the two-step process was circumvented.  While Applicants indeed proceeded *ex parte* in submitting their Application, prior to it being reviewed *ex parte*, Respondent sought to be heard, which Magistrate Judge Walker allowed. [11], [16]. Thus, Respondent presented her arguments at the outset rather than waiting to file a Motion to Quash. This resulted in Respondent's arguments being considered in the analysis of whether or not to grant the

4

application, and not under the standard of a motion to quash, rendering many of Respondent's arguments inapplicable at that stage.

Notwithstanding, in her Motion for Stay Pending Appeal, Respondent stated:

Had the Section 1782 Application been granted *ex parte*, [Respondent] would have moved to quash the subpoena upon the Court's order grating the Application or service of the subpoena. [Respondent] views her substantive opposition to the Application as equivalent to a motion to quash under the circumstances, and believes the motion to quash to be procedurally unnecessary given the Court's ruling on the merits.

[43] at p. 1 n. 1. While Respondent may have considered a motion to quash procedurally unnecessary, the Court still finds a two-step process is warranted here.

In this Court's Order initially granting the Application, the Court specifically stated: "*Should* the Court find production warranted upon review of the documents produced by Hancock Whitney Bank . . . ." [39] at pp. 15-16. As such, there was no guarantee that documents would be produced. Also in the prior Order, this Court stated, "No one truly knows what the file will show." [39] at p. 14. Well, the Court now knows. Just as the Court has discretion to order the requested discovery when the statutory requirements are met, *Texas Keystone*, 694 F.3d at 553–54, the Court finds that due to the procedural deviation in this case, it now has discretion to revisit some of Respondent's arguments and address the propriety of producing the mortgage file.

**B. Analysis Under Discovery Rules**

Now that the Application has been granted, determining whether production is appropriate is governed by the Federal Rules of Civil Procedure. As the Fifth Circuit has stated: "[Section] 1782 does not establish a standard for discovery. Instead, it provides for a threshold determination of whether to allow foreign litigants to enjoy discovery in U.S. courts in accordance with federal rules. The manner in which discovery proceeds will be determined by

normal discovery rules." *Texas Keystone*, 694 F.3d at 554 (quoting *Govt. of Ghana v. ProEnergy Svcs., LLC*, 677 F.3d 340, 343 (8th Cir.2012)). Favorably citing cases from other circuits, the Fifth Circuit went on to hold that "the Federal Rules of Civil Procedure governed the underlying discovery requests once the district court granted Texas Keystone's Section 1782 application." *Id*.[2]

The subpoena in this case was issued under Federal Rule of Civil Procedure 45. However, Rule 26 is the relevant rule here because it defines the permissible scope of discovery, and a Rule 45 subpoena is subject to that same scope. *See* Fed. R. Civ. P. 45(d)(a) advisory committee's note to 1970 amendment; *see also Transcor, Inc. v. Furney Charters, Inc*., 212 F.R.D. 588, 591 (D. Kan. 2003) (stating that the court must consider whether the subpoena "is overly broad or seeking irrelevant information under the same standards set forth in Rule 26(b)").

In analyzing the initial Application, the relevancy threshold was quite low. Relevancy in such context is "broadly construed and encompasses any material that bears on, or that reasonably leads to other matters that could bear on, any issue that is or may be in the case." *In re Application of HydroDive Nigeria, Ltd*., No. 13-MC-0477, 2013 WL 12155021, at *3 (S.D. Tex. May 29, 2013) (quoting *In re Veiga*, 746 F. Supp. 2d 8, 19 (D.D.C. 2010)). Upon initial consideration, as the Court previously explained, "it is not up to this Court to determine the

---

[2] The court quotes *Heraeus Kulzer, GmbH v. Biomet, Inc.,* 633 F.3d 591, 597 (7th Cir. 2011):

> The section 1782 screen ... is designed for preventing abuses of the right to conduct discovery in a federal district court for use in a foreign court. Once the court has determined that such abuses are unlikely, the ordinary tools of discovery management, including [Fed. R. Civ. P.] 26, come into play; and with objections based on the fact that discovery is being sought for use in a foreign court cleared away, section 1782 drops out.

The court also cites *Weber v. Finker*, 554 F.3d 1379, 1384 (11th Cir.2009) and quotes, "Once discovery is authorized under § 1782, the federal rules, Fed. R. Civ. P. 26–36, contain the relevant practices and procedures for the taking of testimony and the production of documents."

particular relevancy of the information sought." [39] at 14. However, now the relevancy arguments come into play.

In seeking the discovery, Applicants argued that they sought only those records held by the bank that relate to the financing secured to purchase the Houston property. [2] at p. 19. Applicants' attorney averred that he believed "that the mortgage records related to the property, which will contain information about the existence and source of a significant down payment and income, will reveal that Castillo received a large amount of money to orchestrate the murder . . . [and] that these records will supply new information that may implicate previously unknown or unindicted individuals and/or entities in the murder of Ms. Caceres." [4-13] at ¶ 7.

While the Applicants' representations made the information seem relevant, the Court, after having reviewed the documents, finds they are not relevant. The Court's review revealed that there is nothing extraordinary or unusual contained in the file that would satisfy counsel for the Applicants' stated need for the file. There are vetted bank accounts and verified income but no unusual payment from any unusual source and no names of anyone other than Castillo, Respondent, accountants and those employees of Hancock Whitney that worked on the mortgage file. Respondent had argued she has a privacy interest in her financial information and a concern that the discovery request was merely a pretext for obtaining access to the Castillos' assets, claiming it was made in bad faith and for harassment. [17] at pp. 6-7. Plaintiff's interest in the privacy of her financial information outweighs any attenuated relevance that the information that is contained in the file would have to the criminal proceedings in Honduras.

## III. CONCLUSION

Based on the foregoing, the Court, in its discretion, finds that the production of the mortgage file, or any part thereof, is not warranted in this case. Consequently, while the

Application was granted, production under the subpoena will be quashed, and the contents of the file in the possession of the Court will be destroyed.

SO ORDERED AND ADJUDGED this 24th day of September 2020.

/s/ Keith Starrett_____
KEITH STARRETT
UNITED STATES DISTRICT JUDGE